J. Ronald Trost  (JT-4745)
Kelley A. Cornish  (KC-0754)
Shalom L. Kohn  (SK-2626)
Elizabeth R. McColm  (EM-8532)
SIDLEY AUSTIN BROWN & WOOD LLP
787 Seventh Avenue
New York, New York  10019
Telephone:  (212) 839-5300

Counsel for Debtors and Debtors-in-Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                              :     Chapter 11
In re                                                         :
                                                              :     Case Nos. 01-41643 (RLB)
    THE WARNACO GROUP, INC., et al.,                          :     through     01-41680 (RLB)
                                                              :
                                        Debtors.              :     (Jointly Administered)
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## FIRST AMENDED JOINT PLAN OF REORGANIZATION
## OF THE WARNACO GROUP, INC. AND ITS AFFILIATED DEBTORS AND
## DEBTORS IN POSSESSION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE


**Dated:  November 8, 2002**

# TABLE OF CONTENTS

Page

INTRODUCTION ............................................................................................................2

**ARTICLE I**         **3**

DEFINITIONS AND INTERPRETATION ................................................................... 3

**ARTICLE II**         **14**

CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS............................. 14

2.1.  Administrative Claims. .................................................................... 15
2.2.  Priority Tax Claims........................................................................... 15
2.3.  DIP Facility Claim ............................................................................ 16
2.4.  Class 1 -- Priority Non-Tax Claims. ............................................... 16
2.5.  Class 2 -- Senior Secured Bank Claims. ........................................ 16
2.6.  Class 3 -- GE Capital Secured Claims Under the 1997 MLA. ......... 17
2.7.  Class 4 -- Other Secured Claims...................................................... 17
2.8.  Class 5 -- Unsecured Claims. .......................................................... 18
2.9.  Class 6 -- TOPrS Claims. ................................................................ 18
2.10. Class 7 -- Intercompany Claims. ..................................................... 19
2.11. Class 8 -- Common Stock Claims and Interests. ............................. 19

**ARTICLE III**         **19**

TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES...................... 19

3.1.  Rejected Contracts and Leases ....................................................... 19
3.2.  Assumed Contracts and Leases. ..................................................... 19
3.3.  Miscellaneous................................................................................... 20
3.4.  Payments Related to Assumption of Executory Contracts and Unexpired
      Leases................................................................................................ 20
3.5.  Post-Petition Contracts and Leases................................................. 21
3.6.  Rejection Damages Bar Date. .......................................................... 21

**ARTICLE IV**         **21**

CONDITIONS PRECEDENT ...................................................................................... 21

4.1.  Conditions to Occurrence of Effective Date .................................... 21
4.2.  Waiver of Conditions to Consummation. ......................................... 21
4.3.  Non-Consensual Confirmation......................................................... 21

NY1 5271167v8

## ARTICLE V                                                              22

IMPLEMENTATION OF PLAN ........................................................................22

    5.1.    Pre-Effective Date Management and Operation of Debtors ...............................22
    5.2.    Post-Effective Date Committee; Dissolution of Committee ...............................22
    5.3.    Pre-Effective Date Injunctions or Stays.............................................................23
    5.4.    Merger of Certain Debtors ..................................................................................23
    5.5.    Amended Certificates of Incorporation and Bylaws...........................................23
    5.6.    Post-Effective Date Management and Operation of Reorganized Debtors ..........24
    5.7.    Exit Financing Facility.......................................................................................24
    5.8.    Issuance of New Warnaco Second Lien Notes ...................................................24
    5.9.    Issuance of New Warnaco Common Shares .......................................................24
    5.10.   Transfer of Intercompany Claims .......................................................................24
    5.11.   Management Stock Incentive Program and Confirmation Bonuses.....................24
    5.12.   Rights Plan .........................................................................................................25
    5.13.   Registration Rights Agreement ..........................................................................25
    5.14.   Effectuating Documents; Further Transactions...................................................25
    5.15.   Exemption From Certain Transfer Taxes............................................................25
    5.16.   Continuation of Warnaco Pension Plan. .............................................................26
    5.17.   Employment, Retirement, and Incentive Compensation Plans and
           Programs. ............................................................................................................26

## ARTICLE VI                                                             26

DISTRIBUTIONS AND CLAIMS ALLOWANCE ......................................................26

    6.1.    Cash Distributions ..............................................................................................26
    6.2.    Distributions to Holders of Senior Secured Bank Claims...................................26
    6.3.    Distributions to Holders of Allowed Unsecured Claims ....................................27
    6.4.    Distributions to Holders of TOPrS Claims, If Any ...........................................27
    6.5.    Miscellaneous Distribution Provisions. ..............................................................29
    6.6.    Procedure For Determination of Claims and Interests........................................30

## ARTICLE VII                                                            31

EFFECT OF THIS PLAN ON CLAIMS AND INTERESTS ...................................................31

    7.1.    Revesting of Assets.............................................................................................31
    7.2.    Discharge of Claims and Termination of Interests..............................................31
    7.3.    **Injunctions.** ........................................................................................................32
    7.4.    **Limitation of Liability** ......................................................................................33
    7.5.    **Releases.** ...........................................................................................................33
    7.6.    Retention and Enforcement, and Release, Of Causes Of Action ........................34

NY1 5271167v8

## ARTICLE VIII                                                    **35**

MISCELLANEOUS PROVISIONS............................................................................35

8.1.    Retention of Jurisdiction .................................................................35
8.2.    Terms Binding ...............................................................................36
8.3.    Successors and Assigns....................................................................36
8.4.    Confirmation Order and Plan Control.................................................36
8.5.    Governing Law................................................................................37
8.6.    Severability....................................................................................37
8.7.    Incorporation by Reference...............................................................37
8.8.    Modifications to this Plan. ...............................................................37
8.9.    Revocation, Withdrawal or Non-Consummation .................................37
8.10.   Notice...........................................................................................37

The Warnaco Group, Inc. ("Group"), together with certain of its direct and indirect subsidiaries, 184 Benton Street Inc., A.B.S. Clothing Collection, Inc., Abbeville Manufacturing Company, AEI Management Corporation, Authentic Fitness Corporation, Authentic Fitness On-Line, Inc., Authentic Fitness Products Inc., Authentic Fitness Retail Inc., Blanche, Inc., CCC Acquisition Corp., CCC Acquisition Realty Corp., C.F. Hathaway Company, Calvin Klein Jeanswear Company, CKJ Holdings, Inc., CKJ Sourcing, Inc., Designer Holdings Ltd., Gregory Street, Inc., Jeanswear Holdings, Inc., Kai Jay Manufacturing Company, Myrtle Avenue, Inc., Outlet Holdings, Inc., Outlet Stores, Inc., Penhaligon's by Request, Inc., Rio Sportswear, Inc., Ubertech Products, Inc., Ventures Ltd., Warmana Limited, Warnaco Inc., Warnaco International, Inc., Warnaco International, LLC, Warnaco Men's Sportswear Inc., Warnaco of Canada Company, Warnaco Puerto Rico, Inc., Warnaco Sourcing Inc., Warnaco U.S. Inc., Warnaco Ventures Ltd., Warner's De Costa Rica Inc., each a debtor and debtor-in-possession herein (collectively, the "Debtors"), hereby propose the following First Amended Joint Plan of Reorganization (the "Plan").

## INTRODUCTION

In general, this Plan provides for the substantive consolidation of all of the Debtors for voting and distribution purposes only, and provides for the Debtors' reorganization pursuant to the terms of this Plan. This Plan contemplates the payment in full in cash of all administrative claims (other than such claims held by the Debtors' pre-petition secured lenders granted as adequate protection) and priority claims against the Debtors, and the repayment in full in cash of outstanding amounts, if any, under the Debtors' post-petition financing facility. Furthermore, this Plan provides for the treatment of allowed claims against, and interests in, the Debtors as follows:

- With respect to the Debtors' pre-petition secured lenders (a) payment in Cash of the Original Foreign Facility Guaranty Claims,[1] (b) distribution of new second lien notes of Reorganized Warnaco in the principal amount of $200 million and (c) distribution of 96.263% of newly issued common stock of Reorganized Warnaco, subject to dilution in respect of new common stock to be issued to management of Reorganized Warnaco under a stock incentive plan, plus, in the event holders of TOPrS Claims receive no distribution pursuant to Section 2.9.(C) of this Plan, an additional 0.581% of the newly issued common stock of Reorganized Warnaco, subject to dilution as described above;

- With respect to each holder of an allowed unsecured claim other than a TOPrS Claim, distribution of its pro rata share of 2.549% of the newly issued common stock of Reorganized Warnaco, subject to dilution as described above, plus, in the event holders of TOPrS Claims receive no distribution pursuant to Section 2.9.(C) of this Plan, an additional 0.015% of the newly issued common stock of Reorganized Warnaco, subject to dilution as described above;

---

[1] Capitalized terms used in this introductory section are defined in Article I of this Plan.

- With respect to TOPrS Claims, distribution of 0.596% of the newly issued common stock of Reorganized Warnaco, subject to dilution as described above, in full satisfaction of any and all TOPrS Claims, unless the holders of such Claims vote as a class to reject this Plan, in which case there will be no distribution on account of such Claims; and

- No distributions on account of common stock issued by Group, including claims arising out of or with respect to such common stock interests.

Reference is made to the Disclosure Statement accompanying this Plan, including the exhibits thereto, for a discussion of the Debtors' history, business, properties, results of operations, and projections for future operations and risk factors, together with a summary and analysis of this Plan. All creditors entitled to vote on this Plan are encouraged to consult the Disclosure Statement and to read this Plan carefully before voting to accept or reject this Plan.

NO SOLICITATION MATERIALS, OTHER THAN THE DISCLOSURE STATEMENT AND RELATED MATERIALS TRANSMITTED THEREWITH AND APPROVED BY THE BANKRUPTCY COURT, HAVE BEEN AUTHORIZED BY THE BANKRUPTCY COURT FOR USE IN SOLICITING ACCEPTANCES OR REJECTIONS OF THIS PLAN.

## ARTICLE I

## DEFINITIONS AND INTERPRETATION

**A.    Definitions.** The following terms (which appear in this Plan as capitalized terms) shall have the meanings set forth below. A term used in this Plan and not defined in this Plan but that is defined in the Code has the meaning set forth in the Code.

1.1.    "1997 MLA" means the Master Lease Agreement, dated as of October 21, 1997, between Warnaco Inc. and GE Capital for itself and other participants.

1.2.    "Administrative Agent" means the administrative agent as defined in each of the Pre-Petition Facility and Intercreditor Agreements.

1.3.    "Administrative Claim" means a Claim to the extent that it is of the kind described in Section 503(b) of the Code and is entitled to priority under Section 507(a)(1) or 507(b) of the Code, including, without limitation, (a) any actual and necessary expenses of preserving the Estate, (b) any actual and necessary expenses of operating the business of the Debtors, (c) any actual indebtedness or obligations incurred or assumed by the Debtors during the pendency of the Cases in connection with the conduct of their business, (d) any actual expenses necessary or appropriate to facilitate or effectuate this Plan, (e) any amount required to be paid under Section 365(b)(1) of the Code in connection with the assumption of executory contacts or unexpired leases, (f) all allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under Sections 330(a), 331 or 503(b)(2), (3), (4) or

(5) of the Code, (g) Claims with respect to the Alvarez Incentive Bonus and (h) all fees and charges payable pursuant to Section 1930 of title 28 of the United States Code.

1.4. "Allowed Claim" means a Claim or any portion thereof without duplication, (a) that has been allowed by a Final Order or by this Plan, (b) as to which, on or by the Effective Date, (i) no proof of claim has been filed with the Bankruptcy Court and (ii) the liquidated and noncontingent amount of which is listed in the Schedules, other than a Claim that is listed in the Schedules at zero, in an unknown amount, or as disputed, (c) for which a proof of claim in a liquidated amount has been timely filed with the Bankruptcy Court in accordance with Bankruptcy Rule 3003(c)(3) and pursuant to the Code, any Final Order of the Bankruptcy Court or other applicable bankruptcy law, and as to which either (i) no objection to its allowance has been filed within the periods of limitation fixed by this Plan, the Code or by any order of the Bankruptcy Court or (ii) any objection to its allowance or classification has been settled, abandoned, waived, withdrawn, or has been denied by a Final Order, (d) that is expressly allowed in this Plan or (e) arises from the recovery of property under Sections 550 or 553 of the Code and is allowed in accordance with Section 502(h) of the Code.

1.5. "Alvarez Agreement" means that certain Amended Employment Agreement dated as of June 11, 2001 and approved by order of the Bankruptcy Court dated February 21, 2002 between Group and Antonio C. Alvarez II.

1.6. "Alvarez Incentive Bonus" means the payments and distributions, as set forth in Plan Schedule 1.6, to be made on the Effective Date to Antonio C. Alvarez II on account of the Administrative Claim held by Mr. Alvarez pursuant to the Alvarez Agreement, including, without limitation, such Claim on account of the Incentive Bonus, as defined in the Alvarez Agreement, plus the additional distributions to be made to Mr. Alvarez under this Plan as set forth in Plan Schedule 1.6.

1.7. "Amended Certificates of Incorporation and Bylaws" has the meaning ascribed in Section 5.5. of this Plan.

1.8. "Assets" means all assets of the Debtors or the Reorganized Debtors, as the case may be, of any nature whatsoever, including, without limitation, property of the Estate pursuant to Section 541 of the Code, Cash, Causes of Action, claims of right, interests and property, real and personal, tangible and intangible, but excluding all Claims released pursuant to this Plan or the Confirmation Order.

1.9. "Ballot" means the ballot for voting to accept or reject this Plan distributed by the Debtors to all holders of impaired Claims entitled to vote on this Plan.

1.10. "Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of New York in which the Cases were filed or any other court with jurisdiction over the Cases.

1.11. "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure and the local rules and standing orders of the Bankruptcy Court, as amended from time to time to the extent applicable to the Cases.

4

1.12. "Bar Date" means the dates by which the Bankruptcy Court ordered that proof of certain claims be filed.

1.13. "Business Day" means any day other than a Saturday, Sunday or "legal holiday" as such term is defined in Bankruptcy Rule 9006(a).

1.14. "Cases" means the reorganization proceedings of the Debtors under chapter 11 of the Code, jointly administered as Case Nos. 01-41643 (RLB) through 01-41680 (RLB).

1.15. "Cash" means cash and cash equivalents, such as bank deposits, checks and other similar items or instruments denominated in legal tender of the United States of America.

1.16. "Causes of Action" means any and all actions, causes of action, suits, accounts, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment and claims, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured and whether asserted or assertable directly or derivatively, in law, equity or otherwise.

1.17. "Claim" means "claim" as defined in Section 101(5) of the Code, as supplemented by Section 102(2) of the Code, against any of the Debtors, whether or not asserted.

1.18. "Class" means each category or group of holders of Claims or Claims and Interests as designated under this Plan.

1.19. "Code" means the United States Bankruptcy Code, 11 U.S.C. §§ 101 et seq., as amended from time to time to the extent applicable to the Cases.

1.20. "Common Stock" means, collectively, (a) the common stock of Group issued and outstanding immediately prior to the Effective Date, (b) all options, warrants, conversion, privilege or other legal or contractual rights to purchase the common stock of Group, (c) any rights associated with the common stock under that certain Rights Agreement adopted by the Board of Directors of Group in August 1999 and (d) any rights associated with the common stock of any predecessor of Group or any predecessor of Group's subsidiaries.

1.21. "Common Stock Claim" means any Claim with respect to the Common Stock of the kind described in Section 510(b) of the Code, together with any Claim asserted by an officer, director or underwriter for contribution, reimbursement or indemnification related thereto or otherwise.

1.22. "Confirmation" means "confirmation" as used in Section 1129 of the Code.

NY1 5271167v8

1.23.   "Confirmation Bonus Plan" means a plan awarding certain bonus payments totaling $1 million to selected employees of the Debtors in recognition of their contribution to the Debtors' reorganization in the Cases, 50% of which shall be payable on or as soon as practicable after April 30, 2003 and the remainder of which shall be payable on or as soon as practicable after August 31, 2003, provided that such employee remains in the active employ of the Reorganized Debtors as of the applicable payment date.

1.24.   "Confirmation Date" means the date on which the Confirmation Order is entered in the docket by the clerk of the Bankruptcy Court.

1.25.   "Confirmation Hearing" means the hearings at which the Bankruptcy Court considers Confirmation of this Plan.

1.26.   "Confirmation Order" means an order of the Bankruptcy Court confirming this Plan pursuant to Section 1129 of the Code.

1.27.   "Creditor" means "creditor" as defined in Section 101(10) of the Code and shall mean a creditor of any Debtor.

1.28.   "Creditors' Committee" means the Official Committee of Unsecured Creditors appointed by the United States Trustee for the Southern District of New York pursuant to Section 1102(a) of the Code in the Cases on June 19, 2001, as it may be reconstituted from time to time.

1.29.   "Cure" means the distribution, within five (5) Business Days after the Effective Date or such other time as may be agreed upon by the parties or as ordered by the Bankruptcy Court or another court of competent jurisdiction, of Cash or such other property as may be agreed upon by the parties, ordered by the Bankruptcy Court or another court of competent jurisdiction, as the case may be, or determined in such other manner as the Bankruptcy Court may specify, with respect to the assumption of an executory contract or unexpired lease in accordance with the provisions of Article III of this Plan.

1.30.   "Debt Coordinators" has the meaning given to such term in the Pre-Petition Facility and Intercreditor Agreements.

1.31.   "Debtors" has the meaning set forth on page 2 of this Plan, a list of which entities, together with their jurisdictions of incorporation and case numbers in the Cases, is attached hereto as Plan Schedule 1.31.

1.32.   "Designated Post-Petition Loans" shall have the meaning as such term is defined in paragraph 3 of the DIP Approval Orders.

1.33.   "Designer Finance Trust" means that certain trust established pursuant to a Declaration of Trust dated as of September 26, 1996 and a Certificate of Trust filed with the Secretary of State of the State of Delaware on September 27, 1996 for the sole purpose of issuing and selling the TOPrS.

6

1.34. "Dilution" means the dilution resulting from (a) grants pursuant to the Management Stock Incentive Program to the percentage distributions of New Warnaco Common Shares provided for under this Plan and (b) such adjustments in the total issued New Warnaco Common Shares as may occur pursuant to Section 6.5.(A) of this Plan.

1.35. "DIP Approval Orders" means, collectively, the Interim and Final Orders (a) Authorizing Debtors to (i) Obtain Post-Petition Financing, Including Execution of Credit Agreement and (ii) Grant Liens and Priority Administrative Expense Status, (b) Approving Use Of Cash Collateral and Granting Adequate Protection and (c) Scheduling Final Hearing on Post-Petition Financing and Approving Form and Manner of Notice Thereof, dated June 11, 2001 and July 9, 2001, respectively.

1.36. "DIP Credit Agreement" means the Senior Secured Super-Priority Debtor in Possession Revolving Credit Agreement dated as of June 11, 2001 by and among Warnaco Inc., Group and the Domestic Subsidiaries (defined therein), the Lenders (defined therein) and the Issuers (defined therein), as amended from time to time.

1.37. "DIP Facility" means the senior secured superpriority debtor-in-possession financing facility in an original principal amount up to $600 million, provided by the DIP Lenders pursuant to the DIP Credit Agreement, as approved by the DIP Approval Orders.

1.38. "DIP Facility Claim" means any Claim arising under the DIP Credit Agreement and related agreements.

1.39. "DIP Lenders" means the Lenders as defined in the DIP Credit Agreement.

1.40. "Disbursing Agent" means one or more disbursing agents, to be designated by the Debtors prior to the Confirmation Hearing in consultation with the Creditors' Committee, which may receive and make distributions to holders of Allowed Claims under and as provided in this Plan.

1.41. "Disclosure Statement" means the Disclosure Statement with respect to this Plan approved by order of the Bankruptcy Court and all supplements, schedules and exhibits thereto.

1.42. "Disputed Claim" means any Claim against a Debtor to the extent that (a) the allowance of such Claim or any portion thereof is the subject of an objection, appeal or motion to estimate that has been timely filed by a party in interest and which objection, appeal or motion has not been determined by a Final Order, (b) such Claim is scheduled by the Debtors in the Schedules as disputed, contingent and/or unliquidated or (c) during the period prior to the deadline fixed by this Plan and/or the Bankruptcy Court for objecting to such Claim, such Claim is in excess of the amount scheduled as other than disputed, unliquidated or contingent.

1.43. "Distribution Record Date" means the date which is ten days prior to the Voting Deadline.

1.44.　"Effective Date" means the first Business Day that is 10 days after the later of the date on which (a) all conditions precedent set forth in Section 4.1. of this Plan have been satisfied or waived as provided in Section 4.2. of this Plan and (b) no stay of the Confirmation Order is in effect.

1.45.　"ERISA" means the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1301-1461 (1994 & Supp. IV 1998).

1.46.　"Estate" means the estates of the Debtors, individually or collectively, as is appropriate in the context, created in the Cases pursuant to Section 541 of the Code.

1.47.　"Exculpated Persons" has the meaning ascribed in Section 7.4. of this Plan.

1.48.　"Exhibit Filing Date" means the date on which certain exhibits and schedules to this Plan, which shall be in a form reasonably acceptable to the Debt Coordinators and the Creditors' Committee, shall be filed with the Bankruptcy Court, which date shall be at least ten days prior to the Voting Deadline.

1.49.　"Exit Financing Facility" means the senior secured asset-based financing facility to be entered into by the Reorganized Debtors and the lender(s) thereunder as contemplated in Section 5.7. of this Plan, providing for the principal terms and conditions set forth on Plan Schedule 5.7 to be filed on or before the Exhibit Filing Date.

1.50.　"Face Amount" means respecting a Claim, the amount equal to the first of the following that is applicable:　(a) the amount fixed or estimated in an order of the Bankruptcy Court; (b) the liquidated amount set forth in a proof of claim filed by the applicable Bar Date; or (c) the amount of the Claim listed in the Schedules as liquidated or not contingent. If none of the foregoing applies, the Face Amount of the Claim shall be zero ($0) dollars.

1.51.　"Filed Fee Applications" has the meaning ascribed in Section 5.2. of this Plan.

1.52.　"Final Distribution Date" means the first Business Day that is ten (10) days (or such longer period as may be reasonably determined by the Reorganized Debtors in consultation with the Post-Effective Date Committee) after the date on which all Disputed Claims have been resolved by Final Order.

1.53.　"Final Order" means an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the subject matter (a) that has not been reversed, stayed, modified or amended and as to which (i) any right to appeal or seek certiorari, review, reargument, stay or rehearing has been waived or (ii) the time to appeal or seek certiorari, review, reargument, stay or rehearing has expired and no appeal or petition for certiorari, review, reargument, stay or rehearing is pending or (b) as to which an appeal has been taken or petition for certiorari, review, reargument, stay or rehearing has been filed and (i) such appeal or petition for certiorari, review, reargument, stay or rehearing has been resolved by the

8

highest court to which the order or judgment was appealed or from which certiorari, review, reargument, stay or rehearing was sought or (ii) the time to appeal further or seek certiorari, further review, reargument, stay or rehearing has expired and no such further appeal or petition for certiorari, further review, reargument, stay or rehearing is pending.

1.54. "GE Capital" means General Electric Capital Corporation.

1.55. "GE Capital Settlement Agreement" means that certain settlement agreement entered into by and among the Debtors and GE Capital, for itself and other participants, approved by the GE Settlement Order.

1.56. "GE Settlement Amount" has the meaning ascribed in Section 2.6.(C) of this Plan.

1.57. "GE Settlement Order" means that certain Order Pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (i) Approving the Settlement Between the Debtors and GE Capital Settlement, inter alia, of the Claims Asserted in the Motions Filed Pursuant to 11 U.S.C. § 365(d)(10) (Docket #266 and #268) and Cross Motion for Partial Summary Judgment (Docket #796) and (ii) Authorizing Entry into a Settlement Agreement, entered by the Bankruptcy Court on June 12, 2002.

1.58. "Group" means The Warnaco Group, Inc., as defined on page 2 of this Plan, a Delaware corporation and debtor-in-possession in the above-captioned Case No. 01-41643 (RLB), pending in the Bankruptcy Court.

1.59. "Initial Distribution Date" means the first Business Day that is ten (10) days (or such longer period as may be reasonably determined by the Reorganized Debtors in consultation with the Post-Effective Date Committee) after the Effective Date.

1.60. "Intellectual Property Contract" means any contract or agreement relating to the right to use trademarks, service marks, trade names, personal names, endorsements, domain names, designs, patents, art work, trade secrets, copyrights and other proprietary mediums.

1.61. "Intercompany Claim" means a Claim by a Debtor or an affiliate of a Debtor against a Debtor or an affiliate of a Debtor.

1.62. "Interest" means all rights (including unpaid dividends) arising from any equity security (as defined in Section 101(16) of the Code) of any of the Debtors, including, without limitation, the Common Stock, but excluding Common Stock Claims.

1.63. "Interim Distribution Date" means any date after the Initial Distribution Date on which the Reorganized Debtors determine, in consultation with the Post-Effective Date Committee, that an interim distribution should be made to Class 5, in light of, inter alia, resolutions of Disputed Claims and the administrative costs of such a distribution.

1.64. "Lien" means, with respect to any interest in property, any mortgage, lien, pledge, charge, security interest, easement or encumbrance of any kind whatsoever affecting such interest in property.

1.65. "Management Stock Incentive Program" means a stock incentive plan, pursuant to which, among other provisions, the Reorganized Debtors will reserve 10.0% of the New Warnaco Common Shares for award to certain members of management of the Reorganized Debtors, on a date and in a manner to be determined in the sole discretion of the Board of Directors of Reorganized Warnaco.

1.66. "New Warnaco Common Shares" means the shares of common stock of Reorganized Warnaco that are to be issued and outstanding pursuant to, and as contemplated in, Section 5.9. of this Plan.

1.67. "New Warnaco Second Lien Notes" means the notes to be issued by Reorganized Warnaco, as contemplated in Sections 2.1.(C) and 2.5.(C) of this Plan on account of the Alvarez Incentive Bonus and the Senior Secured Bank Claims, respectively, containing the principal terms and conditions set forth on Plan Schedule 1.67.

1.68. "Original Domestic Facilities" means all unsecured credit facilities entered into by any of the Debtors prior to October 6, 2000, referred to in the Pre-Petition Facility and Intercreditor Agreements, and listed on Plan Schedule 1.68.

1.69. "Original Foreign Facilities" means all unsecured credit facilities entered into by any Warnaco Non-Debtor Subsidiary prior to October 6, 2000, referred to in the Pre-Petition Facility and Intercreditor Agreements, and listed on Plan Schedule 1.69.

1.70. "Original Foreign Facilities Guaranty Claims" means the Claims arising under guaranties issued by any Debtor in respect of obligations under the Original Foreign Facilities, determined in each case as of the Petition Date.

1.71. "Other Secured Claim" means a Secured Claim not classified in Class 2 and Class 3 under this Plan.

1.72. "PBGC" means the Pension Benefit Guaranty Corporation, a wholly-owned United States government corporation that administers the defined benefit pension plan termination insurance program under Title IV of ERISA.

1.73. "Pension Plan" means the Employee Retirement Plan of Warnaco Inc., a defined benefit pension plan covered by Title IV of ERISA and sponsored by Warnaco Inc.

1.74. "Person" means any person, including, without limitation, any individual, partnership, joint venture, association, corporation, limited liability company, limited liability partnership company, trust, estate, unincorporated organization or governmental unit.

1.75. "Petition Date" means June 11, 2001, the date on which the petitions initiating the Cases were filed with the Bankruptcy Court.

1.76. "Plan" means this First Amended Joint Plan of Reorganization, as defined on page 2 of this Plan, and all addenda, exhibits, schedules and other attachments hereto, all of which are incorporated herein by reference, as the same may be amended from time to time, pursuant to this Plan, the Code or the Bankruptcy Rules.

1.77. "Post-Effective Date Committee" has the meaning ascribed in Section 5.2. of this Plan.

1.78. "Post-Effective Date Committee Expenses" has the meaning ascribed in Section 5.2. of this Plan.

1.79. "Post-Effective Date Committee Fees" has the meaning ascribed in Section 5.2. of this Plan.

1.80. "Pre-Petition Collateral Trustee" shall have the meaning as such term is defined in paragraph C of the DIP Approval Orders.

1.81. "Pre-Petition Facility and Intercreditor Agreements" means, collectively, (a) the Amendment, Modification, Restatement and General Provisions Agreement dated as of October 6, 2000 (as amended, supplemented or otherwise modified) among The Warnaco Group, Inc., Warnaco Inc., the other direct and indirect subsidiaries of Group party thereto, The Bank of Nova Scotia, as Administrative Agent, Scotiabank and Citibank, N.A., as Debt Coordinators, for themselves and as representatives of each of the Lender Parties, and State Street Bank and Trust Company, as Collateral Trustee and (b) the Intercreditor Agreement dated as of October 6, 2000 (as amended, supplemented or otherwise modified) among The Warnaco Group, Inc., Warnaco Inc., the other subsidiaries of The Warnaco Group, Inc. party thereto, The Bank of Nova Scotia, as Administrative Agent, The Bank of Nova Scotia and Salomon Smith Barney Inc., as Lead Arrangers, The Bank of Nova Scotia and Citibank, N.A., as Debt Coordinators, The Bank of Nova Scotia, Salomon Smith Barney Inc., Morgan Guaranty Trust Company of New York, Commerzbank A.G., New York Branch and Société Générale, as Arrangers, Société Générale, as Security Agent, the other financial institutions from time to time parties thereto and State Street Bank and Trust Company, as Collateral Trustee.

1.82. "Pre-Petition Secured Lenders" means those lenders enumerated in the Pre-Petition Facility and Intercreditor Agreements, as such lenders may be constituted from time to time.

1.83. "Pre-Petition Releasees" has the meaning ascribed in Section 7.5. of this Plan.

1.84. "Pre-Petition Released Matters" has the meaning ascribed in Section 7.5. of this Plan.

1.85.    "Priority Non-Tax Claim" means a Claim to the extent that it is of the kind described in, and entitled to priority under, Section 507(a)(3), (4), (5) or (6) of the Code.

1.86.    "Priority Tax Claim" means a Claim to the extent that it is of the kind described in, and entitled to priority under, Section 507(a)(8) of the Code.

1.87.    "Registration Rights Agreement" means that certain agreement, to be dated as of the Effective Date, and filed on or before the Exhibit Filing Date, between Reorganized Warnaco, Antonio C. Alvarez II and certain creditors of the Debtors.

1.88.    "Reorganized Debtors" means, on and after the Effective Date, collectively, all of the Debtors that are reorganized under and pursuant to this Plan, and not merged pursuant to Section 5.4. of this Plan.

1.89.    "Reorganized Warnaco" means, on and after the Effective Date, Group, as reorganized under and pursuant to this Plan.

1.90.    "Rights Plan" means the rights plan to be filed on or prior to the Exhibit Filing Date, providing for, inter alia, the distribution to holders of New Warnaco Common Shares of one preferred share purchase right for each New Warnaco Common Share then outstanding.

1.91.    "Schedules" means the joint Schedules of Assets, Liabilities and Executory Contracts filed by the Debtors with the Clerk of the Bankruptcy Court for the Southern District of New York pursuant to Bankruptcy Rule 1007, as such schedules have been or may be amended or supplemented by the Debtors from time to time.

1.92.    "SEC" means the Securities and Exchange Commission.

1.93.    "Secured Claim" means a Claim that constitutes a secured claim under Section 506(a) or 1111(b) of the Code.

1.94.    "Securities Act" means the Securities Act of 1933, as amended, and the rules and regulations promulgated thereunder.

1.95.    "Senior Secured Bank Claim" means all Claims arising under or relating to the Pre-Petition Facility and Intercreditor Agreements, the Original Domestic Facilities, the Original Foreign Facilities and related agreements, and the DIP Approval Orders, including, without limitation, the Designated Post-Petition Loans, but excluding any claims against any Warnaco Non-Debtor Subsidiary under or relating to the Pre-Petition Facility and Intercreditor Agreements and the Original Foreign Facilities.

1.96.    "Single-Employer Pension Plan Claims" means all Claims of the PBGC against any of the Debtors, whether or not filed in the Cases, including, without limitation, proof of claim numbers 1435, 1436 and 1437 filed by the PBGC.

NY1 5271167v8

1.97. "TOPrS" means the 6% Convertible Trust Originated Preferred Securities and the 6% Convertible Common Securities issued by Designer Finance Trust and representing undivided beneficial interests in the assets of Designer Finance Trust.

1.98. "TOPrS Claim" means any claim arising under or with respect to the TOPrS Indenture, the TOPrS Supplemental Indenture, the TOPrS Guarantees, the TOPrS Trust Agreement or any documents executed in connection with or related to the issuance of the TOPrS, including, without limitation, the claims asserted in proofs of claim numbered 1692, 1693, 1694, and 1695 filed by the TOPrS Trustee.

1.99. "TOPrS Guarantees" means, collectively, (i) that certain Preferred Securities Guarantee Agreement of The Warnaco Group, Inc. dated as of March 31, 1998, (ii) that certain Preferred Securities Guarantee Agreement of Designer Holdings Ltd. dated as of November 6, 1996, (iii) that certain Common Securities Guarantee Agreement of The Warnaco Group, Inc. dated as of March 31, 1998, and (iv) that certain Common Securities Guarantee Agreement of Designer Holdings Ltd. dated as of November 6, 1996.

1.100. "TOPrS Indenture" means that certain Indenture between Designer Holdings Ltd., as Issuer, and IBJ Schroder Bank & Trust Company, as Trustee, dated as of November 6, 1996 with respect to the 6% Convertible Subordinated Debentures due 2016.

1.101. "TOPrS Supplemental Indenture" means that certain First Supplemental Indenture between Designer Holdings Ltd., The Warnaco Group, Inc. and IBJ Schroder Bank & Trust Company, as Trustee, dated as of March 31, 1998.

1.102. "TOPrS Trust Agreement" means that certain Declaration of Trust, dated as of September 26, 1996, as amended by the Amended and Restated Declaration of Trust, dated as of November 6, 1996, among Designer Holdings Ltd., as Sponsor, IBJ Schroder Bank & Trust Company, as Property Trustee, Delaware Trust Capital Management, Inc., as Delaware Trustee, and Arnold H. Simon and Merril M. Halpern, as Regular Trustees.

1.103. "TOPrS Trustee" means, collectively, (i) the Indenture Trustee under the TOPrS Indenture and the TOPrS Supplemental Indenture, (ii) the Property Trustee for the holders of the TOPrS, (iii) the Guarantee Trustee with respect to the TOPrS Guarantees, and (iv) the Property Trustee, as the sole holder of the 6% Convertible Subordinated Debentures due 2016, currently Wells Fargo Bank Minnesota, N.A.

1.104. "TOPrS Trustee Charging Lien" means any Lien or other priority in payment arising prior to the Effective Date to which the TOPrS Trustee is entitled, pursuant to the TOPrS Indenture, the TOPrS Supplemental Indenture, the TOPrS Guarantees, and the TOPrS Trust Agreement, against distributions to be made to holders of TOPrS Claims for payment of any TOPrS Trustee Fee.

1.105. "TOPrS Trustee Fee" means the reasonable compensation, fees, expenses, disbursements and indemnity claims, including, without limitation, attorneys' and agents' fees, expenses and disbursements, incurred by the TOPrS Trustee, whether prior to or after the Petition Date and whether prior to or after the consummation of the Plan.

13

1.106. "Unclaimed Property" means any distribution under the Plan that is unclaimed by the holder of the Allowed Claim entitled to such distribution ninety (90) days after the distribution date applicable to such distribution.

1.107. "Unsecured Claim" means a Claim that is not an Administrative Claim, a Priority Tax Claim, a Priority Non-Tax Claim, a Secured Claim, a Senior Secured Bank Claim, a TOPrS Claim, an Intercompany Claim or a Common Stock Claim.

1.108. "Unsecured Pool" means the shares of New Warnaco Common Shares to be delivered to the Disbursing Agent by Reorganized Warnaco in accordance with Section 6.3. of this Plan for distribution to holders of Allowed Class 5 Claims.

1.109. "Voting Deadline" means the date set in an order of the Bankruptcy Court as the deadline for the return of Ballots accepting or rejecting this Plan.

1.110. "Warnaco Non-Debtor Subsidiary" means any direct or indirect subsidiary of Group that is not a Debtor in the Cases.

**B.** **Interpretation.** For purposes of this Plan: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural; (b) unless otherwise provided in this Plan, any reference in this Plan to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions; (c) unless otherwise provided in this Plan, any reference in this Plan to an existing document or exhibit means such document or exhibit, as it may have been or may be amended, modified or supplemented pursuant to this Plan; (d) unless otherwise specified herein, any reference to an entity as a holder of a Claim includes that entity's successors, assigns and affiliates; (e) unless otherwise specified, all references in this Plan to Sections, Articles, schedules and exhibits are references to Sections, Articles, schedules and exhibits of or to this Plan; (f) the words "herein" and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (g) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be part of or to affect the interpretation of this Plan; and (h) the rules of construction set forth in Section 102 of the Code will apply.

**C.** **Computation of Time.** In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) will apply.

# ARTICLE II

## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

The following is a designation of the Classes of Claims and Interests classified under this Plan. A Claim or Interest is in a particular Class for purposes of voting on, and of receiving distributions pursuant to, this Plan only to the extent that such Claim or Interest is an Allowed Claim or Interest in that Class and such Claim or Interest has not been paid, released or

otherwise settled prior to the Effective Date. Claims against more than one Debtor with respect to a single obligation, by reason of guaranty, joint or "control group" liability, or otherwise, shall be deemed to be a single Claim in the Allowed amount of such obligation for purposes of voting, allowance, distribution and all other purposes under this Plan. In accordance with Section 1123(a)(1) of the Code, Administrative Claims and Priority Tax Claims have not been classified, although the treatment for such unclassified Claims is set forth below.

## A. **Unclassified Claims.**

### 2.1. Administrative Claims.

(A) General. Subject to the provisions of Section 6.6.(A) of this Plan and unless otherwise agreed by the holder of an Allowed Administrative Claim (in which event such other agreement shall govern), and except with respect to the Alvarez Incentive Bonus (see subsection (C) below), the Designated Post-Petition Loans (see subsection (D) below), and claims of the Debt Coordinators and the Pre-Petition Collateral Trustee payable under paragraph 22 of the DIP Approval Orders, each holder of an Allowed Administrative Claim shall be paid in full in Cash (i) at the sole option of the Debtors (before the Effective Date) or the Reorganized Debtors (on or after the Effective Date), (a) in the ordinary course of business as the Claim becomes due and owing or (b) on the Initial Distribution Date or (ii) on such other date as the Bankruptcy Court may order.

(B) Statutory Fees. On the Effective Date, Administrative Claims for fees payable pursuant to Section 1930 of title 28 of the United States Code, 28 U.S.C. § 1930, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid in Cash in an amount equal to the amount of such Administrative Claims. All such fees payable after the Effective Date will be assumed and paid by the Reorganized Debtors.

(C) Alvarez Incentive Bonus. On the Effective Date, the Reorganized Debtors shall make the payments in Cash and the distributions of New Warnaco Second Lien Notes and New Warnaco Common Shares, as set forth in Plan Schedule 1.6, in satisfaction of the Alvarez Incentive Bonus.

(D) Designated Post-Petition Loans. The Designated Post-Petition Loans shall be satisfied in full by the payments and distributions to be made to the Pre-Petition Secured Lenders as set forth in Section 2.5.(C) of this Plan.

### 2.2. Priority Tax Claims. Unless otherwise agreed by the holder of an Allowed Priority Tax Claim (in which event such other agreement shall govern), each holder of an Allowed Priority Tax Claim shall receive, on the Initial Distribution Date, at the Reorganized Debtors' option, (a) Cash equal to the amount of such Allowed Priority Tax Claim or (b) Cash in six equal annual installments, together with interest thereon at the legal rate required for such claims in chapter 11 cases, which interest shall be paid annually in arrears pursuant to Section 1129(a)(9)(C) of the Code.

15

2.3.    DIP Facility Claim.  On the Effective Date, the DIP Facility Claim shall be paid in full in Cash, or otherwise satisfied in a manner acceptable to the DIP Lenders; provided, however, that all letters of credit under the DIP Facility as of the Effective Date shall remain outstanding as of the Effective Date and shall be paid, in the event drawn, through a borrowing by the Reorganized Debtors under the Exit Financing Facility.

## B.    Classified Claims and Interests.

2.4.    Class 1 -- Priority Non-Tax Claims.

(A)    Classification.  Class 1 consists of all Priority Non-Tax Claims.

(B)    Allowance.  Class 1 Claims shall be allowed or disallowed in accordance with Section 6.6.(B) of this Plan and applicable provisions of the Code and Bankruptcy Rules.

(C)    Treatment.  Unless otherwise agreed by the holder of an Allowed Priority Non-Tax Claim (in which event such agreement shall govern), each holder of an Allowed Class 1 Claim shall be paid in full in Cash on the later of the Initial Distribution Date and a date that is as soon as practicable after the date upon which such Claim becomes an Allowed Priority Non-Tax Claim.

(D)    Impairment and Voting.  Class 1 Claims are unimpaired and the holders thereof are not entitled to vote on this Plan.

2.5.    Class 2 -- Senior Secured Bank Claims.

(A)    Classification.  Class 2 consists of all Senior Secured Bank Claims.

(B)    Allowance.  Class 2 Claims shall be Allowed Claims pursuant to this Plan and entitled to the distributions set forth herein.

(C)    Treatment.  On the Effective Date, each holder of a Senior Secured Bank Claim shall receive in full satisfaction of its Senior Secured Bank Claim its pro rata share of the following, to be distributed by the Administrative Agent in accordance with the Pre-Petition Facility and Intercreditor Agreements:  (i) Cash equal to the amount of the balance due on the Original Foreign Facilities Guaranty Claims, which shall be applied to repay in full satisfaction of any outstanding amounts owing by the Debtors under the Original Foreign Facilities as of the Petition Date; (ii) New Warnaco Second Lien Notes in the aggregate principal amount of $200 million; and (iii) 96.263% of the New Warnaco Common Shares, subject to Dilution.  In the event that holders of Class 6 Claims are not entitled to receive a distribution as provided in Section 2.9.(C) of this Plan, on the Effective Date, each holder of a Class 2 Senior Secured Bank Claim will receive its pro rata share of an additional 0.581% of the New Warnaco Common Shares, subject to Dilution.

16

(D)     **Impairment and Voting**.  Class 2 Claims are impaired and the holders thereof are entitled to vote on this Plan.

2.6.    Class 3 -- GE Capital Secured Claims Under the 1997 MLA.

(A)     **Classification**.  Class 3 consists of GE Capital Secured Claims Under the 1997 MLA.

(B)     **Allowance**.  Class 3 Claims shall be Allowed as provided in the GE Capital Settlement Agreement.

(C)     **Treatment**.  The GE Capital Settlement Agreement and the GE Settlement Order and each of their provisions shall be deemed to be a part of this Plan and the Confirmation Order.  As provided in the GE Capital Settlement Agreement, in satisfaction of obligations arising under the 1997 MLA, GE Capital shall receive an amount equal to $15.2 million (the "GE Settlement Amount"), less all amounts paid by the Debtors to GE Capital with respect to the 1997 MLA from the Petition Date through and including the Effective Date, which amount shall be payable without interest at the rate of $750,000 per month from and after the Effective Date until the GE Settlement Amount is paid in full.  GE Capital shall retain its first priority perfected security interest in and to all of the 1997 Equipment (as that term is defined in the GE Capital Settlement Agreement) all as more particularly set forth in the GE Capital Settlement Agreement.  To the extent of a conflict between the GE Capital Settlement Agreement and/or the GE Settlement Order, on the one hand, and this Plan and/or the Confirmation Order, on the other hand, the terms of the GE Capital Settlement Agreement and the GE Settlement Order shall govern and control.

(D)     **Impairment and Voting**.  Class 3 Claims are unimpaired and the holders thereof are not entitled to vote on this Plan.

2.7.    Class 4 -- Other Secured Claims.

(A)     **Classification**.  Class 4 consists of Other Secured Claims.

(B)     **Allowance**.  Class 4 Claims shall be allowed or disallowed in accordance with Section 6.6.(B) of this Plan and applicable provisions of the Code and Bankruptcy Rules.

(C)     **Treatment**.  Other Secured Claims against the Debtors shall, at the sole option of the Debtors, be:  (i) paid in full in Cash on the Initial Distribution Date; (ii) reinstated according to the terms of the relevant instrument; (iii) paid on such other terms as the Debtors and the holder of such Claim may agree; or (iv) satisfied through the surrender by the applicable Debtors of the collateral securing the Claim to the holder thereof.

(D)     **Impairment and Voting**.  Class 4 Claims are unimpaired and the holders thereof are not entitled to vote on this Plan.

NY1 5271167v8

2.8.    Class 5 -- Unsecured Claims.

(A)    Classification.  Class 5 consists of Unsecured Claims.

(B)    Allowance.  Class 5 Claims shall be allowed or disallowed in accordance with Section 6.6.(B) of this Plan and applicable provisions of the Code and Bankruptcy Rules.

(C)    Treatment.  Each holder of an Allowed Unsecured Claim shall receive its pro rata share of 2.549% of the New Warnaco Common Shares, subject to Dilution.  In the event that holders of Class 6 Claims are not entitled to receive a distribution as provided in Section 2.9.(C) of this Plan, each holder of an Allowed Unsecured Claim will receive its pro rata share of an additional 0.015% of the New Warnaco Common Shares, subject to Dilution.

(D)    Impairment and Voting.  Class 5 Claims are impaired and the holders thereof are entitled to vote on this Plan.

2.9.    Class 6 -- TOPrS Claims.

(A)    Classification.  Class 6 consists of TOPrS Claims.

(B)    Allowance.  Class 6 Claims shall be Allowed Claims pursuant to this Plan and entitled to the distributions set forth herein; provided, however, that any proof of claim in respect of the TOPrS filed by a registered or beneficial holder of a TOPrS Claim shall be disallowed as duplicative of proofs of claim numbered 1692, 1693, 1694 and 1695 filed by the TOPrS Trustee.

(C)    Treatment.  In the event that the holders of the TOPrS Claims vote as a Class to reject this Plan, the holders of TOPrS Claims shall not receive or retain any interest or property under this Plan, and no distribution shall be made on account of the TOPrS Claims, and the New Warnaco Common Shares that would otherwise be distributed on account of the TOPrS Claims as set forth in the next sentence shall instead be distributed pro rata to holders of Allowed Class 2 and Allowed Class 5 Claims in the following percentages: 0.581% to the holders of Allowed Class 2 Claims and 0.015% to the holders of Allowed Class 5 Claims, subject to Dilution.  Otherwise, in full satisfaction of the TOPrS Claims, on the Initial Distribution Date, the Reorganized Debtors shall distribute to the TOPrS Trustee, subject to the right of the TOPrS Trustee to assert its TOPrS Trustee Charging Lien against the distributions to the holders of the TOPrS to the extent the TOPrS Trustee Fee remains unpaid, or such persons as the TOPrS Trustee shall designate at least ten days prior to the Confirmation Hearing, for redelivery to the holder(s) of the TOPrS Claims, a stock certificate evidencing ownership of 0.596% of the New Warnaco Common Shares, subject to Dilution, and in addition shall pay the amount of up to $300,000 to the TOPrS Trustee on account of the TOPrS Trustee Fee, subject to receipt and review by the Debtors of invoices detailing such fees and expenses.

(D)    Impairment.  TOPrS Claims are impaired.

18

2.10. Class 7 -- Intercompany Claims.

(A) Classification. Class 7 consists of Intercompany Claims.

(B) Treatment. Subject to Section 5.10. of this Plan, Intercompany Claims shall be discharged, and the holders of Intercompany Claims shall not be entitled to receive or retain any property on account of such Claims.

2.11. Class 8 -- Common Stock Claims and Interests.

(A) Classification. Class 8 consists of Common Stock Claims and Interests.

(B) Treatment. Interests shall be cancelled, and the holders of Common Stock Claims and Interests shall not be entitled to receive or retain any property on account of such Claims and Interests.

(C) Impairment and Voting. Class 8 Claims and Interests are impaired and the holders thereof are deemed not to have accepted this Plan.

## ARTICLE III

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

3.1. Rejected Contracts and Leases. Each executory contract and unexpired lease to which any of the Debtors is a party shall be deemed automatically rejected as of the Effective Date, except with respect to Intellectual Property Contracts, which shall be deemed automatically assumed as of the Effective Date, unless such executory contract or unexpired lease (a) shall have been previously rejected or assumed by order of the Bankruptcy Court or (b) is the subject of a motion to assume or reject filed on or before the Confirmation Date or (c) is listed on the schedule of contracts and leases to be rejected or assumed pursuant to this Plan, annexed as Plan Schedules 3.1 and 3.2, respectively (and as the same may be modified or supplemented, if at all, pursuant to Section 3.3.(B) of this Plan). The Confirmation Order shall constitute an order of the Bankruptcy Court approving such deemed rejection or assumption (with respect to Intellectual Property Contracts only), as applicable, as of the Effective Date. All executory contracts and unexpired leases specifically listed on the schedule of rejected executory contracts and unexpired leases, annexed as Plan Schedule 3.1, shall be deemed automatically rejected pursuant to this Plan by the applicable Debtor as of the Effective Date.

3.2. Assumed Contracts and Leases. All executory contracts and unexpired leases specifically listed on the schedule of assumed executory contracts and unexpired leases, annexed as Plan Schedule 3.2 and modified or supplemented, if at all, pursuant to Section 3.3.(B) of this Plan, shall be deemed automatically assumed pursuant to this Plan by the applicable Debtor as of the Effective Date.

Each executory contract and unexpired lease that is assumed under this Plan and relates to the use, ability to acquire or occupancy of real property shall include (a) all

modifications, amendments, supplements, restatements or other agreements made directly or indirectly by any agreement, instrument or other document that in any manner affect such executory contract or unexpired lease and (b) all executory contracts or unexpired leases appurtenant to the premises, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, powers, uses, reciprocal easement agreements and any other interests in real estate or rights in rem related to such premises, unless any of the foregoing agreements has been rejected pursuant to a Final Order of the Bankruptcy Court or is otherwise rejected as part of this Plan.

3.3. Miscellaneous.

(A)    The Debtors reserve the right to file a motion on or before the Confirmation Date to assume or reject any executory contract or unexpired lease.

(B)    Notwithstanding any other provision of this Plan, each of the Debtors shall retain the right to, at any time prior to the Confirmation Hearing, modify or supplement Plan Schedule 3.1 and Plan Schedule 3.2, including, without limitation, the right to add any executory contract or unexpired lease to, or delete any executory contract or unexpired lease from, Plan Schedule 3.1 or Plan Schedule 3.2.

(C)    Listing an executory contract or unexpired lease on Plan Schedule 3.1 or Plan Schedule 3.2 shall not constitute an admission by any of the Debtors or the Reorganized Debtors that such contract or lease (including any related agreements that may exist) is an executory contract or unexpired lease or that the applicable Debtor or Reorganized Debtor has any liability thereunder.

3.4.    Payments Related to Assumption of Executory Contracts and Unexpired Leases.  Any monetary amounts by which each executory contract and unexpired lease to be assumed under this Plan may be in default shall be satisfied by Cure in the amount, if any, set forth in Plan Schedule 3.2, or, in the event of an objection to such Cure amount or if no such Cure amount is listed, in the amount agreed between the parties or as ordered by the Bankruptcy Court or another court of competent jurisdiction.  To the extent the non-Debtor party to the unexpired lease or executory contract does not object to the amount of Cure set forth in Plan Schedule 3.2 on or before the Voting Deadline, such non-Debtor party shall be deemed to accept such Cure amount.  In the event of a dispute regarding (a) the nature or the amount of any Cure, (b) the ability of the applicable Reorganized Debtor or any assignee to provide "adequate assurance of future performance" (within the meaning of Section 365 of the Code) under the contract or lease to be assumed or (c) any other matter pertaining to assumption, such dispute shall be determined by the Bankruptcy Court or another court of competent jurisdiction, or as the parties may otherwise agree.  To the extent that the Debtor who is a party to the unexpired lease or executory contract is to be merged pursuant to Section 5.4. of this Plan, upon assumption as contemplated herein, the Reorganized Debtor that is the surviving entity after such merger shall be the party to the unexpired lease or executory contract.

3.5.    Post-Petition Contracts and Leases.  All contracts, agreements and leases that were entered into by the Debtors or assumed by the Debtors after the Petition Date shall be deemed assigned by the Debtors to the Reorganized Debtors on the Effective Date.

3.6.    Rejection Damages Bar Date.  If the rejection by a Debtor, pursuant to this Plan or otherwise, of an executory contract or unexpired lease results in a Claim, then such Claim shall be forever barred and shall not be enforceable against any Debtor or Reorganized Debtor or the properties of any of them unless a proof of claim is filed with the clerk of the Bankruptcy Court and served upon counsel to the Debtors within thirty (30) days after service of the earlier of (a) notice of the Confirmation Date or (b) other notice that the executory contract or unexpired lease has been rejected pursuant to an order of the Bankruptcy Court.

## ARTICLE IV

## CONDITIONS PRECEDENT

4.1.    Conditions to Occurrence of Effective Date.  The following are conditions precedent to the occurrence of the Effective Date, each of which may be satisfied or waived in accordance with Section 4.2. of this Plan: (i) the Reorganized Debtors have entered into definitive documentation with respect to the Exit Financing Facility and the New Warnaco Second Lien Notes, and all conditions precedent under such Facility and Notes shall have been satisfied (but for the occurrence of the Effective Date); (ii) the Reorganized Debtors have entered into the Registration Rights Agreement; (iii) the Confirmation Order has been entered by the Bankruptcy Court; (iv) at least ten (10) days have elapsed since the Confirmation Date; (v) no stay of the Confirmation Order is in effect; and (vi) the Confirmation Order has not been reversed, modified or vacated.

4.2.    Waiver of Conditions to Consummation.  The conditions set forth in Section 4.1. of this Plan may be waived, in whole or in part, upon the mutual consent of the Debtors, the Debt Coordinators and the Creditors' Committee, without notice to any other parties in interest or the Bankruptcy Court and without a hearing.  No waiver or non-waiver of any conditions to Confirmation or to the Effective Date shall diminish the application of the mootness doctrine with respect to the Confirmation of this Plan or any order entered in connection therewith, which doctrine shall apply to the fullest extent of applicable law.

4.3.    Non-Consensual Confirmation.  Because Class 7 and Class 8 are deemed not to have accepted this Plan pursuant to Section 1126(g) of the Code, as to such Classes and any other Class that votes to reject this Plan, the Debtors are seeking confirmation of this Plan in accordance with Section 1129(b) of the Code, either under the terms provided herein or upon such terms as may exist if this Plan is modified in accordance with Section 1127(d) of the Code.

NY1 5271167v8

# ARTICLE V

## IMPLEMENTATION OF PLAN

5.1.     Pre-Effective Date Management and Operation of Debtors.  After the Confirmation Date and until the Effective Date, the current directors and officers of each Debtor shall continue to serve in such capacities, subject to such changes as may be determined by the Board of Directors of a Debtor in accordance with the current Bylaws and Certificates of Incorporation of such Debtor.

5.2.     Post-Effective Date Committee; Dissolution of Committee.  The Creditors' Committee shall continue to exist after the Confirmation Date until the Effective Date with the same power and authority, and the same ability to retain and compensate professionals, as it had prior to the Confirmation Date.  On and as of the Effective Date, the Creditors' Committee shall be reconstituted and shall be comprised of no more than seven (7) members of the Creditors' Committee prior to the Effective Date (the "Post-Effective Date Committee"). The members of the Creditors' Committee who are not members of the Post-Effective Date Committee shall be released and discharged of and from all further authority, duties, responsibilities, and obligations related to and arising from and in connection with the Cases.  In the event of the death or resignation of any member of the Post-Effective Date Committee after the Effective Date, the remaining members of the Post-Effective Date Committee shall have the right to designate a successor from among the holders of Allowed Class 5 Claims.  If a Post-Effective Date Committee member assigns its Claim or releases the Debtors from payment of all or the balance of its Claim, such act shall constitute a resignation from the Post-Effective Date Committee.  Until a vacancy on the Post-Effective Date Committee is filled, the Post-Effective Date Committee shall function in its reduced number.  The Reorganized Debtors shall consult with the Post-Effective Date Committee on a regular basis concerning the Reorganized Debtors' investigation, prosecution and proposed settlement of Class 5 Claims and shall provide written reports to the Post-Effective Date Committee on a monthly basis regarding the status of the Claims resolution process.  The Reorganized Debtors shall not settle or compromise any Class 5 Claim in excess of the Allowed amount of $25,000 without either the approval of the Post-Effective Date Committee (which shall act by majority vote) or an order of the Bankruptcy Court.  Subject to the approval of the Post-Effective Date Committee, the Reorganized Debtors may settle or compromise any Class 5 Claim in excess of the Allowed amount of $25,000 without an order of the Bankruptcy Court.  The Reorganized Debtors may settle or compromise any Class 5 Claim for less than the Allowed amount of $25,000 without an order of the Bankruptcy Court and without the approval of the Post-Effective Date Committee.  The duties of the Post-Effective Date Committee shall also include services related to any applications for allowance of compensation or reimbursement of expenses pending on the Effective Date or filed after the Effective Date (collectively, the "Filed Fee Applications").  The Reorganized Debtors shall pay (a) the reasonable expenses of the members of the Creditors' Committee between the Confirmation Date and the Effective Date, and the Post-Effective Date Committee (the "Post-Effective Date Committee Expenses") and (b) the reasonable fees of the professional persons employed by the Post-Effective Date Committee in connection with its duties and responsibilities as set forth in this Plan (the "Post-Effective Date Committee Fees"); provided, however, that the total aggregate amount of the Post-Effective Date Committee Expenses and the Post-Effective

Date Committee Fees shall not exceed $100,000.00 (exclusive of services related to Filed Fee Applications). The Post-Effective Date Committee Fees and the Post-Effective Date Committee Expenses shall be paid within fifteen (15) Business Days after submission of a detailed invoice therefor to the Reorganized Debtors. If the Reorganized Debtors dispute the reasonableness of any such invoice, the Reorganized Debtors, the Post-Effective Date Committee or the affected professional may submit such dispute to the Bankruptcy Court for a determination of the reasonableness of such invoice, and the disputed portion of such invoice shall not be paid until the dispute is resolved. The undisputed portion of such reasonable fees and expenses shall be paid as provided herein. The Post-Effective Date Committee shall be dissolved and the members thereof shall be released and discharged of and from further authority, duties, responsibilities and obligations relating to and arising from and in connection with the Cases on the later of (i) the Final Distribution Date and (ii) the date all services related to Filed Fee Applications are completed, and the retention or employment of the Post-Effective Date Committee's professionals shall terminate.

> 5.3. <u>Pre-Effective Date Injunctions or Stays</u>. All injunctions or stays, whether by operation of law or by order of the Bankruptcy Court, provided for in the Cases pursuant to Sections 105 or 362 of the Code or otherwise that are in effect on the Confirmation Date shall remain in full force and effect until the Effective Date.

> 5.4. <u>Merger of Certain Debtors</u>. Effective as of the Effective Date but immediately prior to the discharge of the Debtors described in Section 7.2. of this Plan, the following transactions shall occur in the following order: (i) each of Warnaco Men's Sportswear Inc., Warnaco Ventures Ltd., Ventures Ltd. and Blanche Inc. shall be merged with and into Warnaco Inc. and Warnaco Inc. shall be the surviving corporation in such merger; (ii) AEI Management Corporation shall be merged with and into Rio Sportswear Inc. and Rio Sportswear Inc. shall be the surviving corporation in such merger; (iii) CCC Acquisition Realty Corp. shall be merged with and into Authentic Fitness Products Inc. and Authentic Fitness Products Inc. shall be the surviving corporation in such merger; (iv) CKJ Sourcing Inc. shall be merged with and into Calvin Klein Jeanswear Company and Calvin Klein Jeanswear Company shall be the surviving entity in such merger; and (iv) Group shall transfer 100% of the shares held by Group in each of Myrtle Avenue, Inc., Authentic Fitness Corporation and Designer Holdings Ltd. to Warnaco Inc. Except as otherwise set forth in this Plan, or as modified by appropriate corporate action after the Effective Date, the corporate structure and equity ownership of the Debtors and their subsidiaries shall be unchanged.

> 5.5. <u>Amended Certificates of Incorporation and Bylaws</u>. As of the Effective Date, the certificates of incorporation and bylaws of each of the Debtors shall be amended as necessary to satisfy the provisions of this Plan and the Code, including, without limitation, the prohibition against the issuance of non-voting equity securities set forth in Section 1123(a)(6) of the Code (the "Amended Certificates of Incorporation and Bylaws"). The forms of Amended Certificates of Incorporation and Bylaws, to be filed on or before the Exhibit Filing Date as Exhibits 1 and 2 to this Plan, shall become effective on the Effective Date. After the Effective Date, the Amended Certificates of Incorporation and Bylaws shall be subject to such further amendments or modifications as may be made by law, or pursuant to such Amended Certificates of Incorporation and Bylaws.

NYI 5271167v8

5.6.    Post-Effective Date Management and Operation of Reorganized Debtors.  As of the Effective Date, the directors and officers of each Debtor that is not a Reorganized Debtor will be terminated.  The Debtors shall file Plan Schedule 5.6 with the Bankruptcy Court on or before the Exhibit Filing Date setting forth the offices, the names and affiliations of, and the compensation proposed to be paid to, the individuals intended to serve as directors and officers of each Reorganized Debtor on and after the Effective Date.  On and after the Effective Date, each Reorganized Debtor shall be governed in accordance with the Amended Certificates of Incorporation and Bylaws.

5.7.    Exit Financing Facility.  On the Effective Date, the Reorganized Debtors will enter into definitive documentation with respect to the Exit Financing Facility with the respective lenders thereunder.  On or about the Effective Date, the Debtors shall borrow funds under the Exit Financing Facility in amounts which, together with such other cash as is available to the Debtors, will be sufficient to make all Cash distributions to be made under this Plan.

5.8.    Issuance of New Warnaco Second Lien Notes.  On the Effective Date, Reorganized Warnaco will enter into definitive documentation with respect to, and will issue, the New Warnaco Second Lien Notes for distribution in accordance with this Plan.  The issuance of the New Warnaco Second Lien Notes and the distribution, transfer or exchange thereof in accordance with this Plan shall be exempt from registration under applicable securities laws (including without limitation, Section 5 of the Securities Act or any similar state or local law requiring the registration for offer or sale of a security or registration or licensing of an issuer or a security) pursuant to Section 1145(a) of the Code, and may be sold without registration to the extent permitted under Section 1145 of the Code.

5.9.    Issuance of New Warnaco Common Shares.  On the Effective Date, Reorganized Warnaco will issue the New Warnaco Common Shares for distribution in accordance with this Plan.  The issuance of the New Warnaco Common Shares and the distribution, transfer or exchange thereof in accordance with this Plan shall be exempt from registration under applicable securities laws (including without limitation, Section 5 of the Securities Act or any similar state or local law requiring the registration for offer or sale of a security or registration or licensing of an issuer of a security) pursuant to Section 1145(a) of the Code, and may be sold without registration to the extent permitted under Section 1145 of the Code.

5.10.    Transfer of Intercompany Claims.  Prior to the discharge of Intercompany Claims, as provided in Section 2.10.(B) of this Plan, the Debtors shall have the right to retain, or effect such transfers and setoffs with respect to, Intercompany Claims as they may deem appropriate for accounting, tax and commercial business purposes, to the fullest extent permitted by applicable law.

5.11.    Management Stock Incentive Program and Confirmation Bonuses.  On or as soon as practicable after the Effective Date, the Management Stock Incentive Program will be adopted by Reorganized Warnaco pursuant to its terms. In addition, on the Effective Date, the Confirmation Bonus Plan will be implemented.  In addition, on or as soon as

24

practicable after the Effective Date, Stuart D. Buchalter, the Non-Executive Chairman of the Board of Directors of Group shall receive a bonus in recognition of his contribution to the Debtors' reorganization in these Cases and his undertaking to serve on the board of directors of Reorganized Warnaco in the aggregate amount of $350,000, comprised of $210,000 in Cash and an amount of New Warnaco Common Shares equal in value to $140,000 which shall be distributed from the New Warnaco Common Shares reserved under the Management Stock Incentive Program.

5.12.  Rights Plan.  On the Effective Date, Reorganized Warnaco will enter into the Rights Plan, which shall become effective in accordance with its terms.

5.13.  Registration Rights Agreement.  On the Effective Date, Reorganized Warnaco will enter into the Registration Rights Agreement, which shall become effective in accordance with its terms.  The Reorganized Debtors shall use their reasonable best efforts to cause the New Warnaco Common Shares to be quoted on the NASDAQ National Market within sixty (60) days after the Effective Date.

5.14.  Effectuating Documents; Further Transactions.  The Chief Executive Officer, President, Chief Financial Officer or General Counsel of Reorganized Warnaco or any Debtor shall be authorized to execute, deliver, file or record such contracts, instruments, releases, indentures and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and implement the provisions of this Plan, without any further order of the Bankruptcy Court and without the requirement of any further action by any stockholder or director of any of the Debtors or Reorganized Debtors.  The Secretary or any Assistant Secretary of each Debtor or Reorganized Debtor shall be authorized to certify or attest to any of the foregoing actions.

5.15.  Exemption From Certain Transfer Taxes.  Pursuant to Section 1146 of the Code, (a) the issuance, transfer or exchange of any securities, instruments or documents, (b) the creation of any Lien, mortgage, deed of trust or other security interest, (c) the making or assignment of any lease or sublease or the making or delivery of any deed or other instrument of transfer under, pursuant to, in furtherance of, or in connection with this Plan, including, without limitation, any deeds, bills of sale or assignments executed in connection with any of the transactions contemplated under this Plan or the reinvesting, transfer or sale of any real or personal property of the Debtors pursuant to, in implementation of, or as contemplated in this Plan and (d) the issuance, renewal, modification or securing of indebtedness by such means, and the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, this Plan, including, without limitation, the Confirmation Order, shall not be subject to any document recording tax, stamp tax, conveyance fee or other similar tax, mortgage tax, real estate transfer tax, mortgage recording tax or other similar tax or governmental assessment.  Consistent with the foregoing, each recorder of deeds or similar official for any county, city or governmental unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument without requiring the payment of any filing fees, documentary stamp tax, deed stamps, stamp tax, transfer tax, intangible tax or similar tax.

25

5.16.   Continuation of Warnaco Pension Plan.  Upon the occurrence of the Effective Date, the Reorganized Debtors will continue the Pension Plan, including meeting the minimum funding standards under ERISA and the Internal Revenue Code, paying all PBGC insurance premiums, and administering and operating the Pension Plan in accordance with its terms and ERISA.  Nothing in this Plan shall be deemed to discharge, release, or relieve the Debtors, the Reorganized Debtors, any member of the Debtors' controlled groups (as defined in 29 U.S.C. §§ 1301(a)(14)), or any other party, in any capacity, from any current or future liability with respect to the Pension Plan, and PBGC and the Pension Plan shall not be enjoined or precluded from enforcing such liability as a result of this Plan's provisions or confirmation. Upon the Effective Date, PBGC shall be deemed to have withdrawn the Single-Employer Pension Plan Claims with prejudice.  After the Effective Date, the Reorganized Debtors shall have the authority to terminate, amend or freeze the Pension Plan in accordance with the terms of the Pension Plan, ERISA and the Internal Revenue Code.

5.17.   Employment, Retirement, and Incentive Compensation Plans and Programs.  Except as otherwise set forth in this Plan, to the extent that any of the Debtors have in place as of the Effective Date retirement income plans, welfare benefit plans and other employee-related plans and programs, such plans and programs shall be deemed terminated as of the Effective Date; provided that, the plans and programs set forth in Plan Schedule 5.17 to be filed on or before the Exhibit Filing Date shall be deemed in effect.  After the Effective Date, the Reorganized Debtors shall have the sole authority to terminate, amend or implement retirement income plans, welfare benefit plans and other plans and programs for employees in accordance with the terms of such plans and applicable law.

## ARTICLE VI

## DISTRIBUTIONS AND CLAIMS ALLOWANCE

6.1.   Cash Distributions.  Except as otherwise provided in this Plan, all distributions of Cash to be made to the holders of Allowed Claims shall be made on or as soon as practicable after the Initial Distribution Date.

6.2.   Distributions to Holders of Senior Secured Bank Claims.  On the Effective Date, Reorganized Warnaco shall deliver to the Administrative Agent for distribution on behalf of the Debtors to holders of Senior Secured Bank Claims in Class 2:  (a) Cash equal to the amount of the balance due on the Original Foreign Facilities Guaranty Claims, which shall be applied to repay in full satisfaction of any outstanding amounts owing by the Debtors under the Original Foreign Facilities as of the Petition Date; (b) New Warnaco Second Lien Notes in the aggregate principal amount of $200 million; and (c) share certificates for the aggregate amount of either (i) 96.263% of the New Warnaco Common Shares, subject to Dilution, if the holders of Class 6 Claims receive a distribution as provided in Section 2.9.(C) of this Plan or (ii) 96.844% of the New Warnaco Common Shares, subject to Dilution, if the holders of Class 6 Claims are not entitled to receive a distribution as provided in Section 2.9.(C) of this Plan.  Notwithstanding any other provision of this Plan, all distributions and issuances of such Cash, New Warnaco Second Lien Notes and New Warnaco Common Shares to holders of Class 2 Claims shall be made as applicable, (i) based on the amount of Class 2 Claims held by such holders as set forth

26

in the books and records of the Administrative Agent as of the close of business on the Confirmation Date, and (ii) in accordance with the Pre-Petition Facility and Intercreditor Agreements. Such Cash shall be distributed to the holders of Class 2 Claims by the Administrative Agent, and the New Warnaco Second Lien Notes and New Warnaco Common Shares shall be issued by Reorganized Warnaco as directed by the Administrative Agent in the names of the respective holders of Class 2 Claims, in each case in accordance with the foregoing.

6.3.  Distributions to Holders of Allowed Unsecured Claims.  On the Effective Date, Reorganized Warnaco shall deliver to the Disbursing Agent for distribution on behalf of the Debtors to holders of Allowed Class 5 Claims share certificates for the aggregate amount of either (i) 2.549% of the New Warnaco Common Shares, subject to Dilution, if the holders of Class 6 Claims receive a distribution as provided in Section 2.9.(C) of this Plan or (ii) 2.564% of the New Warnaco Common Shares, subject to Dilution, if the holders of Class 6 Claims are not entitled to receive a distribution as provided in Section 2.9.(C) of this Plan. The Disbursing Agent shall make distributions of New Warnaco Common Shares to holders of Allowed Class 5 Claims as follows:

(A)  On the Initial Distribution Date, the Disbursing Agent shall distribute the New Warnaco Common Shares allocable to Allowed Claims held by holders of Class 5 Claims as of the Distribution Record Date. For the purpose of calculating the amount of New Warnaco Common Shares to be distributed to holders of Allowed Class 5 Claims on the Initial Distribution Date, all Disputed Claims in Class 5 will be treated as though such Claims will be Allowed Claims in the Face Amount of such Claims.

(B)  On any Interim Distribution Date, the Disbursing Agent shall make interim distributions of New Warnaco Common Shares to holders of Allowed Class 5 Claims pursuant to and consistent with resolutions of Disputed Claims since the Initial Distribution Date.

(C)  On the Final Distribution Date, the Disbursing Agent shall make the balance of all distributions to holders of Allowed Class 5 Claims as required under this Plan.

6.4.  Distributions to Holders of TOPrS Claims, If Any.

(A)  In the event that holders of Class 6 Claims are entitled to receive a distribution as provided in Section 2.9.(C) of this Plan, on the Initial Distribution Date, the Reorganized Debtors shall distribute to the Disbursing Agent subject to the right of the TOPrS Trustee to assert its TOPrS Trustee Charging Lien against the distributions to the extent the TOPrS Trustee Fee remains unpaid, or such persons as the TOPrS Trustee shall designate at least ten (10) days prior to the Confirmation Hearing, for redelivery to the holder(s) of the TOPrS Claims, a stock certificate evidencing ownership of 0.596% of the New Warnaco Common Shares, subject to Dilution, and in addition shall pay in Cash the amount of up to $300,000 to the TOPrS Trustee on account of its actual and reasonable fees and expenses incurred under the TOPrS Indenture, subject to receipt and review by the Reorganized Debtors of invoices detailing such fees and expenses.

NY1 5271167v8

(B)     All TOPrS, the TOPrS Indenture, the TOPrS Supplemental Indenture, the TOPrS Guarantees, the TOPrS Trust Agreement, and the 6% Convertible Subordinated Debentures due 2016 shall be deemed automatically cancelled and discharged on the Effective Date, provided, however, that the TOPrS, the TOPrS Indenture, the TOPrS Supplemental Indenture, the TOPrS Guarantees, the TOPrS Trust Agreement, and the 6% Convertible Subordinated Debentures due 2016 shall continue in effect solely for the purposes of (i) allowing the holders of the TOPrS Claims to receive their distributions hereunder, (ii) allowing the TOPrS Trustee to make the distributions, if any, to be made on account of the TOPrS, and (iii) permitting the TOPrS Trustee to assert its TOPrS Trustee Charging Lien against such distributions to the holders of the TOPrS for payment of the TOPrS Trustee Fee to the extent that the TOPrS Trustee Fee remains unpaid.

(C)     As soon as practicable after the Effective Date, the Debtors with the cooperation of the TOPrS Trustee shall send a letter of transmittal to each holder of a TOPrS, advising such holder of the effectiveness of this Plan and providing instructions to such holder to deliver to the TOPrS Trustee its TOPrS in exchange for the distributions to be made pursuant to this Plan. Delivery of any TOPrS will be effected, and risk of loss and title thereto shall pass, only upon delivery of such TOPrS to the TOPrS Trustee, if any, in accordance with the terms and conditions of such letter of transmittal, such letter of transmittal to be in such form and have such other provisions as the Debtors (or the Disbursing Agent) may reasonably request.

(D)     Each holder of TOPrS shall surrender such TOPrS to the TOPrS Trustee. No distribution hereunder shall be made to or on behalf of any such holder unless and until such TOPrS is received by the TOPrS Trustee, or the loss, theft or destruction of such TOPrS is established to the satisfaction of the TOPrS Trustee, including requiring such holder (i) to submit a lost instrument affidavit and an indemnity bond, and (ii) to hold the Debtors and the TOPrS Trustee harmless in respect of such TOPrS and any distributions made in respect thereof. Upon compliance with this Section by a holder of TOPrS, such holder shall, for all purposes under this Plan, be deemed to have surrendered such TOPrS. Any such holder that fails to surrender such TOPrS or satisfactorily explain its non-availability to the TOPrS Trustee within eighteen months of the Effective Date shall be deemed to have no TOPrS Claim against the Debtors, or their property or the TOPrS Trustee in respect of such TOPrS Claim and shall not participate in any distribution hereunder, and the distribution that would otherwise have been made to such holder shall be distributed to all holders who have surrendered their TOPrS or satisfactorily explained their non-availability to the TOPrS Trustee within eighteen months of the Effective Date.

(E)     As of the close of business on the Distribution Record Date, (i) the claims register shall be closed, (ii) the transfer books and records of the TOPrS as maintained by the TOPrS Trustee or its agent shall be closed and (iii) any transfer of any TOPrS Claim or any interest therein shall be prohibited. The Debtors, the Reorganized Debtors, and the TOPrS Trustee shall have no obligation to recognize any transfer of any TOPrS Claims occurring after the close of business on the Distribution Record Date, and shall instead be entitled to recognize and deal for all purposes under this Plan with only those holders of record as of the close of business on the Distribution Record Date.

28

6.5.     Miscellaneous Distribution Provisions.

(A)     Fractional Plan Securities.  Notwithstanding any other provision of this Plan, only whole numbers of shares of New Warnaco Common Shares shall be issued.  When any distribution on account of an Allowed Claim would otherwise result in the issuance of a number of shares of New Warnaco Common Shares that are not a whole number, the actual distribution of such Shares only shall include the next lower whole number of Shares.  When any distribution on the Final Distribution Date would otherwise result in the issuance of a number of shares of New Warnaco Common Shares that is not a whole number, the actual distribution of such Shares shall be rounded to the next higher or lower whole number of Shares as follows:  (i) fractions equal to or greater than ½ shall be rounded to the next higher whole number; and (ii) fractions less than ½ shall be rounded to the next lower number.  The total number of shares of New Warnaco Common Shares specified to be distributed to holders of Allowed Claims pursuant to this Plan shall be adjusted as necessary to account for the rounding provided herein.  No consideration shall be provided in lieu of fractional shares that are rounded down, except that with respect to distributions made to holders of Allowed Class 5 and Class 6 Claims on the Initial Distribution Date, such fractional shares shall, with respect to each Allowed Claim, be deemed held by the Reorganized Debtors, for the benefit of the holder of such Allowed Claim, to be aggregated with the remaining distribution to be made to such holder, if any, on the Final Distribution Date.

(B)     Distributions on Non-Business Days.  Any payment or distribution due on a day other than a Business Day shall be made, without interest, on the next Business Day.

(C)     Post-Consummation Effect of Evidences of Claims or Interests.  Notes, stock certificates and other evidence of Claims against or Interests in the Debtors shall, effective on the Effective Date, represent only the right to participate in the distributions contemplated by this Plan and shall not be valid or effective for any other purpose.

(D)     No Distribution in Excess of Allowed Amount of Claim.  Notwithstanding anything to the contrary herein, if any portion of a Claim is a Disputed Claim, no payment or distribution provided hereunder shall be made on account of the portion of such Claim that is a Disputed Claim unless and until such Disputed Claim becomes an Allowed Claim, but the payment or distribution provided hereunder shall be made on account of the portion of such Claim that is an Allowed Claim.  Unless otherwise expressly provided herein, no Claim shall be allowed under this Plan or otherwise to the extent that it is for post-petition fees or interest.

(E)     Disputed Payments.  If any dispute arises as to the identity of the holder of an Allowed Claim entitled to receive any distribution under this Plan, the Reorganized Debtors may retain such distribution until its disposition is determined by a Final Order or written agreement among the interested parties to such dispute.

(F)     Estimation of Disputed Claims.  The aggregate Face Amount of (a) Disputed Claims and (b) Allowed Claims shall set the maximum allowable

NY1 5271167v8

aggregate amount of Claims in Class 5. The existence of a Disputed Claim in Class 5 shall not impair or impede the making of a distribution to Allowed Claims in such Class or any other Class. If the Allowed amount of any particular Disputed Claim is reconsidered under Section 502(j) of the Code and Bankruptcy Rule 3008 and/or is Allowed in an amount that is greater than the estimated amount of such Claim, or the ultimately Allowed amount of all Disputed Claims in a Class 5 is greater than the estimated aggregate Face Amount of such Claims, no claimant shall have recourse against the Reorganized Debtors (or any property thereof), any distributions made to a creditor in any other Class herein, or any distribution previously made on account of any Allowed Claim (however, nothing herein shall modify any right of a holder of a reconsidered Claim under the penultimate sentence of Section 502(j) of the Code).

(G)     Unclaimed Property. Holders of Allowed Claims to Unclaimed Property shall cease to be entitled thereto, and such Unclaimed Property shall be reallocated to the Unsecured Pool.

(H)     Voting of New Warnaco Common Shares. New Warnaco Common Shares that are Unclaimed Property or held for Disputed Claims shall not be voted at any meeting of the stockholders of Reorganized Warnaco.

(I)     Setoffs and Recoupment. The Reorganized Debtors may, but shall not be required to, setoff or recoup against any Allowed Claim and the distributions to be made pursuant to this Plan on account of such Claim, claims of any nature that the Debtors or Reorganized Debtors may have against the holder of such Allowed Claim (other than a Class 2 Claim); provided, however, that neither the failure to effect such a setoff or recoupment nor the allowance of any Claim against the Debtors or the Reorganized Debtors shall constitute a waiver or release by the Debtors or the Reorganized Debtors of any claim that the Debtors or the Reorganized Debtors may possess against such holder.

(J)     Compliance with Tax Requirements. In connection with this Plan, to the extent applicable, the Reorganized Debtors shall comply with all tax withholding and reporting requirements imposed on them by any governmental unit, and all distributions pursuant to this Plan that may be necessary or appropriate to comply with such withholding and reporting requirements. Notwithstanding any other provision of this Plan, each Person that has received any distribution pursuant to this Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligation imposed by any governmental unit, including income, withholding and other tax obligations, on account of such distribution.

6.6.     Procedure For Determination of Claims and Interests.

(A)     Bar Date For Certain Administrative Claims. All applications for final compensation of professional persons employed by the Debtors or the Creditors' Committee pursuant to orders entered by the Bankruptcy Court and on account of services rendered prior to the Effective Date, and all other requests for payment of Administrative Claims (except for the Alvarez Incentive Bonus, the Designated Post-Petition Loans, claims of the Debt Coordinators and the Pre-Petition Collateral Trustee payable under paragraph 22 of the DIP Approval Orders, claims for taxes pursuant to Section 507(a)(8) of the

Code, ordinary course trade debt and customer deposits and credits incurred in the ordinary course of business after the Petition Date) shall be served on the Reorganized Debtors in accordance with Section 8.10. of this Plan and filed with the Bankruptcy Court, no later than 25 days after the Effective Date. Any such claim that is not served and filed within this time period shall be discharged and forever barred. Objections to any such application must be filed within 15 days after filing thereof.

(B)     Objections To Claims. Objections to any Claim filed by any party other than the Debtors (other than Administrative Claims governed by Section 6.6.(A) of this Plan) must be filed no later than twenty (20) days before the Effective Date; provided, however, that the Reorganized Debtors may file objections to Claims through and including forty-five (45) days after the Effective Date. In accordance with Section 6.5.(D) of this Plan, payment or distribution shall be made on account of all or any portion of such Claim that is an Allowed Claim. To the extent any property is distributed to an entity on account of a Claim that is not an Allowed Claim, such property shall be held in trust for and shall promptly be returned to the Reorganized Debtors. On and after the Effective Date, the Reorganized Debtors shall have authority to continue to prosecute, settle or withdraw objections to Claims and shall be entitled to compromise or settle any Disputed Claim in accordance with Section 5.2. of this Plan.

## ARTICLE VII

## EFFECT OF THIS PLAN ON CLAIMS AND INTERESTS

7.1.     Revesting of Assets. Except as provided in this Plan (including, without limitation, Sections 7.4. and 7.5. of this Plan), on the Effective Date, all property of the Estate, to the fullest extent of Section 541 of the Code, and any and all other rights and assets of the Debtors of every kind and nature shall revest in the Reorganized Debtors free and clear of all Liens, Claims and Interests other than (i) those Liens, Claims and Interests retained or created pursuant to this Plan or any document entered into in connection with the transactions described in this Plan and (ii) Liens that have arisen subsequent to the Petition Date on account of taxes that arose subsequent to the Petition Date.

7.2.     Discharge of Claims and Termination of Interests.

(A)     As of the Effective Date, except as provided in the Confirmation Order, the rights afforded under this Plan and the treatment of Claims and Interests under this Plan shall be in exchange for and in complete satisfaction, discharge and release of all Claims and satisfaction or termination of all Interests, including any interest accrued on Claims from and after the Petition Date. Except as otherwise provided in this Plan or the Confirmation Order, Confirmation shall, as of the Effective Date: (i) discharge the Debtors from all Claims or other debts that arose before the Effective Date, and all debts of the kind specified in Sections 502(g), 502(h) or 502(i) of the Code, whether or not (x) a proof of claim based on such debt is filed or deemed filed pursuant to Section 501 of the Code, (y) a Claim based on such debt is Allowed pursuant to Section 502 of the Code or (z) the holder of a Claim based on such debt has accepted this Plan; and (ii) satisfy, terminate or cancel all Interests and other rights of equity security holders in the Debtors.

31

(B)     As of the Effective Date, except as otherwise provided in this Plan or the Confirmation Order, all Persons shall be precluded from asserting against the Debtors or the Reorganized Debtors, or their respective successors or property, any other or further Claims, demands, debts, rights, causes of action, liabilities or equity interests based upon any act, omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date. In accordance with the foregoing, except as provided in this Plan or the Confirmation Order, the Confirmation Order will be a judicial determination, as of the Effective Date, of discharge of all such Claims and other debts and liabilities against the Debtors and satisfaction, termination or cancellation of all Interests and other rights of equity security holders in the Debtors, pursuant to Sections 524 and 1141 of the Code, and such discharge will void any judgment obtained against the Debtors or the Reorganized Debtors at any time, to the extent that such judgment relates to a discharged Claim.

7.3.   **Injunctions.**

(A)     **Except as otherwise provided in this Plan or the Confirmation Order, as of the Effective Date, all Persons that have held, currently hold or may hold a Claim or other debt or liability that is discharged or an Interest or other right of an equity security holder that is terminated pursuant to the terms of this Plan are permanently enjoined from taking any of the following actions on account of any such discharged Claims, debts or liabilities or terminated Interests or rights: (i) commencing or continuing in any manner any action or other proceeding against the Debtors or the Reorganized Debtors or their respective property; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Debtors or the Reorganized Debtors or their respective property; (iii) creating, perfecting or enforcing any lien or encumbrance against the Debtors or the Reorganized Debtors or their respective property; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtors or the Reorganized Debtors or their respective property; and (v) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of this Plan.**

(B)     **As of the Effective Date, all Persons that have held, currently hold or may hold a Claim, demand, debt, right, cause of action or liability that is released pursuant to this Plan are permanently enjoined from taking any of the following actions on account of such released Claims, demands, debts, rights, causes of action or liabilities: (i) commencing or continuing in any manner any action or other proceeding; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting or enforcing any lien or encumbrance; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to any released entity; and (v) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of this Plan.**

(C)     **In exchange for the distributions pursuant to this Plan, each holder of an Allowed Claim receiving such distribution pursuant to this Plan will be deemed to have specifically consented to the injunctions set forth in this Section 7.3.**

32

7.4.  **Limitation of Liability.**  None of the Debtors, the Reorganized Debtors, the Creditors' Committee, the Post-Effective Date Committee, the DIP Lenders, the Pre-Petition Secured Lenders, the TOPrS Trustee nor any of their respective directors, employees employed by the Debtors as of the Effective Date, members, attorneys, investment bankers, restructuring consultants and financial advisors, nor any other professional Persons employed by any of them (collectively, the "Exculpated Persons"), shall have or incur any liability to any Person for any act taken or omission from and after the Petition Date in connection with, relating to or arising out of the Cases, the management and operation of the Debtors, the formulation, negotiation, implementation, confirmation or consummation of this Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created in connection with this Plan. The Exculpated Persons shall have no liability to any Debtor, holder of a Claim, holder of an Interest, other party in interest in the Cases or any other Person for actions taken or not taken in connection with, relating to or arising out of the Cases, the management and operation of the Debtors, this Plan or the property to be distributed under this Plan, including, without limitation, failure to obtain Confirmation of this Plan or to satisfy any condition or conditions, or refusal to waive any condition or conditions, to the occurrence of the Effective Date, and in all respects such Exculpated Persons shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities in the Cases, the management and operation of the Debtors and under this Plan.

7.5.  **Releases.**

(A)  On the Effective Date, the Reorganized Debtors on their own behalf and as representatives of the Estates, release unconditionally, and are hereby deemed to release unconditionally, (i) each of the Debtors' directors who served at any time during the Cases, (ii) each of the Debtors' officers employed as of the Effective Date, (iii) the members of the Creditors' Committee, (iv) the DIP Lenders, (v) the Pre-Petition Secured Lenders, (vi) the TOPrS Trustee and (vii) the attorneys, investment bankers, restructuring consultants and financial advisors of the foregoing from any and all claims, obligations, suits, judgments, damages, rights, causes of action and liabilities whatsoever (including, without limitation, those arising under the Code), whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, based in whole or in part on any act, omission, transaction, event or other occurrence taking place on or after the Petition Date through and including the Effective Date in connection with, relating to or arising out of the Cases, the management and operation of the Debtors, the formulation, negotiation, implementation, confirmation or consummation of this Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created in connection with this Plan.

(B)  On the Effective Date, the Reorganized Debtors on their own behalf and as representatives of the Estates, release unconditionally, and are hereby deemed to release unconditionally, (i) each of the Debtors' former and present officers and directors, (ii) the Pre-Petition Secured Lenders, (iii) the TOPrS Trustee and (iv) the attorneys, investment bankers, restructuring consultants and financial advisors of the foregoing (collectively, the "Pre-Petition Releasees") from any and all claims, obligations,

33

suits, judgments, damages, rights, causes of action and liabilities whatsoever (including, without limitation, those arising under the Code), whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, based in whole or in part on any act, omission, transaction, event or other occurrence taking place before the Petition Date in connection with or relating to The Warnaco Group, Inc. or any of its direct or indirect subsidiaries (the "Pre-Petition Released Matters"); provided, however, that the foregoing release shall not apply to any current or former officers or directors of any of the Debtors who, as of November 13, 2002, has been invited by the SEC to make a Wells Submission describing the reasons why no enforcement proceedings should be brought against them with respect to potential violations of the Securities and Exchange Act of 1934 in connection with the preparation and publication of various financial statements and other public statements of Group (each, a "Wells Recipient"); and provided, further, that notwithstanding the foregoing proviso, the release set forth in this Section 7.5.(B) shall apply to a Wells Recipient in the event that either (i) the SEC has determined not to commence an enforcement proceeding against such Wells Recipient, or (ii) the SEC has commenced an enforcement proceeding and such proceeding has been concluded with no finding against, or concession by, such Wells Recipient that he or she (a) committed fraud, intentional or negligent misrepresentation, or gross negligence in connection with the matters investigated, or (b) may not serve in the future as an officer or director of any public company.

        (C)     On the Effective Date, each holder of a Claim that is entitled to vote on this Plan shall be deemed to have unconditionally released the Pre-Petition Releasees from the Pre-Petition Released Matters; provided, however, that the foregoing release shall not apply to any Wells Recipient; provided, further, that notwithstanding the foregoing proviso, the release set forth in this Section 7.5.(C) shall apply to a Wells Recipient in the event that either (i) the SEC has determined not to commence an enforcement proceeding against such Wells Recipient, or (ii) the SEC has commenced an enforcement proceeding and such proceeding has been concluded with no finding against, or concession by, such Wells Recipient that he or she (a) committed fraud, intentional or negligent misrepresentation, or gross negligence in connection with the matters investigated, or (b) may not serve in the future as an officer or director of any public company; provided, further, that each holder of a Claim entitled to vote on this Plan may elect, by checking the box provided on the Ballot, not to grant the releases set forth in this Section 7.5.(C).

        (D)     The Confirmation Order shall contain a permanent injunction to effectuate the releases granted in this Section 7.5.

        7.6.    Retention and Enforcement, and Release, Of Causes Of Action. Except as otherwise set forth in this Plan, pursuant to Section 1123(b)(3)(B) of the Code, on the Effective Date, all Causes of Action, including, without limitation, the Causes of Action identified on Plan Schedule 7.6, to be filed on or before the Exhibit Filing Date, shall become the property of the Reorganized Debtors and the Reorganized Debtors shall retain all Causes of Action that the Debtors had or had power to assert immediately prior to the Effective Date, whether or not such Causes of Action are listed on Plan Schedule 7.6, and may commence or

continue in any appropriate court or tribunal any suit or other proceeding for the enforcement of such Causes of Action; provided, however, that any and all of the Debtors' claims and causes of action arising under Section 547 of the Code that are not the subject of pending litigation as of the Effective Date (collectively, the "Preference Actions") shall be waived, abandoned, discharged and released pursuant to this Plan. Except with respect to Preference Actions, nothing contained in this Plan shall constitute a release, satisfaction or settlement of the Causes of Action or shall constitute waiver of the rights, if any, of the Debtors or the Reorganized Debtors to a jury trial with respect to any Cause of Action or objection to any Claim or Interest, and nothing in this Plan or the Confirmation Order shall constitute a waiver or release of any Cause of Action under the doctrine of res judicata nor shall any Cause of Action be barred or limited by any estoppel, whether judicial, equitable or otherwise.

## ARTICLE VIII

## MISCELLANEOUS PROVISIONS

8.1.    Retention of Jurisdiction. Following the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising from or relating to the Cases to the fullest extent of applicable law, including, without limitation:

(A)    To determine the allowability, classification and priority of Claims and Interests upon objection, or to estimate, pursuant to Section 502(c) of the Code, the amount of any Claim that is or is anticipated to be contingent or unliquidated as of the Effective Date;

(B)    To construe and to take any action authorized by the Code and requested by the Reorganized Debtors or any other party in interest to enforce this Plan and the documents and agreements filed in connection with this Plan, issue such orders as may be necessary for the implementation, execution and consummation of this Plan, including, without limiting the generality of the foregoing, orders to expedite regulatory decisions for the implementation of this Plan and to ensure conformity with the terms and conditions of this Plan, such documents and agreements and other orders of the Bankruptcy Court, notwithstanding any otherwise applicable non-bankruptcy law;

(C)    To determine any and all applications for allowance of compensation and expense reimbursement of professionals retained by the Debtors, the Reorganized Debtors or the Creditors' Committee, and for members of the Creditors' Committee, for periods on or before the Effective Date, and to determine any other request for payment of administrative expenses;

(D)    To determine all matters that may be pending before the Bankruptcy Court on or before the Effective Date;

(E)    To resolve any dispute regarding the implementation or interpretation of this Plan, or any related agreement or document that arises at any time before the Cases are closed, including determination, to the extent a dispute arises, of the entities entitled to a distribution within any particular Class of Claims and of the scope and nature of the

Reorganized Debtors' obligations to cure defaults under assumed contracts, leases, franchises and permits;

(F) To determine any and all matters relating to the rejection, assumption or assignment of executory contracts or unexpired leases entered into prior to the Petition Date, the nature and amount of any Cure required for the assumption of any executory contract or unexpired lease, and the allowance of any Claim resulting therefrom;

(G) To determine all applications, adversary proceedings, contested matters and other litigated matters that were brought or that could have been brought in the Bankruptcy Court on or before the Effective Date;

(H) To determine matters concerning local, state and federal taxes in accordance with Sections 346, 505 and 1146 of the Code, and to determine any tax claims that may arise against the Debtors or the Reorganized Debtors as a result of the transactions contemplated by this Plan; and

(I) To modify this Plan pursuant to Section 1127 of the Code or to remedy any apparent nonmaterial defect or omission in this Plan, or to reconcile any nonmaterial inconsistency in this Plan so as to carry out its intent and purposes.

From the Confirmation Date through the Effective Date, the Bankruptcy Court shall retain jurisdiction with respect to each of the foregoing items and all other matters that were subject to its jurisdiction prior to the Confirmation Date.

8.2. <u>Terms Binding</u>. Upon the entry of the Confirmation Order, all provisions of this Plan, including all agreements, instruments and other documents filed in connection with this Plan and executed by the Debtors or the Reorganized Debtors in connection with this Plan, shall be binding upon the Debtors, the Reorganized Debtors, all Claim and Interest holders and all other Persons that are affected in any manner by this Plan. All agreements, instruments and other documents filed in connection with this Plan shall have full force and effect, and shall bind all parties thereto as of the entry of the Confirmation Order, whether or not such exhibits actually shall be executed by parties other than the Debtors or the Reorganized Debtors, or shall be issued, delivered or recorded on the Effective Date or thereafter.

8.3. <u>Successors and Assigns</u>. The rights, benefits and obligations of any Person named or referred to in this Plan shall be binding upon, and shall inure to the benefit of, the heir, executor, administrator, successor or assignee of such Person.

8.4. <u>Confirmation Order and Plan Control</u>. Except as otherwise provided in this Plan, in the event of any inconsistency between this Plan and the Disclosure Statement, any exhibit to this Plan or any other instrument or document created or executed pursuant to this Plan, this Plan shall control. In the event of any inconsistency between the Plan and the Confirmation Order, the Confirmation Order shall control.

NY1 5271167v8

8.5.    Governing Law.  Except to the extent that the Code or any other federal law is applicable or to the extent the law of a different jurisdiction is validly elected by the Debtors, the rights, duties and obligations arising under this Plan shall be governed in accordance with the substantive laws of the United States of America and, to the extent federal law is not applicable, the laws of the State of New York.

8.6.    Severability.  If the Bankruptcy Court determines at the Confirmation Hearing that any material provision of this Plan is invalid or unenforceable, such provision, subject to Section 1127 of the Code, shall be severable from this Plan and shall be null and void, and, in such event, such determination shall in no way limit or affect the enforceability or operative effect of any or all other portions of this Plan.

8.7.    Incorporation by Reference.  Each Exhibit or Schedule to this Plan is incorporated herein by reference.

8.8.    Modifications to this Plan.  Upon the mutual consent of the Debtors, the Debt Coordinators and the Creditors' Committee, this Plan, and any Exhibit or Schedule to this Plan, may be amended or modified at any time prior to the Confirmation Date in accordance with the Code and Bankruptcy Rules.

8.9.    Revocation, Withdrawal or Non-Consummation.  The Debtors reserve the right to revoke or withdraw this Plan at any time prior to the Effective Date.  If the Debtors revoke or withdraw this Plan prior to the Effective Date, or if the Confirmation Date or the Effective Date does not occur, then this Plan, any settlement or compromise embodied in this Plan (including the fixing or limiting to an amount certain any Claim or Class of Claims), the assumption or rejection of executory contracts or leases effected by this Plan, and any document or agreement executed pursuant to this Plan, shall be null and void; provided, however, that all orders of the Bankruptcy Court and all documents executed pursuant thereto, except the Confirmation Order, shall remain in full force and effect.  In such event, nothing contained herein, and no acts taken in preparation for consummation of this Plan, shall be deemed to constitute a waiver or release of any Claims by or against any of the Debtors or any other Person, to prejudice in any manner the rights of any of the Debtors or any Person in any further proceedings or to constitute an admission of any sort by any of the Debtors or any other Person.

8.10.    Notice.  Any notice required or permitted to be provided under this Plan shall be in writing and served by (a) certified mail, return receipt requested, (b) hand delivery or (c) overnight delivery service, to be addressed as follows:

    If to the Debtors:

            The Warnaco Group, Inc.
            90 Park Avenue
            New York, New York 10016
            Attention:  Stanley P. Silverstein, Esq.

NY1 5271167v8

With a copy to:

> Sidley Austin Brown & Wood LLP
> 787 Seventh Avenue
> New York, New York 10019
> <u>Attention</u>: J. Ronald Trost, Esq.
> Kelley A. Cornish, Esq.
> Shalom L. Kohn, Esq.
> Elizabeth R. McColm, Esq.

If to the Creditors' Committee:

> Otterbourg, Steindler, Houston & Rosen, P.C.
> 230 Park Avenue
> New York, New York 10169-0075
> <u>Attention</u>: Scott L. Hazan, Esq.
> Enid N. Stuart, Esq.

If to the DIP Lenders:

> Weil, Gotshal & Manges LLP
> 767 Fifth Avenue
> New York, New York 10153
> <u>Attention</u>: Marcia L. Goldstein, Esq.
> Brian Rosen, Esq.

If to the Debt Coordinators for the Pre-Petition Secured Lenders:

> Shearman & Sterling
> 599 Lexington Avenue
> New York, New York 10022
> <u>Attention</u>: James L. Garrity, Jr., Esq.
> Marc B. Hankin, Esq.

NY1 5271167v8

Dated: November 8, 2002

Respectfully submitted,

THE WARNACO GROUP, INC.
184 BENTON STREET INC.
A.B.S. CLOTHING COLLECTION, INC.
ABBEVILLE MANUFACTURING COMPANY
AEI MANAGEMENT CORPORATION
AUTHENTIC FITNESS CORPORATION
AUTHENTIC FITNESS ON-LINE, INC.
AUTHENTIC FITNESS PRODUCTS INC.
AUTHENTIC FITNESS RETAIL INC.
BLANCHE, INC.
CCC ACQUISITION CORP.
CCC ACQUISITION REALTY CORP.
C.F. HATHAWAY COMPANY
CALVIN KLEIN JEANSWEAR COMPANY
CKJ HOLDINGS, INC.
CKJ SOURCING, INC.
DESIGNER HOLDINGS LTD.
GREGORY STREET, INC.
JEANSWEAR HOLDINGS, INC.
KAI JAY MANUFACTURING COMPANY
MYRTLE AVENUE, INC.
OUTLET HOLDINGS, INC.
OUTLET STORES, INC.
PENHALIGON'S BY REQUEST, INC.
RIO SPORTSWEAR, INC.
UBERTECH PRODUCTS, INC.
VENTURES LTD.
WARMANA LIMITED
WARNACO INC.
WARNACO INTERNATIONAL, INC.
WARNACO INTERNATIONAL, LLC
WARNACO MEN'S SPORTSWEAR INC.
WARNACO OF CANADA COMPANY
WARNACO PUERTO RICO, INC.
WARNACO SOURCING INC.
WARNACO U.S. INC.
WARNACO VENTURES LTD.
WARNER'S DE COSTA RICA INC.

Debtors and Debtors-in-Possession

By: /s/ Antonio C. Alvarez II
    Antonio C. Alvarez II
    President and Chief Executive Officer of
    The Warnaco Group, Inc. and Authorized Signatory

NY1 5271167v8

# PLAN SCHEDULE 1.31

## LIST OF DEBTORS

| Debtor | Jurisdiction of Incorporation | Case Number |
|---|---|---|
| 184 Benton Street Inc. | Delaware | No. 01-41644 (RLB) |
| A.B.S. Clothing Collection, Inc. | California | No. 01-41645 (RLB) |
| Abbeville Manufacturing Company | Delaware | No. 01-41646 (RLB) |
| AEI Management Corporation | California | No. 01-41647 (RLB) |
| Authentic Fitness Corporation | Delaware | No. 01-41648 (RLB) |
| Authentic Fitness On-Line, Inc. | Nevada | No. 01-41649 (RLB) |
| Authentic Fitness Products Inc. | Delaware | No. 01-41650 (RLB) |
| Authentic Fitness Retail Inc. | Delaware | No. 01-41651 (RLB) |
| Blanche, Inc. | Delaware | No. 01-41652 (RLB) |
| CCC Acquisition Corp. | Delaware | No. 01-41653 (RLB) |
| CCC Acquisition Realty Corp. | Delaware | No. 01-41654 (RLB) |
| C.F. Hathaway Company | Delaware | No. 01-41655 (RLB) |
| Calvin Klein Jeanswear Company | Delaware | No. 01-41656 (RLB) |
| CKJ Holdings, Inc. | Delaware | No. 01-41657 (RLB) |
| CKJ Sourcing, Inc. | Delaware | No. 01-41658 (RLB) |
| Designer Holdings Ltd. | Delaware | No. 01-41659 (RLB) |
| Gregory Street, Inc. | Delaware | No. 01-41660 (RLB) |
| Jeanswear Holdings, Inc. | Delaware | No. 01-41661 (RLB) |
| Kai Jay Manufacturing Company | Delaware | No. 01-41662 (RLB) |
| Myrtle Avenue, Inc. | Delaware | No. 01-41663 (RLB) |
| Outlet Holdings, Inc. | Delaware | No. 01-41664 (RLB) |
| Outlet Stores, Inc. | Delaware | No. 01-41665 (RLB) |
| Penhaligon's by Request, Inc. | Delaware | No. 01-41666 (RLB) |
| Rio Sportswear, Inc. | Delaware | No. 01-41667 (RLB) |
| Ubertech Products, Inc. | Delaware | No. 01-41668 (RLB) |
| Ventures Ltd. | Delaware | No. 01-41669 (RLB) |
| Warmana Limited | Delaware | No. 01-41670 (RLB) |
| The Warnaco Group, Inc. | Delaware | No. 01-41643 (RLB) |
| Warnaco Inc. | Delaware | No. 01-41671 (RLB) |
| Warnaco International, Inc. | Delaware | No. 01-41672 (RLB) |
| Warnaco International LLC | Delaware | No. 01-41673 (RLB) |
| Warnaco Men's Sportswear Inc. | Delaware | No. 01-41674 (RLB) |
| Warnaco of Canada Company | Canada | No. 01-41675 (RLB) |
| Warnaco Puerto Rico, Inc. | Delaware | No. 01-41676 (RLB) |
| Warnaco Sourcing Inc. | Delaware | No. 01-41677 (RLB) |
| Warnaco U.S. Inc. | Delaware | No. 01-41678 (RLB) |
| Warnaco Ventures Ltd. | Delaware | No. 01-41679 (RLB) |
| Warner's De Costa Rica Inc. | Delaware | No. 01-41680 (RLB) |

## PLAN SCHEDULE 1.6

### ALVAREZ INCENTIVE BONUS

| | |
|---|---|
| Cash | $1.95 million[1] |
| New Warnaco Second Lien Notes | $0.94 million[2] |
| New Warnaco Common Shares (0.592% of outstanding shares, subject to dilution on account of Management Stock Incentive Program) | <u>$2.81 million</u>[3] |
| **Total Alvarez Incentive Bonus (Aggregate Estimated Value of Cash, New Warnaco Second Lien Notes and New Warnaco Common Shares)** | <u>**$5.70 million**</u> |

---

[1] As provided in the Alvarez Agreement, reflects the minimum cash bonus payment of $2.25 million reduced by $301,000 previously received by Mr. Alvarez.

[2] Calculated based upon the formula provided in the Alvarez Agreement.

[3] Based upon the formula provided in the Alvarez Agreement and an estimated $485.6 equity value of Reorganized Warnaco (see Disclosure Statement, Section VI.C.2.(b)), Mr. Alvarez is entitled to receive 0.453% of the New Warnaco Common Shares under the Alvarez Agreement. In recognition of Mr. Alvarez's substantial contribution to the Debtors' successful reorganization in these Cases, Mr. Alvarez will receive an additional 0.139% of the New Warnaco Common Shares (see Disclosure Statement, Section II.B.4.(h)(iv)).

**PLAN SCHEDULE 1.67**

**PRINCIPAL TERMS AND CONDITIONS OF NEW WARNACO
SECOND LIEN NOTES**

<u>Principal</u>:     $200.94 million

<u>Maturity</u>:     5 Years

<u>Amortization</u>:     $40.188 million per year, so long as certain specified parameters are satisfied (including no Event of Default under the Exit Financing Facility, availability of $75 million post-amortization under the Exit Financing Facility, and maintenance of fixed charge coverage ratio of 1.25x).

<u>Security</u>:     Second Lien to Exit Financing Facility

<u>Interest Rate</u>:     Greater of (i) 9.5% per annum and (ii) LIBOR plus 500 basis points, subject in each case to an increase of 50 basis points per annum at the end of the six month period following the Effective Date and an increase of an additional 0.5% per annum at the end of each six month period thereafter, until the Notes are paid in full. Cash interest cap of 12% per annum; interest in excess of 12% is to be capitalized, as is interest not paid because of any existing Default under the Exit Financing Facility.

<u>Mandatory
Repayment</u>:     Notes to be repaid with net cash proceeds of (i) certain subordinated debt or equity securities issued after the Effective Date and (ii) asset sales and other debt incurred, subject to standard exceptions to be determined (including payments under the Exit Financing Facility).

The New Warnaco Second Lien Notes will contain customary affirmative and negative covenants and events of default, but no financial covenants. Final terms in the definitive documentation are expected to be customary for facilities of this type.

## PLAN SCHEDULE 1.68

### ORIGINAL DOMESTIC FACILITIES

1. U.S. $600 million U.S. Amended and Restated Revolving Credit Facility, dated 11/17/99

2. U.S. $450 million 5-Year Revolving Credit Facility, dated 11/17/99

3. U.S. $600 million Bridge Facility, dated 11/17/99

4. U.S. $21.5 million KBC Term Facility, dated 7/31/98

5. U.S. $15 million Dai-ichi Kangyo Bank, Ltd. Credit Facility, entered into on 10/6/00

6. Bank of Nova Scotia Equity forward purchase agreement, dated 12/10/99

7. SunTrust Bank Equity forward purchase agreement, dated 2/10/00

8. FRF 370,000,000 Société Générale Term Loan, dated 7/9/96

**PLAN SCHEDULE 1.69**

**ORIGINAL FOREIGN FACILITIES**

| Facility | Principal Balance + Currency |
|---|---|
| CN $30,000,000 Revolving Facility, dated 9/24/96 | |
| £9,000,000 U.K. Facility Agreement, dated 5/15/95 | |
| FRF 480,000,000 French Franc Revolving Line of Credit, dated 10/31/96 and amended 4/17/98 | |
| 2,500,000,000 Italian Lire Unicredito Credit Line Facility, dated 7/9/98 | |
| 35,000,000 Belgian Francs Overdraft Facility, dated 12/2/98 | |
| U.S. $6,000,000 Bank of Nova Scotia Hong Kong Overdraft Facility, dated 8/24/99 | |
| U.S. $10,000,000 Bank of East Asia Letter of Credit Facility, dated 9/13/96 | |
| U.S. $75,000,000 Bank of America Letter of Credit Facility, dated 1/10/00 | |
| Société Générale Overdraft Facilities: | |
| 20,000,000 Austrian Shillings dated 7/26/99 | |
| 4,000,000 Deutsche Marks dated 3/21/00 | |
| $6,000,000 Multi-Purpose dated 10/29/97 | |
| 7,500,000 French Francs dated 7/31/98 | |
| U.S. $500,000,000 6th Amended and Restated Credit Agreement, dated 11/17/99 | |
| $91,700,000 uncommitted Citibank Letter of Credit, dated 8/4/99 | |
| U.S. $27,000,000 Standard Chartered Bank Letter of Credit Facility Letter, dated 12/29/99 | |

# PLAN SCHEDULE 3.1

## LIST OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES TO BE REJECTED

| CONTRACT PARTY | NOTICE ADDRESS | CONTRACT DESCRIPTION | CONTRACT DATE/CONTRACT EXTENSION DATE | REJECTION EFFECTIVE DATE |
|---|---|---|---|---|
| Impulse (India) Private Limited | B-12 Nizamuddin West New Delhi 110013, India Contact: Ashwani Gupta | Buying Agency Agreement - Non exclusive | 03/28/00 | Earlier of Effective Date of Plan and expiration date of contract or lease |
| ASNA | P.O. Box 701250      San Antonio, TX 78270-1250 | Utility Tool (software) | 01/31/03 | Reject as of 1/31/03 |
| Infinium | 25 Communications Highway, Drawer 6000 Hyannis, MA 02601 Contact: Kristen Hambleton | Software 2000 / Financial Sys. | | Earlier of Effective Date of Plan and expiration date of contract or lease |
| Cable & Wireless | 909 Third Ave. 12th Floor New York, NY 10022 Contact: Robert Law | Internet T1 | 11/3/1999 | Earlier of Effective Date of Plan and expiration date of contract or lease |
| Pitney Bowes (PBCC) | 2225 American Dr Neenah, WI 54656-1005 | 1 DL4S COPIER | 11/1/99 | Earlier of Effective Date of Plan and expiration date of contract or lease |
| G.E. Capital | P.O. Box 642555 Pittsburgh, PA 15264-2555 | KONICA 7265 DIG COPIER | 7/1/00 | Earlier of Effective Date of Plan and expiration date of contract or lease |
| Vista Business Equipment | 99 Park Ave. New York, NY 10016 | Two Iris printers | | Earlier of Effective Date of Plan and expiration date of contract or lease |
| Citicorp Vendor Finance | P.O. Box 41647 Philadelphia, PA 19101 | 2 FAX MACHINES NY | May 99 | Earlier of Effective Date of Plan and expiration date of contract or lease |

## LIST OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES TO BE REJECTED

| CONTRACT PARTY | NOTICE ADDRESS | CONTRACT DESCRIPTION | CONTRACT DATE/CONTRACT EXTENSION DATE | REJECTION EFFECTIVE DATE |
|---|---|---|---|---|
| 1385 Broadway Company | Helmsley-Spear, Inc. 60 E. 42nd Street New York, NY 10165 230 Park Ave. Ste 559 New York, NY 10169 Copy to: Helmsley-Noyes PO Box 5852 New York, NY 10087-5852 | Real property lease at 1385 Broadway, New York, NY | 2/28/95 | 5/31/03 |
| 149 Madison, LLC | Abramson Brothers Inc. 501 Fifth Ave. New York, NY 10017 Contact: Alan B. Abramson | Real property lease at 149 Madison Ave 5th Floor | April-96 | 5/31/03 |
| Corporate Campus I Joint Venture | C/O Lend Lease Real Estate Investments, Inc. 787 Seventh Ave. New York, NY 10019 Copy to: Corporate Campus/ Joint Venture (Crown Milford, LLC) PO Box 9440 Uniondale, New York 11555 Copy to: Rogin Nassau, Caplan, Lassman & Hirtle, LLC City Place I-22nd FLoor Hartford, CT 06103 Attention: Barry S. Feigenbaum, Esq. | Real property lease at Milford Crowne Plaza/Wheelers Farms Road | 12/24/98 | 5/31/03 |
| Ninety Park Property LLC | C/O MRC Management LLC 330 Madison Ave. New York, NY 10017 Att: Mr. David L Sims Copy to: Proskaur Rose 1585 Broadway New York, NY 10036 Att: Lawrence J. Lipson, Esq. Vornado Realty Trust (MRC Management, LLC) PO Box 11191 Church Street Station New York, NY 10286 Copy to: Ninety Park Property, LLC c/o Vornado Office Management LLC 888 Seventh Ave. New York, NY 10019 Attn: Mr. David R. Greenbaum Copy to: Vornado Realty Trust 210 Route 4 East Paramus, New Jersey 07652 Attention: Mr. Joseph Macnow | Real property lease at 90 Park Ave. (12th, 13th and 26th Floor) | 10/24/63 as amended 5/27/99 | 5/31/03 |

# PLAN SCHEDULE 3.1

## LIST OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES TO BE REJECTED

| CONTRACT PARTY | NOTICE ADDRESS | CONTRACT DESCRIPTION | CONTRACT DATE/CONTRACT EXTENSION DATE | REJECTION EFFECTIVE DATE |
|---|---|---|---|---|
| MCI | 200 Park Ave. 6th Floor New York, NY 10016 Contact: Deborah Drake | Telecommunications Voice and Data/Service Contract | October-98 | Earlier of Effective Date of Plan and expiration date of contract or lease |
| Iron Mountain | 71 Hammer Mill Rd. Rocky Hill, CT 06067 Contact: Matt Cronin | Iron Mountain Off Site Data Storage | 1999 | Earlier of Effective Date of Plan and expiration date of contract or lease |
| Veri-Sign | 500 W. Madison St. Suite 2050 Chicago IL 60661 Contact: Eric Johnson | AS/400 Software | 9/29/01 | Earlier of Effective Date of Plan and expiration date of contract or lease |

## LIST OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES TO BE ASSUMED

| CONTRACT PARTY | NOTICE ADDRESS | CONTRACT DESCRIPTION | CONTRACT DATE/CONTRACT EXTENSION DATE | CURE AMOUNT |
|---|---|---|---|---|
| Inseco Inc. | 15 W. 39th Street New York, NY 10015 Attention: Mike Behmoaras | Buying Agency Agreement - Non exclusive | 02/07/97 | 0.00 |
| Allen B. Schwartz | 2399 Mandeville Canyon Road, Los Angeles, CA 90049 | Name agreement | 09/01/99 | 0.00 |
| Nancy Ganz | Nancy Ganz, 300 Central Park West Apt. 2L New York, NY 10024 Paul Weiss Rifkind Wharton & Garrison 1285 Avenue of the Americas, New York, NY 10019 Att: Robert M. Hirsh, Esq. | Name Agreement | 07/17/96 | 0.00 |
| Amanda Beard | c/o Evan Morgenstein Premier Management 200 Merry Hill Drive Raleigh, NC 27606 | Athlete/Coach Agreement | 06/01/01 | 0.00 |
| Ambrose (Rowdy) Gaines | 4948 Caldwell Mill Road Birmingham, AL 35243 | Athlete/Coach Agreement | 01/01/01 | 0.00 |
| Amy Van Dyken | c/o Gold Medal Management 1750-14th Street Boulder, CO 80302 | Athlete/Coach Agreement | 03/01/99 | 0.00 |
| Barbara Lindquist | P.O. Box 284 Wilson, WY 83014 | Athlete/Coach Agreement | 01/01/01 | 0.00 |
| Bob Steele | 505 Attleboro Avenue Bakersfield, CA 93314-4909 | Athlete/Coach Agreement | 01/01/01 | 0.00 |
| Brooke Bennett | c/o Evan Morgenstein Premier Management 200 Merry Hill Drive Raleigh, NC 27606 | Athlete/Coach Agreement | 01/01/01 | 0.00 |
| Chris Thompson | c/o Evan Morgenstein Premier Management 200 Merry Hill Drive Raleigh, NC 27606 | Athlete/Coach Agreement | 06/01/01 | 0.00 |
| Colleen Lanne | 1914 David St. Austin, TX 78705 | Athlete/Coach Agreement | 03/27/01 | 0.00 |
| College Swimming Coaches Association of America | P.O. Box 63285 Colorado Springs, CO 801962 | Athlete/Coach Agreement | 07/01/98 | 0.00 |
| Courtney Shealy | 155 International Drive #609 Athens, GA 30605 | Athlete/Coach Agreement | 09/01/00 | 0.00 |
| Cristina Teuscher | c/o SFX 220 West 42nd St. 12th Floor New York, NY 10036 (SFX, N1272) | Athlete/Coach Agreement | 04/01/00 | 0.00 |
| Cynthia Gallagher | 1586 Electric Ave. Venice, CA 90291 | Athlete/Coach Agreement | 07/01/99 | 0.00 |
| Dara Torres (Wilhelmina) | 245 E. 72nd St. Apt. 9G New York, NY 10021-4588 | Athlete/Coach Agreement | 08/01/99 | 0.00 |
| Dave Parrington | 8604 Constance Way Knoxville, TN 37923 | Athlete/Coach Agreement | 04/17/98 | 0.00 |
| Dave Salo | 21762 Quiet Oak Drive Lake Forest, CA 92630 | Athlete/Coach Agreement | 01/01/99 | 0.00 |
| Dennis Dale | 1774 Girard Ave. S. Minneapolis, MN 55403 | Athlete/Coach Agreement | Jan 01 | 0.00 |
| Donald Gibb | 201 Sesqui Trail Columbia, SC 29223 | Athlete/Coach Agreement | 01/01/00 | 0.00 |
| Ed Sinnott | 8222 Forest Hills Dallas, TX 75218 | Athlete/Coach Agreement | 01/01/01 | 0.00 |
| Ed Spencer | 3640 Churchwell Ct. Tucker, GA 30084 | Athlete/Coach Agreement | 01/01/01 | 0.00 |
| Eddie Reese | 5924 Gorham Glen Lane Austin, TX 78739 | Athlete/Coach Agreement | 01/01/01 | 0.00 |
| Greg Louganis | P.O. Box 4130 Malibu, CA 90265 | Athlete/Coach Agreement | 01/01/01 | 0.00 |

## LIST OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES TO BE ASSUMED

| CONTRACT PARTY | NOTICE ADDRESS | CONTRACT DESCRIPTION | CONTRACT DATE/CONTRACT EXTENSION DATE | CURE AMOUNT |
|---|---|---|---|---|
| Hongping Li | 4962 Starling Way<br>La Palma, CA 90623 | Athlete/Coach Agreement | 01/01/99 | 0.00 |
| Hunter Kemper | 500 Crooked Oak Ct.<br>Longwood, FL 32779 | Athlete/Coach Agreement | 01/01/01 | 0.00 |
| Ira Klein | 1335 Mountain Ave.<br>Santa Barbara, CA 93101 | Athlete/Coach Agreement | 01/01/01 | 0.00 |
| Jack Bauerle | 125 Tipperary Rd.<br>Athens, GA 30606 | Athlete/Coach Agreement | 1/1/2001 | 0.00 |
| Jack Nelson | 417 Idlewyld Drive<br>Ft. Lauderdale, FL 33301 | Athlete/Coach Agreement | 01/01/01 | 0.00 |
| Jason Lezak | 5377 Traci Drive<br>Santa Barbara, CA 93111 | Athlete/Coach Agreement | 10/15/98 | 0.00 |
| Jay Schryver | 6116 Jordan Drive<br>Loveland, CO 80537 | Athlete/Coach Agreement | 05/01/01 | 0.00 |
| Jerry Holtrey | 3522 Glencairn Rd.<br>Shaker Heights, OH 44122 | Athlete/Coach Agreement | 01/01/99 | 0.00 |
| Jill Sterkel | 5507 Mr. Bonnell Rd.<br>Austin, TX 78731 | Athlete/Coach Agreement | 01/01/01 | 0.00 |
| Joanna Zeiger | c/o Epstein<br>8631 Constence Way<br>Knoxville, TN 37923 | Athlete/Coach Agreement | 01/01/99 | 0.00 |
| John Carroll | 806 Defense Drive<br>Marlton, NJ 08053 | Athlete/Coach Agreement | 09/01/98 | 0.00 |
| John Collins | 105 Rockland Ave.<br>Larchmont, NY 10538 | Athlete/Coach Agreement | 01/01/01 | 0.00 |
| John Mattos | 190 S. County Road #5<br>Ft. Collins, CO 80524 | Athlete/Coach Agreement | 01/01/01 | 0.00 |
| John Morse | 2713 Wortham<br>Nashville, TN 37215 | Athlete/Coach Agreement | 01/01/01 | 0.00 |
| John Trembley | 7515 Little River Road<br>Knoxville, TN 37920 | Athlete/Coach Agreement | 01/01/01 | 0.00 |
| Josh Davis | 4408 Airport Blvd.<br>Austin TX 78722 | Athlete/Coach Agreement | 01/01/98 | 0.00 |
| Kerry Classen | 801 Astoria Park Dr.<br>Bakersfield, CA 93311 | Athlete/Coach Agreement | 01/01/01 | 0.00 |
| Kerstin Weule | 4743 S. Cedar Rd.<br>Evergreen, CO 80439 | Athlete/Coach Agreement | 03/27/01 | 0.00 |
| Kris Kirchner | 6000 N. Maple Grove Rd.<br>Bloomington, IN 47404 | Athlete/Coach Agreement | 01/01/01 | 0.00 |
| Kristy Kowal | 1726 Colony Drive<br>Wyomissing, PA 19610 | Athlete/Coach Agreement | 04/01/00 | 0.00 |
| Larry Shofe | 7315 San Carlos Road<br>Jacksonville, FL 32217 | Athlete/Coach Agreement | 07/01/98 | 0.00 |
| Lenny Krayzelburg | LK Sports Inc.<br>attn: Peter Carlisle<br>Octagon<br>50 Courtland Pier<br>Portland, ME 04101<br>OR LK Sports Inc. Octagon Box 17574 Portland, ME 04112 | Athlete/Coach Agreement | 07/01/98 | 0.00 |
| Lindsay Benko | c/o Evan Morgenstein Premier Management 200 Merry Hill Drive Raleigh, NC 27606 | Athlete/Coach Agreement | 07/01/99 | 0.00 |
| Mark Ruiz | c/o Premier Management Merry Hill Drive Raleigh, NC 27606 | Athlete/Coach Agreement | 07/01/98 | 0.00 |

## LIST OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES TO BE ASSUMED

| CONTRACT PARTY | NOTICE ADDRESS | CONTRACT DESCRIPTION | CONTRACT DATE/CONTRACT EXTENSION DATE | CURE AMOUNT |
|---|---|---|---|---|
| Mark Schubert | A-104 Surfside Ave. Surfside, CA 90743 | Athlete/Coach Agreement | 01/01/01 | 0.00 |
| Matt Scoggins | 4900 Calhoun Canyon Loop Austin, TX 78735 | Athlete/Coach Agreement | 10/15/98 | 0.00 |
| Megan Quann | 11602-135th Street, Court E Puyallup, WA 98374 | Athlete/Coach Agreement | 10/01/00 | 0.00 |
| Melvin Nash | 1704 Todd Trail College Station, TX 77845 | Athlete/Coach Agreement | 01/01/01 | 0.00 |
| Michael Smedley | 1 Olympic Plaza Colorado Springs, CO 80909 | Athlete/Coach Agreement | Mar 01 | 0.00 |
| Mike Chasson | 3431 E. Cherokee Street Phoenix, AZ 85044 | Athlete/Coach Agreement | 01/01/01 | 0.00 |
| Mike Hastings | 10755 Voyaitzes Auburn, CA 95603 | Athlete/Coach Agreement | 01/01/01 | 0.00 |
| Mike Walker | 1801 Lakeshore Drive Austin, TX 78746 | Athlete/Coach Agreement | 01/01/01 | 0.00 |
| Misty Hyman | 1869 Alma Road Palo Alto, CA 94301 | Athlete/Coach Agreement | 06/01/01 | 0.00 |
| Muray Stephens | 11123 Powers Avenue Cockeyville, MD 21030 | Athlete/Coach Agreement | 01/01/01 | 0.00 |
| Neil Walker | c/o IMG 1360 East 9th St., Ste 100 Cleveland, OH 44114 | Athlete/Coach Agreement | 08/01/98 | 0.00 |
| Nort Thornton | 4 Irvine Moraga, CA 64556 | Athlete/Coach Agreement | 01/01/01 | 0.00 |
| Patrick Hogan | 10104 Whitehorn Drive Charlotte, NC 28277 | Athlete/Coach Agreement | 01/01/01 | 0.00 |
| Paul Bergen | 14910 SW Carlsbad Drive Beaverton, OR 97007 | Athlete/Coach Agreement | 01/01/01 | 0.00 |
| Paul Blair | 216 Ridgeway Drive Little Rock, AR 72205 | Athlete/Coach Agreement | 01/01/01 | 0.00 |
| Pete Raykovich | 22253 N. DeAnza Circle Cupertino, CA 95014 | Athlete/Coach Agreement | 01/01/01 | 0.00 |
| Peter Banks | 14320 Diplomat Drive Tampa, FL 33613 | Athlete/Coach Agreement | 01/01/99 | 0.00 |
| Peter Malone | 8008 West Gate Lenexa, KS 66215 | Athlete/Coach Agreement | 01/01/01 | 0.00 |
| Pierre LaFontaine | 3252 E. Highland Phoenix, AZ 85018 | Athlete/Coach Agreement | 01/01/99 | 0.00 |
| Rada Owen | c/o Premier Management Merry Hill Drive Raleigh, NC 27606 | Athlete/Coach Agreement | 09/01/00 | 0.00 |
| Richard Curl | 730 Springvale Rd. Great falls, VA 22066 | Athlete/Coach Agreement | 07/31/95 | 0.00 |
| Richard Quick | 725 Hobart Street Menlo Park, CA 94025 | Athlete/Coach Agreement | 01/01/01 | 0.00 |
| Richard Shoulberg | 3208 Sunset Avenue Norristown, PA 19401 | Athlete/Coach Agreement | 01/01/01 | 0.00 |
| Rick Benner | 2618 5th St. SW Puyallup, WA 98373 | Athlete/Coach Agreement | 01/01/00 | 0.00 |
| Rick Schavone | 48 Pearce Mitchell Stanford, CA 94305 | Athlete/Coach Agreement | 01/01/01 | 0.00 |
| Robert Bowman | 941 N. Calvert St. Baltimore, MD 21202 | Athlete/Coach Agreement | 01/01/01 | 0.00 |
| Scott Tucker | 197 Pineview Irvine, CA 92620 | Athlete/Coach Agreement | 05/01/01 | 0.00 |
| Janet Evans | c/o SFX 220 West 42nd Street, 12th Floor New York, NY 10036  SFX(N1598) | Athlete/Coach Agreement | 01/01/01 | 0.00 |
| Sheila Taormina | 30542 Puritan Livonia, MI 48154 | Athlete/Coach Agreement | 01/01/99 | 0.00 |
| Skip Runkle | 1316 Ann Court West Linn, OR 97068 | Athlete/Coach Agreement | 01/01/01 | 0.00 |
| Speedo/NISCA Sponsorship | c/o Thomas Wojslowoucs 93 Kennedy Blvd. Bayonne, NJ 07002 | Athlete/Coach Agreement | 09/01/00 | 0.00 |
| Steve Collins | 5233 Vanderbilt Dallas, TX 75206 | Athlete/Coach Agreement | 01/01/01 | 0.00 |

## PLAN SCHEDULE 3.2

### LIST OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES TO BE ASSUMED

| CONTRACT PARTY | NOTICE ADDRESS | CONTRACT DESCRIPTION | CONTRACT DATE/CONTRACT EXTENSION DATE | CURE AMOUNT |
|---|---|---|---|---|
| Susan Teeter | 44 Maplewood Drive Cranbury, NJ 08512 | Athlete/Coach Agreement | 01/01/98 | 0.00 |
| Tim O'Brien | 501 Seabreeze Blvd. Ft. Lauderdale, FL 33316 | Athlete/Coach Agreement | 01/01/01 | 0.00 |
| Tom Malchow | c/o Evan Morgenstein Premier Management 200 Merry Hill Drive Raleigh, NC 27606 | Athlete/Coach Agreement | 07/01/99 | 0.00 |
| Tom Wilkens | 2 Alpha Ct. Middletown, NJ 07748 | Athlete/Coach Agreement | 07/15/98 | 0.00 |
| University of Florida | Universtiy Athletic Assoc. Inc. PO 14485 Gainesville, FL 32604-2485 | Athlete/Coach Agreement | 07/01/98 | 0.00 |
| University of Michigan | Athletic Department 1000 S. State Street Ann Arbor, MI 48109 | Athlete/Coach Agreement | 07/01/00 | 0.00 |
| University of Minnesota | Jean Freeman 3508 Spain Place NE Minneapolis, MN 55418 | Athlete/Coach Agreement | 01/01/01 | 0.00 |
| University of Virginia | Athletic Department University Hall Charlottesville, VA 22903 | Athlete/Coach Agreement | 07/15/00 | 0.00 |
| USA Swimming | 1 Olympic Plaza Colorado Springs, CO 80909 | Athlete/Coach Agreement | 01/01/01 | 0.00 |
| Vince Panzano | 2600 Darling Road Blacklick, OH 43004 | Athlete/Coach Agreement | 01/01/01 | 0.00 |
| Citibank | 111 Wall Street New York, NY 10043 Attention: David Humza | Retirement Plan Trustee | 06/29/89 | 0.00 |
| Merrill Lynch | 1400 Merrill Lynch Drive, MSC 04BSPRO, Pennington, NJ 08534-4125 Attention: Connie Carpenter | Savings Plan Trustee and Recordkeeper | 05/01/95 | 0.00 |
| Deloite & Touche Tax Technologies LLC | 1751 Lake Cook Road Deerfield, IL 60015 Attention: Chris Popson | CORPTax Return Preparation Software License | 1/01/01-12/31/03 | 0.00 |
| AAFES | 3911 S. Walton Walker Blvd. Dallas, TX 75236 Attn: Ramona Brookshire | Vendor agreement for markdowns, advertising, etc. | 03/08/02 | 0.00 |
| Gart's | PO Box 46527 Denver, CO 80201 | Vendor agreement for markdowns, advertising, etc. | 03/14/02 | 0.00 |
| Sam's Club | 702 SW 8th St. Bentonville, AK 72716 | Vendor agreement for markdowns, advertising, etc. | 11/01/01 | 0.00 |
| Sport Chalet | 920 Foothill Blvd. La Canada, CA 91011 | Vendor agreement for markdowns, advertising, etc. | 03/14/02 | 0.00 |
| Sports Authority | PO Box 508003 Lauderdale, FL 33340-7002 | Vendor agreement for markdowns, advertising, etc. | 05/28/02 | 0.00 |
| Wal-Mart | 702 SW 8th St. Bentonville, AK 72716 | Vendor agreement for markdowns, advertising, etc. | | 0.00 |
| Bed, Bath & Beyond | 650 Liberty Ave. Union, NJ 07083 Copy to: City of Philadelphis c/o Liberty Place RetailAssoc. 1625 Chestnut St. Philadelphia, Pennsylvania 19103 | EDI Agreement | 11/10/98 | 0.00 |
| Dillards | 1600 Cantrell Rd. Little Rock, AR 72201 Attn: Dean Worley | EDI Agreement | 07/31/00 | 0.00 |
| Footstar Corp | 3201 W. Royal Lane Irving, TX 75063 | EDI Agreement | | 0.00 |
| Meijer | 2929 Walker Ave. NW Grand Rapids, MI 49504 | EDI Agreement | 02/21/00 | 0.00 |
| Oshman's Sporting goods | Gart's Sports Co. PO Box 46527 Denver, CO 80201 | EDI Agreement | 01/07/00 | 0.00 |
| Polo Ralph Lauren | Karen Kong Polo/Ralph Lauren Corp 9 Polito Ave. Lyndhurst, NY 07071 | EDI Agreement | 07/10/00 | 0.00 |
| Zellers | AP Dept. Serv Cptes. Foum. PO Box 4220, Station A Toronto, ON Canada | EDI Agreement | 06/09/00 | 0.00 |

## PLAN SCHEDULE 3.2

### LIST OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES TO BE ASSUMED

| CONTRACT PARTY | NOTICE ADDRESS | CONTRACT DESCRIPTION | CONTRACT DATE/CONTRACT EXTENSION DATE | CURE AMOUNT |
|---|---|---|---|---|
| David Saxl & Spencer Weinberg | 205 W. 39th Street New York, NY 10018 | Indp Rep | 12/01/98 | 0.00 |
| Lawler Grp & Pam Lawler | 250 Spring St. 135 118A Atlanta, GA 30303 | Indp Rep | 12/01/98 | 0.00 |
| Price Inc & James Price | J. Price Inc. 1320 Fairway Drive Chesapeake, VA 23320 | Indp Rep | 11/01/00 | 0.00 |
| Stacey Gossman | 4764 La Villa Marina, Suite A Marina Del Rey, CA 90292 | Indp Rep | 03/01/99 | 0.00 |
| TALXUC Express | 10101 Woodfield Lane St. Luis, MO 63132 | Unemployment Compensation Service Agreement (formerly The Frick Company) | 12/30/94 and amended 1/02 | 0.00 |
| UNITE Local 1701 | UNITE Mid-Atlantic Regional Joint Board 903 Russell Ave. Suite 400, Gaithersburg, PA 20879 | Collective Bargaining Agreement | 03/02/01 | 0.00 |
| VPSI | 1220 Rankin Street Troy, MI 48083 | Rideshare transportation | 07/01/97 | 0.00 |
| Elaine Villano | 25 Phesant Run Kinnelon, NJ 07405 | Independent Sales Representative | | 0.00 |
| Pam Lawler | 1 Bay Club Dr. Ste. 19-A Bayside, NY 11360 | Independent Sales Representative | 12/01/98 | 0.00 |
| AFC - Canada | 9770 Trans Canada Saint Larent, Que, H4S 1V9 | Royalty-Speedo | | 0.00 |
| Agnes B. Trouble | 194 Rue de Rivoli 75001 Paris France | Agreement on ALLEN B mark | 02/20/01 | 0.00 |
| Anne Cole | 1709 Ambassador Ave. Beverly Hills, CA 90210 | License agreement in perpetuity to manufacture and distribute swimwear and activewear under | 10/26/93 as amended | 0.00 |
| Body Art Australia | 79-81 Coppin Street Richmond Victoris 3121 Australia Attention: Mr. Clyde Davenport | Export Customer Exclusive Distribution Agreement | 08/01/98 as amended and extended | 0.00 |
| Calvin Klein Inc. | 205 W. 39th Street New York, NY 10018 Attention: Mr. Barry K. Schwartz copy to: Calvin Klein, Inc., 205 W. 39th Street New York, NY 10018 Attention: Deirdre Miles-Graeter Copy to: Paul, Weiss, Rifkind, Wharton & Garrison 1285 Avenue of the Americas New York, NY 10019-6064 Attention: Robert M. Hirsh, Esq. | Royalty CK Jeans | 03/31/99 | 0.00 |
| Calvin Klein Inc. | 205 W. 39th Street New York, NY 10018 Attention: Mr. Barry K. Schwartz copy to: Calvin Klein, Inc., 205 W. 39th Street New York, NY 10018 Attention: Deirdre Miles-Graeter Copy to: Paul, Weiss, Rifkind, Wharton & Garrison 1285 Avenue of the Americas New York, NY 10019-6064 Attention: Robert M. Hirsh, Esq. | Royalty CK Jeans - Kids | | 0.00 |

## LIST OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES TO BE ASSUMED

| CONTRACT PARTY | NOTICE ADDRESS | CONTRACT DESCRIPTION | CONTRACT DATE/CONTRACT EXTENSION DATE | CURE AMOUNT |
|---|---|---|---|---|
| Calvin Klein Inc. | 205 W. 39th Street New York, NY 10018 Attention: Mr. Barry K. Schwartz copy to: Calvin Klein, Inc., 205 W. 39th Street New York, NY 10018 Attention: Deirdre Miles-Graeter Copy to: Paul, Weiss, Rifkind, Wharton & Garrison 1285 Avenue of the Americas New York, NY 10019-6064 Attention: Robert M. Hirsh, Esq. | National Advertising CK Jeans | | 0.00 |
| Calvin Klein Inc. | 205 W. 39th Street New York, NY 10018 Attention: Mr. Barry K. Schwartz copy to: Calvin Klein, Inc., 205 W. 39th Street New York, NY 10018 Attention: Deirdre Miles-Graeter Copy to: Paul, Weiss, Rifkind, Wharton & Garrison 1285 Avenue of the Americas New York, NY 10019-6064 Attention: Robert M. Hirsh, Esq. | Men's Accessories License for CALVIN KLEIN products on men's accessories | 03/14/94 as extended | 0.00 |
| Calvin Klein Inc. | 205 W. 39th Street New York, NY 10018 Attention: Mr. Barry K. Schwartz copy to: Calvin Klein, Inc., 205 W. 39th Street New York, NY 10018 Attention: Deirdre Miles-Graeter Copy to: Paul, Weiss, Rifkind, Wharton & Garrison 1285 Avenue of the Americas New York, NY 10019-6064 Attention: Robert M. Hirsh, Esq. | Exclusive License to manufacture, distribute and sell Men's and Women's jeans and jeans related items for CALVIN KLEIN/CK CALVIN KLEIN and variations and CALVIN KLEIN JEANS, CK/CALVIN KLEIN JEANS AND CK/CALVIN KLEIN KHAKIS | 08/04/94 as amended and extended | 0.00 |
| Calvin Klein Inc. | 205 W. 39th Street New York, NY 10018 Attention: Mr. Barry K. Schwartz copy to: Calvin Klein, Inc., 205 W. 39th Street New York, NY 10018 Attention: Deirdre Miles-Graeter Copy to: Paul, Weiss, Rifkind, Wharton & Garrison 1285 Avenue of the Americas New York, NY 10019-6064 Attention: Robert M. Hirsh, Esq. | Exclusive License for CALVIN KLEIN marks for jeans and jeans related items | 08/04/94 as amended and extended | 0.00 |
| Calvin Klein Inc. | 205 W. 39th Street New York, NY 10018 Attention: Mr. Barry K. Schwartz copy to: Calvin Klein, Inc., 205 W. 39th Street New York, NY 10018 Attention: Deirdre Miles-Graeter Copy to: Paul, Weiss, Rifkind, Wharton & Garrison 1285 Avenue of the Americas New York, NY 10019-6064 Attention: Robert M. Hirsh, Esq. | Settlement Agreement | 01/22/01 | 0.00 |
| Calvin Klein Inc. | 205 W. 39th Street New York, NY 10018 Attention: Mr. Barry K. Schwartz copy to: Calvin Klein, Inc., 205 W. 39th Street New York, NY 10018 Attention: Deirdre Miles-Graeter Copy to: Paul, Weiss, Rifkind, Wharton & Garrison 1285 Avenue of the Americas New York, NY 10019-6064 Attention: Robert M. Hirsh, Esq. | Trust Agreement transferring all CALVIN KLEIN marks worldwide | 03/14/94 | 0.00 |

## PLAN SCHEDULE 3.2

### LIST OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES TO BE ASSUMED

| CONTRACT PARTY | NOTICE ADDRESS | CONTRACT DESCRIPTION | CONTRACT DATE/CONTRACT EXTENSION DATE | CURE AMOUNT |
|---|---|---|---|---|
| Calvin Klein Inc. | 205 W. 39th Street New York, NY 10018 Attention: Mr. Barry K. Schwartz copy to: Calvin Klein, Inc., 205 W. 39th Street New York, NY 10018 Attention: Deirdre Miles-Graeter Copy to: Paul, Weiss, Rifkind, Wharton & Garrison 1285 Avenue of the Americas New York, NY 10019-6064 Attention: Robert M. Hirsh, Esq. | Men's Underwear License Agreement between Calvin Klein Trademark Trust and Calvin Klein, Inc. | 03/14/94 | 0.00 |
| Calvin Klein Inc. | 205 W. 39th Street New York, NY 10018 Attention: Mr. Barry K. Schwartz copy to: Calvin Klein, Inc., 205 W. 39th Street New York, NY 10018 Attention: Deirdre Miles-Graeter Copy to: Paul, Weiss, Rifkind, Wharton & Garrison 1285 Avenue of the Americas New York, NY 10019-6064 Attention: Robert M. Hirsh, Esq. | Women's Intimate Apparel License Agreement | 03/14/94 | 0.00 |
| Calvin Klein Inc. | 205 W. 39th Street New York, NY 10018 Attention: Mr. Barry K. Schwartz copy to: Calvin Klein, Inc., 205 W. 39th Street New York, NY 10018 Attention: Deirdre Miles-Graeter Copy to: Paul, Weiss, Rifkind, Wharton & Garrison 1285 Avenue of the Americas New York, NY 10019-6064 Attention: Robert M. Hirsh, Esq. | Quality Assurance Agreement | 03/14/94 | 0.00 |
| Calvin Klein Inc. | 205 W. 39th Street New York, NY 10018 Attention: Mr. Barry K. Schwartz copy to: Calvin Klein, Inc., 205 W. 39th Street New York, NY 10018 Attention: Deirdre Miles-Graeter Copy to: Paul, Weiss, Rifkind, Wharton & Garrison 1285 Avenue of the Americas New York, NY 10019-6064 Attention: Robert M. Hirsh, Esq. | Servicing Agreement | 03/14/94 | 0.00 |
| Calvin Klein Inc. | 205 W. 39th Street New York, NY 10018 Attention: Mr. Barry K. Schwartz copy to: Calvin Klein, Inc., 205 W. 39th Street New York, NY 10018 Attention: Deirdre Miles-Graeter Copy to: Paul, Weiss, Rifkind, Wharton & Garrison 1285 Avenue of the Americas New York, NY 10019-6064 Attention: Robert M. Hirsh, Esq. | Acquisition Agreement acquiring the beneficial ownership interest in the CALVIN KLEIN Trademarks | 03/14/94 | 0.00 |
| Calvin Klein Inc. | 205 W. 39th Street New York, NY 10018 Attention: Mr. Barry K. Schwartz copy to: Calvin Klein, Inc., 205 W. 39th Street New York, NY 10018 Attention: Deirdre Miles-Graeter Copy to: Paul, Weiss, Rifkind, Wharton & Garrison 1285 Avenue of the Americas New York, NY 10019-6064 Attention: Robert M. Hirsh, Esq. | Administration Agreement (Underwear and Intimate Apparel) | 03/14/94 | 0.00 |

## LIST OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES TO BE ASSUMED

| CONTRACT PARTY | NOTICE ADDRESS | CONTRACT DESCRIPTION | CONTRACT DATE/CONTRACT EXTENSION DATE | CURE AMOUNT |
|---|---|---|---|---|
| Calvin Klein Inc. | 205 W. 39th Street New York, NY 10018 Attention: Mr. Barry K. Schwartz copy to: Calvin Klein, Inc., 205 W. 39th Street New York, NY 10018 Attention: Deirdre Miles-Graeter Copy to: Paul, Weiss, Rifkind, Wharton & Garrison 1285 Avenue of the Americas New York, NY 10019-6064 Attention: Robert M. Hirsh, Esq. | Worldwide Transfer Agreement | 03/14/94 | 0.00 |
| Christine Grimaldi/Matthew Grimaldi | 17 Cosdrew Lane East Hampton, NY 11907 | Patent license for Fitness Rope | 10/31/1995 | 0.00 |
| Cradle Togs, Inc. | 77 South First Street Elizabeth, NJ 07206 d/b/a Children's Apparel Network 112 West 34th Street New York, NY 10102 | Termination of Sublicense Agreement to manufacture children's swimwear | 05/06/99 | 0.00 |
| Deere & Company | John Deere Road Moline, Illinois 61265 | Settlement agreement on expanded use of leaping stag design mark | 06/23/97 | 0.00 |
| Deere & Company | John Deere Road Moline, Illinois 61265 | Settlement agreement of pending litigation on use of leaping stag design mark | 10/14/1975 | 0.00 |
| Endurance Sports Tech./Hydraulic Swim | 3455 Edison Way Menlo Park, CA 94025 Att: Marc Evans | Swim Foil Paddles | Oct 96 - perpetuity (or expiration of last patent) | 0.00 |
| Face First, Inc. and Skellerup Industries (Malaysia) | FaceFirst, Inc., 34342 Pacific Coast Hwy, Unti "A", Dana Point, CA 92629; and Skellerup Industries (Malaysia) SDN BHD, K.B. 705, Ulu Tiram Estate, 80990 Johor Bahru, Malaysia | Patent license for non-stick compound SlickFinish | 11/10/98 | 0.00 |
| Fleetcraft International Limited | International House 2 Lower Ashley Road Ashley New Milton Hampshire BH24 5AD England | Export Customer Non-Exclusive Distribution Agreement | 07/25/00 | 0.00 |
| Jaco Enterprises, Inc. | 740 West Aire Libre Avenue PO Box 22084 Phoenix, AZ 85028 | Method for sealing external auditory ear canal (earplugs/headband product) | Aug 00 - life of patent | 0.00 |
| Jashanmal National Company, LLC | Al Lotus Building Salah-Al-Din Street PO Box 1545 Dubai, UAR | Distribution Agreement for intimate apparel and men's accessories | | |
| Jordan Marsh Ltda./Jordan March Latin American, Inc. | Jordan March Ltda. Avenida Estacion No. 5AN-17, Cali, Columbia/Jordan March Latin American, Inc. 16th Street, Roosevelt Ave, Silbros Bldg. Rm. 2, PO Box 32-0024 Colon Free Zone, Republic of Panama | Settlement Agreement terminating the Distribution Agreement and related Consent Judgment Against Jordan Marsh | 02/02/01 | 0.00 |
| Khalil Fattal Et Fils S.A.L. | Sindia s.a.r.l., B.P. 773 Beyrouth-Liban Jisr el Wati - Sin El Fil | Export Customer Non-Exclusive Distribution Agreement | 10/13/99 | 0.00 |
| Lambert Howarth Safety Limited | Marshalls Road NN9 6EX Wellingborough Great Britain | Coexistence Agreement | | |
| Larema Distribuion, S.A. | 36 Rue des Maraichers P.O. Box 113 1211 Geneva, Switzerland Attention: Mr. Bernard Comre | Export Customer Non-Exclusive Distribution Agreement | 1/1/99 as amended and extended | 0.00 |
| Leading Lady, Inc. | | Settlement Agreement to cease manufacture of Sparkle Satin padded underwire bra | 07/05/00 | 0.00 |
| Lifeguard Licensing Corp. | c/o Ruby Azrak 1385 Broadway, Ste. 1407 New York, NY 10018 | Trademark License for LIFEGUARD used on apparel and sporting accessories | July 1, 1995 as extended | 0.00 |

## LIST OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES TO BE ASSUMED

| CONTRACT PARTY | NOTICE ADDRESS | CONTRACT DESCRIPTION | CONTRACT DATE/CONTRACT EXTENSION DATE | CURE AMOUNT |
|---|---|---|---|---|
| Macroconceptos S.A. de C.V. | Presa Salinillas No. 370 desp. 704, Col. Irrigacion, C.P. 11200, Mexico, D.F. | Termination and Release of Sales Representative Letter Agreement dated May 14, 1998 | 05/01/01 | 0.00 |
| Martin Philip Hull | Martin Philip Hull Menlo Park, CA | Settlement agreement of litigation of Pro Short Fins | 11/02/98 | 0.00 |
| Mayer-Bershire Corporation | 25 Edison Road Wayne, NJ 07470 | Coexistence Agreement for WARNER'S IN CONTROL and IN CONTROL products | 05/03/96 | 0.00 |
| N. & AN. Kanellakis & Co. O.E. | 30-32 Perikleous Str. 105 62 Athens, GREECE | Export Customer Non-Exclusive Distribution Agreement | 1/1/99 as amended and extended | 0.00 |
| O.B.T. CO., LTD | 6-5-1 Nishi Shinjuku Shinjuku-ku Tokyo Japan Attention: Mr. Takashi Sudo | Export Customer Non-Exclusive Distribution Agreement | 8/1/98 as amended and extended | 0.00 |
| Piccoli International A/S | Oster Alle 48, DK-2100 Copenhaen, Denmark | Termination of Distribution Agreement dated January 1, 1997 | 08/26/97 | |
| Polo Ralph Lauren Corporation | 650 Madison Avenue New York, NY 10022 Attention: President with copy to Sherry Jetter | Chaps License Amendment adding Mexico to Territory | 06/02/98 | 0.00 |
| Polo Ralph Lauren Corporation | 650 Madison Avenue New York, NY 10022 Attention: President with copy to Sherry Jetter | Letter Agreement extending U.S. Chaps License and assigning Canadian Chaps License | 06/16/99 | 0.00 |
| Polo Ralph Lauren, L.P. | 650 Madison Avenue New York, NY 10022 Attention: President with copy to Sherry Jetter | Amended and Restated License Agreement | 01/01/96 | 0.00 |
| PRL Fashions of Europe Sr. | 650 Madison Avenue New York, NY 10022 Attention: President with copy to Sherry Jetter | Distribution Agreement | 02/08/99 | 0.00 |
| PRL USA Inc. | 650 Madison Avenue New York, NY 10022 Attention President; with copy to Sherry Jetter | Royalty Chaps | 01/01/02 | 0.00 |
| PRL USA USA, successor to Polo Ralph Lauren, LP and the Polo/Lauren Company LP | 650 Madison Avenue New York, NY 10022 Attention President; with copy to Sherry Jetter | Men's Sportswear License for CHAPS BY RALPH LAUREN AND CHAPS marks | 1/1/96 as amended and extended | 0.00 |
| PRL USA, Inc. and Polo/Lauren Company, LP | 650 Madison Avenue New York, NY 10022 Attention: President with copy to Sherry Jetter | License Agreement to manufacture and distribute swimwear under the RALPH LAUREN, POLO SPORT RALPH LAUREN and POLO SPORT-RLX, LAUREN-RALPH LAUREN, RALPH-RALPH LAUREN trademarks | 2/1/98, as amended and extended | 0.00 |
| San Floria International Co., Ltd. | 1 F, No. 3 Lane 20 Jen Ai Road Section 2 Taipei, Taiwan Attention: Mr. Woody Liu | Export Customer Non-Exclusive Distribution Agreement | 8/1/97 as amended and extended | 0.00 |
| Speedo Holdings B.V. | Pentland Group PLC The Pentland Centre, Lakside, Squires Lane, Finchley, London N# 2QL England | Authentic Fitness Name Agreement | 5/8/92 effective 4/29/92 | 0.00 |
| Speedo Holdings B.V. | Pentland Group PLC, The Pentland Centre, Lakside, Squires Lane, Finchley, London N# 2QL England | addendum to address use of name and marks in connection with retail stores | 12/07/95 | |

## LIST OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES TO BE ASSUMED

| CONTRACT PARTY | NOTICE ADDRESS | CONTRACT DESCRIPTION | CONTRACT DATE/CONTRACT EXTENSION DATE | CURE AMOUNT |
|---|---|---|---|---|
| Speedo Holdings B.V./Speedo International Ltd. | Pentland Group PLC, The Pentland Centre, Lakside, Squires Lane, Finchley, London N# 2QL England | Memorandum of Understanding Regarding Calculation of Royalties for Licensed Products Sold By the SPEEDO/AUTHENTIC FITNESS Retail Stores | 12/15/95 | 0.00 |
| Speedo International Limited | Pentland Group PLC, The Pentland Centre, Lakside, Squires Lane, Finchley, London N# 2QL England | License Agreement in perpetuity for SPEEDO marks in U.S. and Canada | 5/10/90 as amended | 0.00 |
| Speedo International Limited | Pentland Group PLC, The Pentland Centre, Lakeside, Squires Lane, Finchley, London N3 2QL ENGLAND | Sublicense Agreement | 05/14/90 | |
| Speedo International Ltd. | Pentland Group PLC, The Pentland Centre, Lakside, Squires Lane, Finchley, London N# 2QL England | License Agreement in perpetuity for SPEEDO marks in Mexico and Caribbean | 5/10/90 as amended | 0.00 |
| Sportzone S.A. | Avda. Francisco de Miranda, Torre Proviincial B, Piso 3, Ofic. 32, Chacao, Caracas VENEZUELA | Customer Letter Agreement for sale of multibrand products in Venezuela | 03/06/00 | |
| Store Specialists, Inc. | Midland Buendia Bldg., Sen Gil Puyat Avenue, Makati City, Metro Manila, Philippines | Export Customer Non-Exclusive Distribution Agreement | 1/1/01 as amended and extended | 0.00 |
| U.S. Luggage Company, L.P. | United States Luggage Company, L.P., 400 Wireless Blvd. Hauppauge NY 11788 Attention: Mr. Richard Krulik, Chairman and CEO | Termination of Sales Representative Agreement dated June 1, 1999 | 03/14/01 | 0.00 |
| Wal-Mart Stores | 702 SW 8th St. Bentonville, AK 72716 | License agreement/White Stag | 08/01/93 as amended and extended | 0.00 |
| Wal-Mart Stores | 702 SW 8th St. Bentonville, AK 72716 | License agreement/White Stag | 08/01/93 as amended and extended | 0.00 |
| Wal-Mart Stores | 702 SW 8th St. Bentonville, AK 72716 | License agreement/Catalina | 12/29/93 as amended and extended | 0.00 |
| Wal-Mart Stores | 702 SW 8th St. Bentonville, AK 72716 | License agreement/Catalina | 12/29/93 as amended and extended | 0.00 |
| Western Glove Works R.S. | 555 Logan Avenue Winnipeg, Manitoba, Canada R3A OS4 Attention: Mr. R. Silver | Termination of Independent Sales Representative Agreement | 02/28/00 | 0.00 |
| Anne Cole | 1709 Ambassador Ave. Beverly Hills, CA 90210 | Consultant - Design Services | 10/26/1993 as amended | 0.00 |
| Polo Ralph Lauren | 650 Madison Avenue New York, NY 10022 Attention: President with copy to Sherry Jetter | Compensation/Design services | Jul 98 - Jun 99 | 0.00 |
| Polo Ralph Lauren | 650 Madison Avenue New York, NY 10022 Attention: President with copy to Sherry Jetter | Compensation/Design services | Jul 99 - Jun 00 | 0.00 |
| Polo Ralph Lauren | 650 Madison Avenue New York, NY 10022 Attention: President with copy to Sherry Jetter | Compensation/Design services | Jul 00 - Jun 01 | 0.00 |
| Polo Ralph Lauren | 650 Madison Avenue New York, NY 10022 Attention: President with copy to Sherry Jetter | Compensation/Design services | Jul 01 - Jun 02 | 0.00 |
| Polo Ralph Lauren | 650 Madison Avenue New York, NY 10022 Attention: President with copy to Sherry Jetter | Compensation/Design services | Jul 02 - Jun 03 | 0.00 |
| Polo Ralph Lauren Corporation | 650 Madison Avenue New York, NY 10022 Attention: President with copy to Sherry Jetter | Design Agreement | 2/1/98 as amended and extended | 0.00 |

## LIST OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES TO BE ASSUMED

| CONTRACT PARTY | NOTICE ADDRESS | CONTRACT DESCRIPTION | CONTRACT DATE/CONTRACT EXTENSION DATE | CURE AMOUNT |
|---|---|---|---|---|
| Polo Ralph Lauren, L.P. | 650 Madison Avenue New York, NY 10022 Attention: President with copy to Sherry Jetter | Design Services and Copyright License Agreement for CHAPS BY RALPH LAUREN mark on men's sportswear | 11/1/96 (assigned to Warnaco of Canada on 6/16'99) | 0.00 |
| PRL USA USA, successor to Polo Ralph Lauren, LP and the Polo/Lauren Company LP | 650 Madison Avenue New York, NY 10022 Attention: President with copy to Sherry Jetter | Design Services Agreement for CHAPS | 01/01/96 | 0.00 |
| El Corte Ingles | calle Hermosilla, 112 Madrid, SPAIN | Commercial Collaboration (Non-Exclusive) | 08/15/99 | 0.00 |
| Aldon | 1999 Harrison St. Suite 1500 Oakland, CA 94612 Attention: Bob Anderson | Software License | | 0.00 |
| CGS | 1675 Broadway New York, NY 10019 Attention: Phil Williams | Hardware Maintenance | 12/30/01 | 0.00 |
| CGS | 1675 Broadway New York, NY 10019 Attention: Phil Williams | Software | | 0.00 |
| DataVault | 12515 Sherman Way North Hollywood, CA 91605 Attention: Gary Swaigen | Off-Site Data Storage | 06/20/00 | 4,300.16 |
| Datavault | 12515 Sherman Way North Hollywood, CA 91605 Attention: Gary Swaigen | Network backup | | 482.20 |
| DSA | 2 Pin Plaza Suite 1500 New York, NY 10121 Attention: John Raio | UPS systems | | 0.00 |
| EMS | 19 Tompkins Ave. Pleasantville, NY 10570 Attention: Rich DeBlasi | EMS Cleaning of Data Center | | 2,432.70 |
| Firemaster | 2684 Lacy Street Los Angeles, California 90031 | Inergen system, server | | 1,320.00 |
| GE Global Exchange Services | 100 Edison Park Drive MS52A2 Gaithersburg, MD 20878-3204 | Maintenance | | 0.00 |
| Gerber Technologies Inc. | 24 Industrial Park Road West Tolland, CT 06084 Attention: Malcom Gullish | Web PDM/PDS | | 24,795.43 |
| Hartford Fire | 543 Boston Post Rd. Milford, CT 06640 | Hartford Fire DC fire surpression | | 0.00 |
| Hawkeye | P.O. Box 2167 Fort Collins, CO 80522 Attention: Cindy Starck | Software License | | 0.00 |
| IBM Corp. | 2929 North Central Ave. Phoenix, AZ 85012 | Lease of Standalone Modem V.32 | 12/01/01 | 0.00 |
| IBM Corp. | 2929 North Central Ave. Phoenix, AZ 85012 Attention: Ray Beye | Hardware maintenance | | 0.00 |
| Integrated Visual Systems | 1207-E. Crew Rd. Matthew, NC 28105 Attention: Joe Wadlinger | AS/400 Software/Inventory (IVS) | | 2,875.50 |
| Interworld | 41 East 11th Street 11th Floor New York NY 10003 Attention: Robert Weis | Speedo.com E-commerce Sys. | | 0.00 |
| JDA | 14400 North 87th Street Scottsdale, AZ 85260-3649 Attention: Victor Foreman | AS/400 SOFTWARE (RETAIL) | | 0.00 |
| Manhattan Associates | P.O. Box 102851 Atlanta, GA 30368 Attention: Patricia Tessendorf | AS/400 SOFTWARE PkMS | | 0.00 |
| Microsoft | 1 Microsoft Way Redmond, WA 98052 | Software License | | 0.00 |
| Monarch | 175 Cabot Street, Suite 503 Kiwekkm, NA 01854 | Report Formatting/Merchandising | | 0.00 |
| Peregrine | 1277 Lenox Park Blvd. Atlanta, GA 30319 Attention: Chris Mascis | Software License | 08/01/00 | 0.00 |

# PLAN SCHEDULE 3.2

## LIST OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES TO BE ASSUMED

| CONTRACT PARTY | NOTICE ADDRESS | CONTRACT DESCRIPTION | CONTRACT DATE/CONTRACT EXTENSION DATE | CURE AMOUNT |
|---|---|---|---|---|
| Prodata | 2809 South 160th St., Suite 401 Omaha, Nebraska 68130 Attention: Rachel Hartley | AS/400 Software/DBU, | 05/30/01 | 960.00 |
| QRS | 1400 Marina Way South Richmond, CA 94804 | Maintenance Agreement | | 0.00 |
| Ron Lynn Management | 1037 Route 45 East Ste C-106 Clifton, NJ 07013 | Software License & Consulting | | 0.00 |
| Safestone | 600 Alexander Park, Suite 303 Princeton, NJ 08540 Attention: Martin Norman | AS/400 Software/Detect-IT | | 15,900.00 |
| Secured Document Systems (SDDS) | 10550 Dearwood Park Blvd. Bldg 300 Jacksonville, FL 32256 Attention: Kim Wolfe | A/P Check Printing software | | 0.00 |
| Showcase Vista | 4131 Highway 52 North Ste G11 Rochester, MN 55901 Attention: Tammie Myers | Data Base Query/Finance/software | | 0.00 |
| SVI | 5607 Plamer Way Carlsbad, CA 92008 Attention: Pat Jordon | AS/400 Software SVI Retail | 03/23/00 | 0.00 |
| Touchtone Corporation | 3151 Airway Bldg. I-3 Costa Mesa, CA. 92626 | AS/400 Retail | 06/12/01 | 1,498.50 |
| Vital Records Inc., | P.O. Box 688563 New Center Road Flagtown, NJ 08821 | Maintenance Agreement | | 5,147.25 |
| ICI Solutions | 1212 E. Grandview Rd. Phoenix, AZ 85022 or 7201 W. Oakland, Suite 2 Chandler, AZ 85226 Attention: Kim Meche | Software Maintenance | 7/02 - 6/03 | 0.00 |
| The GetPaid Corporation | 300 Lanidex Plaza Parsippany, NJ 07054-3409 Attention: James Kinney | Software Maintenance | 12/01 - 12/02 | 0.00 |
| Hyperion Solutions | 1344 Crossman Avenue Sunnyvale, CA 94089 Attention: Shereen Moubayed Headquarters | Software Maintenance | 7/02 - 6/03 | 164.50 |
| Fiware, Inc. (formerly Westcorp) | 155 Technology Parkway #400 Norcross, Georgia 30092 Attention: Evette Jackson | Software Maintenance | 11/01 - 10/02 | 0.00 |
| Business Software Inc. (BSI) | 155 Technology Parkway #100 Norcross, Georgia 30092 Attention: Patty Odell | Software Maintenance | 5/02 - 5/03 | 0.00 |
| SPS Commerce | 1450 Energy Park Dr. Suite 127 St. Paul, MN 55108 | EDI Testing/Certification | 02/23/01 | 0.00 |
| Automation Taft Printing Company | 1230 Long Beach Ave Los Angeles, CA 90021 Attention: Aileen Platon | Parking Lease | N/A | 166.60 |
| Chin Jung Co. | 936 Long Beach Ave. Los Angeles, CA 90021 Attention: Julie | Parking Lease | N/A | 382.95 |

## LIST OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES TO BE ASSUMED

| CONTRACT PARTY | NOTICE ADDRESS | CONTRACT DESCRIPTION | CONTRACT DATE/CONTRACT EXTENSION DATE | CURE AMOUNT |
|---|---|---|---|---|
| Parpark | 100 W. Walnut GE104A Pasadena, CA 91124 Attention: Eli Portiallo | Parking Lease | N/A | 91.57 |
| A.P.I. Security | 30 Rayette Rd. Concord, Ont., L4K 2G3 | Alarm monitoring (King St.) | 02/02/02 | 0.00 |
| ADT Security | 940 6th Ave. St. W. Calgary, Alb., T2P 3R1 | Alarm monitoring (Leeds) | 01/01/02 | 0.00 |
| ADT Security | 940 6th Ave. St. W., Calgary, Alb., T2P 3T1 | Alarm monitoring (Gervais) | 08/01/02 | 0.00 |
| ADT Security Services | 2858 Banksville Rd. Pittsburgh, PA 45216 Attention: Tom Madigan | Security services (US Sports Building) Account # 010 081 S 08149  010 081 S 06027  010 084 S 05533 | 01/30/00 | 7,211.54 |
| Ascom | 150 Steelcase Rd. W. Markham, Ont. LeR 3J9 | Equipment Lease (Postage) | 07/31/02 | 0.00 |
| Ascom | 150 Steelcase Rd. W. Markham, Ont. LeR 3J9 | Service (Postage) | 12/01/01 | 0.00 |
| Ascom | 150 Steelcase Rd. W. Markham, Ont. LeR 3J9 | Rate Update Agreem (Postage) | 12/01/01 | 0.00 |
| Canon | 110 W. Walnut St Gardena, CA 90248 | Service contract for color copiers/Van Nuys | | 893.06 |
| Canon Financial | P.O. Box 42937 Philadelphia, PA 19101-2937 | 3 Canon Color Copiers | | 0.00 |
| Citicapital | 1600 Blvd Rene Levesque Ste 1400 Mtl., Que., H3H 1p9 | Equipment Lease (Routers) | 03/01/98 | 0.00 |
| Empire Sewing | 830 San Julian Street Los Angeles, CA 90014 Attention: David or Craig | Equipment Lease | 04/20/99 | 166.32 |
| Empire Sewing | 830 San Julian Street Los Angeles, CA 90014 Attention: David or Craig | Equipment Lease | 04/20/99 | 0.00 |
| Empire Sewing | 830 San Julian Street Los Angeles, CA 90014 Attention: David or Craig | Equipment Lease | 08/25/99 | 0.00 |

# PLAN SCHEDULE 3.2

## LIST OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES TO BE ASSUMED

| CONTRACT PARTY | NOTICE ADDRESS | CONTRACT DESCRIPTION | CONTRACT DATE/CONTRACT EXTENSION DATE | CURE AMOUNT |
|---|---|---|---|---|
| Empire Sewing | 830 San Julian Street<br>Los Angeles, CA 90014<br>Attention: David or Craig | Equipment Lease | 03/01/00 | 0.00 |
| GE Capital | P.O. Box 642555<br>Pittsburgh, PA 15264-2555 | Static Cutter | May-00 | 10,113.79 |
| Georgia Florida Burglar Alarm Co. | 206 Plantation Oak Dr.<br>Thomasville, GA 31792<br>Attention: Reese Brookered | Security system/fire alarm | monthly | 1,065.00 |
| Honeywell Inc. | 1979 Marcus Ave. Suite 137<br>Lake Success, NY 11042<br>Attention: Tim Floyd | Security System | Feb-99 | 36,831.76 |
| Image Financial | PO Box 4552 Stn A Toronto Ontario<br>M5W 4R9 | Equipment Lease (Fax) | 7/1/01 | 0.00 |
| Image Financial | PO Box 4552, Stn A,<br>Toronto Ontario M5W 4R9 | Equipment Lease (Copier) | 3/1/00 | 0.00 |
| IOS Capital | P.O. Box 13078<br>Macon, GA 31208 | Lease of Canon CLC 1150 and Color Pass 240 for Design Room (Color Copier). | 11/30/00 | 5,746.47 |
| IOS Capital | PO Box 9115<br>Macon, GA 31208-9115 | Copiers/Van Nuys | | 13,727.51 |
| Mobile Mini | 1834 West Third Street<br>Tempe, AZ | Storage Contract | | 0.00 |
| Neopost | P.O. Box 45822<br>San Francisco, CA 94145-0822 | Postage Metere Lease | Jan-01 | 1,998.43 |
| Newcourt | P.O. Box 33057<br>Newark, NJ 07188-0057 | Dell Computer Lease | Feb-99 | 18,407.88 |
| Newcourt Leasing | 1769 Paragon Dr.<br>Memphis, TN 38101 | Canon 2400 Color Laser NKZ-01017 | June 99 | 11,542.52 |
| Pitney Bowes | 2225 American DR<br>Neenah, WI 54956-1005 | Equipment Lease | 01/30/97 | 5,970.67 |
| Pitney Bowes | 2225 American DR<br>Neenah, WI 54956-1005 | Equipment Lease | 09/27/99 | 1,200.28 |
| Pitney Bowes | 105 Gamma Drive<br>Suite 100<br>Pittsburgh, PA 15238<br>Attention: Michael Behringer, George Homan, Ned Miller | Equipment lease(1)Postage Meter Head-U570 (2) METER BASE U560 | 05/30/00 | 0.00 |

## LIST OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES TO BE ASSUMED

| CONTRACT PARTY | NOTICE ADDRESS | CONTRACT DESCRIPTION | CONTRACT DATE/CONTRACT EXTENSION DATE | CURE AMOUNT |
|---|---|---|---|---|
| Pitney Bowes | 105 Gamma Drive Suite 100 Pittsburgh, PA 15238 Attention: Michael Behringer, George Homan, Ned Miller | Equipment Lease/Postage Machine-Shipping #6500 | 06/20/00 | 3,535.00 |
| Pitney Bowes | PO Box 5311 Burlington, Ont. L7R 4T9 | Equipment Lease (Postage) | 09/01/99 | 0.00 |
| Pitney Bowes | PO Box 5311 Burlington, Ont. L7R 4T9 | Equipment Lease (Postage) | 11/01/99 | 0.00 |
| Pitney Bowes | PO Box 5311 Burlington, Ont. L7R 4T9 | Equipment Lease (Postage) | 12/01/99 | 0.00 |
| Pitney Bowes Credit Corp | 2225 American Dr. Neenah, WI 54956-1005 | Postage machine/Van Nuys | | 0.00 |
| Security Systems Inc. | 1090 Elm Street Suite 201 Rocky Hill, CT 06067 Attention: Tony Marrico | Security System | Oct-01 | 0.00 |
| Symbol | | Equipment Inventory Ctrl Lease | Dec-00 | 4,572.04 |
| Xerox | 1301 Ridgeview Drive Lewisville, TX 75057 | Equipment Lease | 09/09/98 | 0.00 |
| Xerox | PO Box 4568, Stn A. Toronto, Ontario M5W 4T8 | Equipment Lease (Fax) | 06/22/99 | 0.00 |
| Xerox | PO Box 4568 Stn A. Toronto, Ontario M5W 4T8 | Equipment Lease (Copier) | 09/10/01 | 0.00 |
| Xerox | PO Box 4568 Stn A. Toronto, Ontario M5W 4T8 | Equipment Lease (Copier) | 09/10/01 | 0.00 |
| Xerox | PO Box 4568 Stn A. Toronto, Ontario M5W 4T8 | Equipment Lease (Copier) | 04/30/02 | 0.00 |
| Xerox | PO Box 4568 Stn A. Tor. Ont. M5W 4T8 | Equipment Lease (Copier) | 07/15/99 | 0.00 |
| Xerox Corporation | 580 White Plains Rd. Tarrytown, NY 10591 Attention Gretchen Reasnor | Leased copiers | Jun-00 | 0.00 |
| 3437931 Canada | 740 Rue St., Maurice Mt. Que., H3C 1L5 | Real Property (Crescent St.) | 06/01/01 | 0.00 |
| Allen B. Schwartz and Pamela Schwartz | 1231 Long Beach Ave. Los Angeles, CA 90021 Attention: Allen Schwartz Copy to: Allen B. and Pamela Schwartz c/o Gelfand Rennet & Feldman 1880 Century Park E. Los Angeles, CA 90067 | Real Property Lease | 02/25/98 | 5,299.23 |
| AMC, Inc. | 240 Peachtree Stree, N.W. Atlanta, GA 30303 Ste 2200 Att: Glen Bell Copy to: AMC, Inc. (Americasmart Real Estate, LLC) PO Box 116381 Atlanta, Georgia 30368 | Real Property Lease | 03/22/99 | 2,107.95 |

## PLAN SCHEDULE 3.2

## LIST OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES TO BE ASSUMED

| CONTRACT PARTY | NOTICE ADDRESS | CONTRACT DESCRIPTION | CONTRACT DATE/CONTRACT EXTENSION DATE | CURE AMOUNT |
|---|---|---|---|---|
| Aventura Mall Venture | 19501 Biscayne Blvd. Suite 400 Aventura, FL 33180 | Store Lease (Store #41 Aventura Mall) | September-94 | 3,350.24 |
| Bared and Sons | 264 Fortaleza Street Old San Juan, PR 00901 Attention: Evelio Santiago | Store Lease (Store #177 Cristo Street) | March-97 | 1,666.67 |
| Bayside Limited Part | 401 Biscayne Blvd. R106 Miami, FL 33132   Copy to:  Bayside Center Limited PO Box 64181 Baltimore, Maryland 21044-4181 Copy to:  Bayside Center Limited (Central Parking System) 2 South Biscayne BLvd., Suite 1684 Miami, Florida  33131 | Store Lease (Store #40 Bayside Mall) | September-94 | 2,440.09 |
| Bayside Market Place | 401 Biscayne Blvd. R106 Miami, FL 33132 Attention:  Wendy Hernandez | Storage (Store #40) | January-02 | 1,363.00 |
| Bellview Sq. Managers, Inc. | 575 Bellevue Square Bellevue, WA 98004 Attention:  Wesley W. Harris copy to:  Bellevue Square Managers PO Box 908 Bellevue, Washington 98009 | Store Lease (Store #4 Bellevue Square) | November-93 | 2,686.10 |
| Ben Wunson d/b/a Bee & Bee Realty | 2335 South Ocean Blvd.   #4A Palm Beach, FL 33480 Attention:  Ben Abel Copy to:   Davis & Gilbert LLP 1740 Broadway, 3rd Floor New York, NY 10019 Attn: Jeffrey A. Moross, Esq. Copy to: Jones, Day, Reavis & Pouge 599 Lexington Ave. New York, NY 10022 Attention: Corinne Bull, Esq., Reginald A. Greene, Esq. | Storage and Distribution | | 2,686.10 |
| Bohannon Del | 60 31St. Ave. San Mateo, CA 64403 Copy to: Bohannon Development Company 60 Hillsdale Mall          San Mateo, CA 94403 | Store Lease (Store #101 Hillsdale Shopping Center) | November-95 | 4,200.91 |
| Boston Properties | 4 Embarcacero Center, Lobby Level, Ste. 2600, San Francisco, CA 94111 Attention:  Laura Gigante | Store Lease (Store #17 Embarcadero Center) | July-94 | 2,365.98 |
| Boston Properties | 800 Boylston Street  Ste. 450 Boston, MA 02199 Attention:  Christine Bouffard Copy to:  Boston Properties PO Box 3557 Boston, Massachusetts 02241 | Store Lease (Store #5 Prudential Center) | December-93 | 0.00 |
| BP PRU Center Acquisition LLC | 800  Boylston Street, Ste. 450 Boston, MA 02199 Attention:  Christine Bouffard | Store Lease (Store #5 Prudential Center) | November-01 | 594.77 |
| Bridgewater Commons | 400 Commons Way, Ste. 100 Bridgewater, NJ 08807 Attention: Janell Vaughan Copy to:  Rouse Property Management PO Box 64001 Baltimore, Maryland 21264-4001 | Store Lease (Store #75 Bridgewater Commons) | July-95 | 2,719.74 |
| Caparr Center Assoc | P.O. Box 9506 San Juan, PR 00908-9506 | Store Lease (Store #175 San Patricio Plaza) | December-96 | 1,455.89 |
| CC Ryder's Piano Bar, Inc. | 1221 Newton Street Key West, FL  33040 Attention: Michael J. Bunis | Store Lease (Store #199 611 Duval Street) | August-97 | 3,068.04 |
| CVM Assoc | P.O. Box 31147 Raleigh, NC 27622 2840 Plaza Place, Ste. 100 Raleigh, NC 27612 | Store Lease (Store #165 Crabtree Valley) | November-96 | 3,475.36 |
| Danjon Realty, LLC | 1231 Long Beach Ave. Los Angeles CA 90021 Attention:  Allen Schwartz Copy to:  Danjon Realty, LLC c/o Gelfand Rennert & Feldman 1880 Century Park East Los Angeles, CA 90067 | Real Property Lease | 07/01/00 | 7,664.98 |

# PLAN SCHEDULE 3.2

## LIST OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES TO BE ASSUMED

| CONTRACT PARTY | NOTICE ADDRESS | CONTRACT DESCRIPTION | CONTRACT DATE/CONTRACT EXTENSION DATE | CURE AMOUNT |
|---|---|---|---|---|
| Downtown Mini Warehouse | 1050 W. Washington Blvd. Los Angeles CA 90015 Attention: Oscar | Storage Lease | 06/01/98 | 775.00 |
| Downtown Mini Warehouse | 1050 W. Washington Blvd. Los Angeles CA 90015 Attention: Oscar | Storage Lease | 09/23/99 | 555.00 |
| Elenore Heller | 501 Woodruff Ave Los Angeles CA 90024 Attention: Elenor Heller | Real Property Lease | 12/03/97 | 2,871.08 |
| General Growth Management of Hawaii, Inc. | 1585 Kapiolani Blvd., Ste. 800 Honolulu, HI 96814 Attention: Phyllis M. Okuma Copy to: GGP Ala Moana, LLC PO Box 1300 Honolulu, Hawaii 96807-1300 | Store Lease (Store #77 Ala Moana Shp. Ctr.) | February-96 | 7,502.89 |
| Goldtree Investment Co. | P.O. Box 65262 Washington DC 20035 Attention: Gary Nath/Judith | Store Lease (Store #126 3416 "M" Street) | October-96 | 2,597.22 |
| Huntingdon Storage and Distribution Limited | 5506 Sixth Ave Rear, Altoona PA 16602 Attention: John Radionoff/Leonard Fiore Copy to: Jones, Day, Reavis & Pogue 599 Lexington Ave. New York, NY 10022 Attention: Corinne Bull, Esq. and Reginald A. Greene, Esq. | Warehouse Lease | | 32,180.60 |
| Hycel Properties | 101 South Hanley Road Ste. 1300 St. Louis, MO 63105-2494 Attention: Mary L. Rollins | Store Lease (Store #32 St. Louis Galleria) | November-94 | 3,196.24 |
| Ivanhoe Inc. | 413 Rue St-Jacques Mtl., Que., H2Y 3Z4 | Real Property Lease (Ctre J. Cartier-Longueuil) | 03/15/99 | 0.00 |
| Kimco | 3333 New Hyde Park Road, Ste. 100 P.O. Box 5020 New Hyde Park, NY 11042-0020 Attention: Patricia Danielo | Store Lease (Store #11 Bridgehampton Com.) | May-94 | 1,317.99 |
| L&B Realty Advisors | L&B Realty Advisors/Lehndorff Tysons Joint Venture/L&B Insititutional Property Managers, Inc. 19 61 Chain Bridge Road Mc Lean, VA 22101-4562 Copy to: Tysons Corner, LLC PO Box 847058 Dallas, Texas 75284-7058 | Store Lease (Store #13 Tysons Corner Center) | May-94 | 3,822.33 |
| London Arms/Lyn Mar Ltd. | Affordable Landmarks Inc./London Arms/Lyn Mar LTD 1130 Washington Ave. 4th Floor Miami Beach, FL Attention: Guy Pue | Store Lease (Store #155 Collins Ave.) | January-97 | 1,403.07 |
| Macerich | Arden Fair Mall The Mecerice Company (Macerick Co.) 1689 Arden Way, Ste. 1167 Sacramento, CA 95815-4031 | Store Lease (Store #12 Arden Fair Mall) | April-94 | 2,530.33 |
| Macerich | 401 Wilshire Blvd., Ste. 700 Santa Monica, CA 60401 Attention: Mark Strain Copy to: Macerich Santa Monica, LLP 395 Santa Monica PL Santa Monica, CA 90401-2350 | Store Lease (Store #70 Santa Monica Place) | November-95 | 2,580.48 |

## PLAN SCHEDULE 3.2

### LIST OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES TO BE ASSUMED

| CONTRACT PARTY | NOTICE ADDRESS | CONTRACT DESCRIPTION | CONTRACT DATE/CONTRACT EXTENSION DATE | CURE AMOUNT |
|---|---|---|---|---|
| Macerich | 401 Wilshire Blvd., Ste. 700 Santa Monica, CA 60401 Attention: Mark Strain Copy to: Macerick Northeastern Assoc. (Macerick Northwestern Assoc.) 1275 Broadway Plaza Walnut Creek, CA 94596 | Store Lease (Store #79 Broadway Plaza) | June-95 | 2,986.14 |
| Macerich | 401 Wilshire Blvd., Ste. 700 Santa Monica, CA 60401 Attention: Mark Strain Copy to: Macerick Corte Madera 1554 Redwood Highway Corte Madera, CA 94925 | Store Lease (Store #80 Village @ Corte Madera) | June-95 | 4,335.01 |
| Mall of America | 60 East Broadway Bloomington, MN 55425-5550 Attention: Stephanie Miller | Store Lease (Store #38 Mall of America) | October-94 | 5,651.26 |
| Mellenium Partners | 148-154 Columbus Avenue Partner 1995 Broadway, 3rd Floor New York, NY 10023 | Store Lease (Store #26 Columbus Ave.) | July-95 | 5,041.67 |
| MRC Management LLC | P.O. Box 11191 New York, NY 10286-4142 Attention: Roger Larson | Store Lease (Store #3 90 Park Ave. NY, NY) | November-93 | 144,914.00 |
| Newmark | New Mark & Co. Real Estate Inc. 125 Park Ave. 11th Floor New York, NY 10017 Attention: William G. Cohen | Store Lease (Store #145 500 Fifth Ave.) | November-96 | 10,391.28 |
| Northam Realty | 875 Don Mills Rd. Ltd., c/o Carlton St., Ste 909, Toronto, Ont. M5B 1J3 | Real Property Lease (Gervais Warehouse) | 06/01/97 | 0.00 |
| O & Y Enterprises | 725 Warden Ave. Tor. Ont., M1L 4R7 | Real Property Lease (Warden Outlet) | 11/08/96 | 0.00 |
| Occidental Life Insurance Co of Calif | Transamerica Occidental Life Milldrop 5441 AEGON 4333 Edgewood NE Cedar Rapids, IA 52499 | Authentic Fitness Corp Corporate Office 6040 Bandini Blvd. Los Angeles, CA 90040. Offices & Common Area Designer Div. Warehouse and Sewing Plant | 06/14/67 | 2,614.84 |
| Olmstead Properties, Inc. | 525 Building Co., LLC 575 Eight Ave STE 2400 New York, NY 10018 Attention: Waler Muller | Real Property Lease | 08/30/99 | 0.00 |
| Olmstead Properties, Inc. | 525 Building Co., LLC 575 Eight Ave STE 2400 New York, NY 10018 Attention: Waler Muller | Real Property Lease | | 8,346.34 |

## LIST OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES TO BE ASSUMED

| CONTRACT PARTY | NOTICE ADDRESS | CONTRACT DESCRIPTION | CONTRACT DATE/CONTRACT EXTENSION DATE | CURE AMOUNT |
|---|---|---|---|---|
| One Colorado Associates | 24 East Union Street Pasadena, CA 31103 Attention: Sally Lunetta Copy to 1 Colorado Investments PO Box 31001-0399 Pasadena, CA 9110-0399 | Real Property Lease | 2/12/91 | 2,464.30 |
| Plaza Las Americas, Inc. | La Torre de Plaza 525 F.D. Roosevelt Ave. Ste. 1000 Hato Rey, PR 00918 Copy to: Plaza Las America, Inc. PO Box 363268 San Juan, Puerto Rico 00936 | Store Lease (Store #176 Plaza Las Americas) | July-00 | 6,546.53 |
| Public Storage | 4889 Valley Blvd. Los Angeles, CA 90032 Attention: Veronica | Storage Lease | 12/09/99 | 372.00 |
| Public Storage | 4889 Valley Blvd. Los Angeles, CA 90032 Attention: Veronica | Storage Lease | 10/15/99 | 438.40 |
| Public Storage | 4889 Valley Blvd. Los Angeles, CA 90032 Attention: Veronica | Storage Lease | 02/03/00 | 263.00 |
| Realspace Manag. | 20 Adelaide St. East., Ste 1103 Tor. Ont., M5C 2T6 | Real Property Lease (Leeds Ave.) | 11/01/86 | 0.00 |
| Realty Associated Fund V.I.P | Realty Associates Fund V Irwindale Distribution Center PO 51921, Unit I Los Angeles, CA 90051-6210 Landlord: TZ Associates Realty 4100 Newport Place, Suite 830 Newport Beach, CA 92660 Notices to: Wohl Property Group 30200 Rancho Viejo Road, Suite C San Juan Capistrano, CA 92675 | Authentic Fitness Corp 5305 Rivergrade Road Irwindale, CA 91076 Speedo Finished Goods Warehouse | 10/17/00 | 0.00 |
| Riverwalk Partners | 1 Poydras Street, Ste. 101 New Orleans, LA 70130 Copy to: Riverwalk Partnership PO Box 64865 Baltimore, Maryland 21264-4433 | Store Lease (Store #113 Riverwalk Market Pl.) | October-96 | 2,572.10 |

# PLAN SCHEDULE 3.2

## LIST OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES TO BE ASSUMED

| CONTRACT PARTY | NOTICE ADDRESS | CONTRACT DESCRIPTION | CONTRACT DATE/CONTRACT EXTENSION DATE | CURE AMOUNT |
|---|---|---|---|---|
| Rouse | 10275 Little Patuxant Pky. Columbia, MD 21044 Attention: Charles Lanier Copy to: Rouse Property Management PO Box 64117 Baltimore, Maryland 21264-4117 | Store Lease (Store #20 Towson Town Center) | July-94 | 2,410.79 |
| Rouse | 10275 Little Patuxant Pky. Columbia, MD 21044 Attention: Charles Lanier Copy to: Beachwood Place PO Box 64350 Baltimore, Maryland 21264-4350 | Store Lease (Store #82 Beachwood Place) | June-95 | 0.00 |
| Rouse | 10275 Little Patuxant Pky. Columbia, MD 21044 Attention: Charles Lanier | Store Lease (Store #124 Northstar Mall) | August-96 | 6,037.44 |
| Scottsdale Fashion Sq. | 7014-590 East Camelback Rd. Scottsdale, AZ 85251 Copy to: Scottsdale Fashion Square P.O. Box 3557 Boston, Massachusetts 02241 | Store Lease (Store #6 Scottsdale Fashion Square) | November-93 | 3,957.13 |
| Seniority Investments | 37A Hazelton Ave. Tor. Ont., M5R 2E3 | Real Property Lease (King St. - 3rd Floor) | 10/01/99 | 0.00 |
| Seniority Investments | 37A Hazelton Ave. Tor. Ont., M5R 2E3 | Real Property Lease (King St. - 2nd Floor) | 01/01/02 | 0.00 |
| SH&S Limited Partnership | 210 North Walton Blvd. Suite 30 Bentonville, Arkansas 72712 | Real Property Lease Rain Tree Business Center/ Suite 13&14 | 10/1/2001 as amended 5/02 | 810.00 |
| Sherman Oaks Fashion Associates | 14006 Riverside Drive, Ste. 17 Shearman Oaks, A 91423 Attention: Ruth Twealt Copy to: Sherman Oaks Fashion Association PO Box 35107 Newark, New Jersey 07193-5107 | Store Lease (Store #66 Fashion Square Mall) | April-95 | 1,901.50 |
| Short Hills Assc | 1200 Morris Turnpike, Ste. A-001 Shorthills, NJ 07078 Attention: Christine Barros Copy to: Short Hills Associates PO Box 67000 Dept. 53501 Detroit, Michigan 48267-0523 | Store Lease (Store #19 The Mall @ Shorthills) | November-94 | 0.00 |
| Silk Mills Properties LLC | Ward Corporation of Pennsylvania (Silk Mills Properties Inc.) 5506 Sixth Ave., Com Rear Altoona, PA 16602 Attention: John Radionoff/Leonard Fiore Copy to: Jones, Day, Reavis & Pogue 599 Lexington Ave. New York, NY 10022 Attention: Corinne Bull, Esq. Reginald A. Greene, Esq. | Warehouse Lease | | 0.00 |
| Simon | P.O. Box 7033 Indianapolis, Indiana 46207 Attention: John Geletka Copy to: Town Center at B. Raton Trust PO Box 10909 Newark Post Office Newark, NJ 07193-0909 | Store Lease (Store #22 Boca Raton Mall) | November-94 | 8,505.50 |
| Simon | P.O. Box 7033 Indianapolis, Indiana 46207 Attention: Barney Quinn Copy to: The Retail Property Trust PO Box 10909 Newark, New Jersey 07193 | Store Lease (Store #34 Lenox Square) | November-95 | 4,570.39 |
| Simon | P.O. Box 7033 Indianapolis, India 46207 Attention: Vicki Hanor Copy to: Fashion Mall Partners ID #774676 PO Box 5541 Indianapolis, Indiana 46255-5541 | Store Lease (Store #44 The Westchester) | 03/17/95 | 6,512.19 |
| Simon Property Group | P.O. Box 7033 Indianpolis, IN 46207 Attention: Matthew Barger Copy to: Northgate Mall Partnership PO Box 2004 Indianaapolis, Indiana 46255 | Store Lease (Store #182 Northgate Mall) | November-96 | 4,086.67 |

# PLAN SCHEDULE 3.2

## LIST OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES TO BE ASSUMED

| CONTRACT PARTY | NOTICE ADDRESS | CONTRACT DESCRIPTION | CONTRACT DATE/CONTRACT EXTENSION DATE | CURE AMOUNT |
|---|---|---|---|---|
| St. Jacobs Countryside | 47 King St.<br>St. Jacobs, Ont., N0B 2N0 | Real Property Lease (St. Jacobs Outlet) | 06/01/00 | 0.00 |
| Taubman | 200 East Long Lake Road, Suite 300<br>Bloomfield Hills, MI 48303<br>Attention: Thomas S. Russom | Store Lease (Store #9 Cherry Creek Shop. Ctr.) | February-94 | 0.00 |
| The Forbes Company | 100 Galleria Officentre, Ste. 427<br>P.O. Box 667<br>Southfield, Michigan 48037-066<br>Copy to: Franklin/Forbes-Cohen<br>PO Box 79001<br>Detroit, Michigan 48279-1252 | Store Lease (Store #102 Somerset Collection N) | August-96 | 2,129.52 |
| TRI Development | 115 Fairbanks Ave.<br>Thomasville, GA 31792<br>Attention: Harry Thomlinson<br>Copy to: PO Box 848<br>Thomasville, Georgia 31799 | Building Lease | 08/01/96 | 0.00 |
| Trizec Hahn Development Corporation | 4350 Lajolla Drive, Suite 700 San Diego, CA 92122-1233<br>Attention: Lee H. Wagman<br>Copy to: University Town Center Assoc. File #55976<br>Los Angeles, CA 90074-5976 | Store Lease (Store #33 University Town Ctr.) | September-94 | 2,421.81 |
| Urban | 845 North Michigan Ave. Suite 987W<br>Chicago, IL 60611<br>Attention: Dan Pollard | Store Lease (Store #14 Water Tower Place) | May-94 | 3,402.59 |
| Urban | 845 North Michigan Ave. Suite 987W<br>Chicago, IL 60611<br>Attention: Dan Pollard<br>Copy to: Century Hill Center Inc.<br>7950 Collection Center Dr.<br>Chicago, Illinois 60693 | Store Lease (Store #25 Century City Shop. Ctr.) | October-94 | 2,716.87 |
| Urban | 845 North Michigan Ave. Suite 987W<br>Chicago, IL 60611<br>Attention: Dan Pollard<br>Copy to: HG Shopping Centers, LP<br>135 South La Salle St., Dept. 2088<br>Chicago, Illinois 60674-2088 | Store Lease (Store #64 Houston Galleria) | April-95 | 2,404.52 |
| Westfield | 11601 Wilshire Blvd. 12th Floor<br>Los Angeles, CA 90025<br>Attention: Len Maenza<br>Copy to: Montgomery Mall, LP<br>File #54738 3L<br>Los Angeles, CA 90074-4738 | Store Lease (Store #16 Montgomery Mall) | May-94 | 3,464.87 |
| Westfield | 11601 Wilshire Blvd. 12th Floor<br>Los Angeles, CA 90025<br>Attention: Len Maenza<br>Copy to: Valley Fair Mall, LLC<br>File #55702<br>Los Angeles, CA 90074-5702 | Store Lease (Store #50 Valley Fair Mall) | November-95 | 7,402.70 |
| Wheatley Plaza Associates | 2110 Northern Blvd.<br>Manhasset, NY 11030<br>Attention: Frank Castagna | Real Property Lease | 02/13/92 | 2,982.53 |
| Windsor Factory | 2155 Fasan Dr., RR #1<br>Oldcastle, Ont. N0R 1L0 | Real Property Lease (Windsor Factory Outlet) | 11/26/99 | 0.00 |
| Worldland Dev. | c/o Great Oak Capital Corp.<br>36 Toronto St. Ste 1160<br>Toronto, Ont., M5C 2C5 | Real Property Lease (Cookstown Outlet) | 06/11/02 | 0.00 |
| Greenwich Ins. Company | One Exchange Place Suite 501<br>Jersey City, NJ 07302<br>Attention: Kieran Moran | Security Agreement | 05/24/01 | 0.00 |
| Greenwich Ins. Company | One Exchange Place Suite 501<br>Jersey City, NJ 07302<br>Attention: Kieran Moran | Security Agreement | 12/19/01 | 0.00 |
| Greenwich Ins. Company | One Exchange Place Suite 501<br>Jersey City, NJ 07302<br>Attention: Kieran Moran | General Indemnity Agreement | 05/21/01 | 0.00 |
| Greenwich Ins. Company | One Exchange Place Suite 501<br>Jersey City, NJ 07302<br>Attention: Kieran Moran | Security Agreement | 05/21/01 | 0.00 |

## PLAN SCHEDULE 3.2

### LIST OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES TO BE ASSUMED

| CONTRACT PARTY | NOTICE ADDRESS | CONTRACT DESCRIPTION | CONTRACT DATE/CONTRACT EXTENSION DATE | CURE AMOUNT |
|---|---|---|---|---|
| AAA Rubish | P.O. Box 2158 Bell Gardena, CA 90202 | Trash Collection Service | | 1,019.25 |
| Action Carting | 429 Frelinghuysen Ave. Newark, NJ 07114 Attention: Joe | Trash Collection Service | | 1,623.78 |
| ADP, Inc. | 5355 Orangethorpe Ave. La Palma, CA 90623 | Payroll Software/Hardware Fee | | 1,431.04 |
| ADT | 5400 W. Rosencrans Hawthorne, CA 90250 Attention: Nadine Gunderson | Security (Store #3 90 Park Ave. NY, NY) | | 0.00 |
| ADT | 5400 W. Rosencrans Hawthorne, CA 90250 Attention: Nadine Gunderson | Security (Store #11 Bridgehampton Com.) | | 0.00 |
| ADT | 5400 W. Rosencrans Hawthorne, CA 90250 Attention: Nadine Gunderson | Security (Store #17 Embarcadero Center) | | 0.00 |
| ADT | 5400 W. Rosencrans Hawthorne, CA 90250 Attention: Nadine Gunderson | Security (Store #25 Century City Shp. Ctr.) | | 0.00 |
| ADT | 5400 W. Rosencrans Hawthorne, CA 90250 Attention: Nadine Gunderson | Security (Store #26 Columbus Ave.) | | 0.00 |
| ADT | 5400 W. Rosencrans Hawthorne, CA 90250 Attention: Nadine Gunderson | Security (Store #29 Pacific Center) | | 0.00 |
| ADT | 5400 W. Rosencrans Hawthorne, CA 90250 Attention: Nadine Gunderson | Security (Store #33 University Town Ctr.) | | 0.00 |
| ADT | 5400 W. Rosencrans Hawthorne, CA 90250 Attention: Nadine Gunderson | Security (Store #40 Bayside Mall) | | 0.00 |
| ADT | 5400 W. Rosencrans Hawthorne, CA 90250 Attention: Nadine Gunderson | Security (Store #77 Ala moana Shp. Ctr.) | | 0.00 |
| ADT | 5400 W. Rosencrans Hawthorne, CA 90250 Attention: Nadine Gunderson | Security (Store #79 Broadway Plaza) | | 0.00 |
| ADT | 5400 W. Rosencrans Hawthorne, CA 90250 Attention: Nadine Gunderson | Security (Store #80 Village @ Corte Madera) | | 0.00 |
| ADT | 5400 W. Rosencrans Hawthorne, CA 90250 Attention: Nadine Gunderson | Security (Store #113 Riverwalk Market Pl.) | | 0.00 |
| ADT | 5400 W. Rosencrans Hawthorne, CA 90250 Attention: Nadine Gunderson | Security (Store #126 3146 "M" Street) | | 0.00 |
| ADT | 5400 W. Rosencrans Hawthorne, CA 90250 Attention: Nadine Gunderson | Security (Store #145 500 Fifth Ave.) | | 0.00 |
| ADT | 5400 W. Rosencrans Hawthorne, CA 90250 Attention: Nadine Gunderson | Security (Store #199 611 Duval Street) | | 0.00 |
| ADT | 5400 W. Rosencrans Hawthorne, CA 90250 Attention: Nadine Gunderson | Security (Store #205 150 Bloor Street) | | 0.00 |
| ADT Security Services | P.O. Box 371956 Pittsburgh PA 15250-7956 Attention: Shawnail King | Security services | | 1,779.14 |
| Antoni's Landscaping | 14938 Vose Street Van Nuys, CA 91405 Attention: Debbie/Antony | Landscaping services | | 1,378.63 |

# PLAN SCHEDULE 3.2

## LIST OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES TO BE ASSUMED

| CONTRACT PARTY | NOTICE ADDRESS | CONTRACT DESCRIPTION | CONTRACT DATE/CONTRACT EXTENSION DATE | CURE AMOUNT |
|---|---|---|---|---|
| Arch Wireless | 6330 Commerce Dr. Ste 150 Irving, TX 75063 | Pager Service | N/A | 113.23 |
| Arrowhead | 2767 E. Imperial HWY #100 Brea, CA 92821 | Bottled Water Service | | 340.46 |
| AT&T Broadband | 900 N. Cahuenga Blvd. Los Angeles, CA 90038 | Cable Service | | 160.48 |
| Avaya | 14400 Hertz Quail Spring Pkwy Oklahoma City, OK 73134 | Telephone System Maintenance | N/A | 79.96 |
| Avi's Air Conditioning | 5084 Benedict Court Oak Park, CA 91301 Attention: Avi | Air Condition/Heating Maintenance Services | | 435.00 |
| Barton Exterminating | 360 Lexington Ave. 15th Fl. New York, NY 10017 | Pest Control Services | | 232.75 |
| Bell South | 301 W. Bay Street Room 12DD1, Jacksonville, Fla 32202 Attention: Judy Arcey | Telephone System | | 0.00 |
| Bellringer Communications | 830 County Road Southhampton, NY 11968 | Fire Alarm (Store #11 Bridgehampton Com.) | May-01 | 259.80 |
| Cartegy (Equifax) | P.O. Box 30272 Tampa, FL 33630 Attention: Mel Smith | | | 0.00 |
| Central Window Cleaning | P.O. Box 106 Commack, NY 11725 | Window Cleaning Service | N/A | 173.60 |
| Ceridian Tax Service | 17390 Brookhurst Street Fountain Valley, CA 92708 Attention: Becky Nelson and Scott Vollmer | Payroll Tax Service | 12/13/91 last amended 01/02/02 | 0.00 |
| Certegy Check Services | P.O. Box 30272 Tampa, FL 33630 Attention: Pearl Perry | Check Guard | | 0.00 |
| Champion Garage Parking | 545 Madion Ave. New York, NY 10022 | Parking | | 0.00 |
| City Centurion Security | P.O. Box 60176 Oakwood, S.I. NY 10306-0716 | Guard Service New York | | 46,174.92 |
| City of Los Angeles Dept of Public Works | PO Box 806 Sacramento, CA 95812-0806 | Industrial Waste Disposal Fee/Van Nuys | | 0.00 |
| Clarica | 227 King St. South Waterloo, Ont. N2J 4C5 | RRSP Administration Fee | 03/01/02 | 0.00 |
| Culligan of Tallahassee | 944 W. Brevard St. Tallahassee, Fla. 32304 Attention: Max Ullrich | Water Softner System | | 0.00 |

23

# PLAN SCHEDULE 3.2

## LIST OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES TO BE ASSUMED

| CONTRACT PARTY | NOTICE ADDRESS | CONTRACT DESCRIPTION | CONTRACT DATE/CONTRACT EXTENSION DATE | CURE AMOUNT |
|---|---|---|---|---|
| Culligan Water | 101 North Park Street East Orange, NJ 07017 | Bottled Water Service | | 160.41 |
| Data Capture Solutions Inc. | 151 Sheldon Rd. Manchester, CT 06040 Attention: Tom Venezia | Warehouse Scanning Guns | | 0.00 |
| Deer Park Spring Water | P.O. Box 52271 Phoenix, AZ 85072 | Bottled Water Service | | 177.54 |
| Dewey Pest Control | 3711 Beverly Blvd. Los Angeles, CA 90004 | Pest Control Services | | 466.70 |
| Dixon Exterminating | 114 Business Circle Thomasville, GA 31792 Attention: Charles Dixon | Exterminator | | 0.00 |
| DMX AEI Music | 900 East Pine Street Seattle WA 98122 Attention: Debra Comer-Craft | Music (Store #3 90 Park Ave. NY, NY) | December-99 | 0.00 |
| DMX AEI Music | 900 East Pine Street Seattle WA 98122 Attention: Debra Comer-Craft | Music (Store #4 Bellevue Square) | December-99 | 0.00 |
| DMX AEI Music | 900 East Pine Street Seattle WA 98122 Attention: Debra Comer-Craft | Music (Store #5 Prudential Center) | December-99 | 0.00 |
| DMX AEI Music | 900 East Pine Street Seattle WA 98122 Attention: Debra Comer-Craft | Music (Store #6 Scottsdale Fashion Sq.) | December-99 | 0.00 |
| DMX AEI Music | 900 East Pine Street Seattle WA 98122 Attention: Debra Comer-Craft | Music (Store #9 Cherry Creek Shop. Ctr.) | December-99 | 0.00 |
| DMX AEI Music | 900 East Pine Street Seattle WA 98122 Attention: Debra Comer-Craft | Music (Store #11 Bridgehampton Com.) | December-99 | 0.00 |
| DMX AEI Music | 900 East Pine Street Seattle WA 98122 Attention: Debra Comer-Craft | Music (Store #12 Arden Fair Mall) | December-99 | 0.00 |
| DMX AEI Music | 900 East Pine Street Seattle WA 98122 Attention: Debra Comer-Craft | Music (Store #13 Tysons Corner Center) | December-99 | 0.00 |
| DMX AEI Music | 900 East Pine Street Seattle WA 98122 Attention: Debra Comer-Craft | Music (Store #14 Water Tower Place) | December-99 | 0.00 |
| DMX AEI Music | 900 East Pine Street Seattle WA 98122 Attention: Debra Comer-Craft | Music (Store #16 Montgomery Mall) | December-99 | 0.00 |
| DMX AEI Music | 900 East Pine Street Seattle WA 98122 Attention: Debra Comer-Craft | Music (Store #17 Embaracdero Center) | December-99 | 0.00 |
| DMX AEI Music | 900 East Pine Street Seattle WA 98122 Attention: Debra Comer-Craft | Music (Store #19 The Mall @ Short Hills) | December-99 | 0.00 |
| DMX AEI Music | 900 East Pine Street Seattle WA 98122 Attention: Debra Comer-Craft | Music (Store #20 Towson Town Center) | December-99 | 0.00 |
| DMX AEI Music | 900 East Pine Street Seattle WA 98122 Attention: Debra Comer-Craft | Music (Store #22 Boca Raton Mall) | December-99 | 0.00 |
| DMX AEI Music | 900 East Pine Street Seattle WA 98122 Attention: Debra Comer-Craft | Music (Store #25 Century City Shop. Ctr.) | December-99 | 0.00 |
| DMX AEI Music | 900 East Pine Street Seattle WA 98122 Attention: Debra Comer-Craft | Music (Store #26 Columbus Ave.) | December-99 | 0.00 |
| DMX AEI Music | 900 East Pine Street Seattle WA 98122 Attention: Debra Comer-Craft | Music (Store #29 Pacific Center) | December-99 | 0.00 |

## LIST OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES TO BE ASSUMED

| CONTRACT PARTY | NOTICE ADDRESS | CONTRACT DESCRIPTION | CONTRACT DATE/CONTRACT EXTENSION DATE | CURE AMOUNT |
|---|---|---|---|---|
| DMX AEI Music | 900 East Pine Street Seattle WA 98122 Attention: Debra Comer-Craft | Music (Store #32 St. Louis Galleria) | December-99 | 0.00 |
| DMX AEI Music | 900 East Pine Street Seattle WA 98122 Attention: Debra Comer-Craft | Music (Store #33 University Town Center) | December-99 | 0.00 |
| DMX AEI Music | 900 East Pine Street Seattle WA 98122 Attention: Debra Comer-Craft | Music (Store #34 Lenox Square) | December-99 | 0.00 |
| DMX AEI Music | 900 East Pine Street Seattle WA 98122 Attention: Debra Comer-Craft | Music (Store #38 Mall of America) | December-99 | 0.00 |
| DMX AEI Music | 900 East Pine Street Seattle WA 98122 Attention: Debra Comer-Craft | Music (Store #40 Bayside Mall) | December-99 | 0.00 |
| DMX AEI Music | 900 East Pine Street Seattle WA 98122 Attention: Debra Comer-Craft | Music (Store #41 Aventura Mall) | December-99 | 0.00 |
| DMX AEI Music | 900 East Pine Street Seattle WA 98122 Attention: Debra Comer-Craft | Music (Store #44 The Westchester) | December-99 | 0.00 |
| DMX AEI Music | 900 East Pine Street Seattle WA 98122 Attention: Debra Comer-Craft | Music (Store #50 Valley Fair Mall) | December-99 | 0.00 |
| DMX AEI Music | 900 East Pine Street Seattle WA 98122 Attention: Debra Comer-Craft | Music (Store #64 Houston Galleria) | December-99 | 0.00 |
| DMX AEI Music | 900 East Pine Street Seattle WA 98122 Attention: Debra Comer-Craft | Music (Store #66 Fashion Square Mall) | December-99 | 0.00 |
| DMX AEI Music | 900 East Pine Street Seattle WA 98122 Attention: Debra Comer-Craft | Music (Store #70 Santa Monica Place) | December-99 | 0.00 |
| DMX AEI Music | 900 East Pine Street Seattle WA 98122 Attention: Debra Comer-Craft | Music (Store #75 Bridgewater Commons) | December-99 | 0.00 |
| DMX AEI Music | 900 East Pine Street Seattle WA 98122 Attention: Debra Comer-Craft | Music (Store #77 Ala Moana Shp. Ctr.) | December-99 | 0.00 |
| DMX AEI Music | 900 East Pine Street Seattle WA 98122 Attention: Debra Comer-Craft | Music (Store #79 Broadway Plaza) | December-99 | 0.00 |
| DMX AEI Music | 900 East Pine Street Seattle WA 98122 Attention: Debra Comer-Craft | Music (Store #80 Village @ Corte Madera) | December-99 | 0.00 |
| DMX AEI Music | 900 East Pine Street Seattle WA 98122 Attention: Debra Comer-Craft | Music (Store #82 Beachwood Place) | December-99 | 0.00 |
| DMX AEI Music | 900 East Pine Street Seattle WA 98122 Attention: Debra Comer-Craft | Music (Store #101 Hillsdale Shopping Center) | December-99 | 0.00 |
| DMX AEI Music | 900 East Pine Street Seattle WA 98122 Attention: Debra Comer-Craft | Music (Store #102 Somerset Collection N) | December-99 | 0.00 |
| DMX AEI Music | 900 East Pine Street Seattle WA 98122 Attention: Debra Comer-Craft | Music (Store #113 Riverwlak Market Pl.) | December-99 | 0.00 |
| DMX AEI Music | 900 East Pine Street Seattle WA 98122 Attention: Debra Comer-Craft | Music (Store #124 Northstar Mall) | December-99 | 0.00 |
| DMX AEI Music | 900 East Pine Street Seattle WA 98122 Attention: Debra Comer-Craft | Music (Store #126 3146 "M" Street) | December-99 | 0.00 |
| DMX AEI Music | 900 East Pine Street Seattle WA 98122 Attention: Debra Comer-Craft | Music (Store #145 500 Fifth Ave.) | December-99 | 0.00 |
| DMX AEI Music | 900 East Pine Street Seattle WA 98122 Attention: Debra Comer-Craft | Music (Store #155 Collins Ave.) | December-99 | 0.00 |
| DMX AEI Music | 900 East Pine Street Seattle WA 98122 Attention: Debra Comer-Craft | Music (Store #165 Crabtree Valley) | December-99 | 0.00 |
| DMX AEI Music | 900 East Pine Street Seattle WA 98122 Attention: Debra Comer-Craft | Music (Store #175 San Patricio Plaza) | December-99 | 0.00 |
| DMX AEI Music | 900 East Pine Street Seattle WA 98122 Attention: Debra Comer-Craft | Music (Store #176 Plaza Las Americas) | December-99 | 0.00 |

# PLAN SCHEDULE 3.2

## LIST OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES TO BE ASSUMED

| CONTRACT PARTY | NOTICE ADDRESS | CONTRACT DESCRIPTION | CONTRACT DATE/CONTRACT EXTENSION DATE | CURE AMOUNT |
|---|---|---|---|---|
| DMX AEI Music | 900 East Pine Street Seattle WA 98122 Attention: Debra Comer-Craft | Music (Store #177 Cristo Street) | December-99 | 0.00 |
| DMX AEI Music | 900 East Pine Street Seattle WA 98122 Attention: Debra Comer-Craft | Music (Store #182 Northgate Mall) | December-99 | 0.00 |
| DMX AEI Music | 900 East Pine Street Seattle WA 98122 Attention: Debra Comer-Craft | Music (Store #199 611 Duval Street) | December-99 | 0.00 |
| DMX AEI Music | 900 East Pine Street Seattle WA 98122 Attention: Debra Comer-Craft | Music (Store #205 150 Bloor Street) | December-99 | 0.00 |
| DMX Music/AEI | 900 East Pine Street Seattle, WA 98122 | Music Service Provider | | 1,601.00 |
| Foodcraft | 1625 Riverside Drive Los Angeles, CA 90031 Attention: Linda | Coffee and Water Dispensing Equipment Rental | | 0.00 |
| IBM | PO Box 5100, Stn F Tor. Ont. M3Y 2T5 | Service/Maint. (4 printers) | 01/29/02 | 0.00 |
| IBM Corporation | 2929 N. Central Ave. Phoeniz, AZ 85012 Attention: Ray J. Beye | Maintenance | | 0.00 |
| Ines Cacedo | 33 Shalimar Place Maple, Ont. L6A 1T6 | Office Cleaning | 01/01/02 | 0.00 |
| ITR (Information Technology Resources, Inc.) | 6722 Orangethorpe Ave. Buena Park CA 90622 Attention: Linda Chase | IS Consulting | 11/01/00 | 0.00 |
| Jimenez Janitorial | P.O. Box 4877 Whittier CA 90607 Attention: Juan Jimenez | Cleaning Service | | 0.00 |
| JVC Cleaning Services | JVC Cleaning Services P.O. Box 630083 Little Neck, NY 11363 Attention: Maria | Cleaning Service | | 0.00 |
| Lanier De Costa Rica S.A. | Lanier de Costa Rica , Apartado Postal 301-1005 Barrio Mexico - Costa Rica Mr. Jose Antonio Ramierz | Maintenance of Copiers and Faxes | 08/28/99 | 0.00 |
| Methods Workshop | 300 River Valley Road Suite 100 Atlanta GA | GSD/Van Nuys | | 0.00 |
| Nu-Waye Water Conditioning | 1244 West 9th St Upland, CA 91786 Attention: Christina Pattison | Dye house/Van Nuys | | 568.50 |
| Oliver & Williams Elevator Company | 3039 Roswell Street Los Angeles, CA 90065 Attention: Stephen Crow | Elevator Maintenance | | 0.00 |
| Paymentech | 1401 S. 52nd St Tempe, AZ 85281 Attention: Christy Houmes | Credit Card Service | Dec-98 | 0.00 |
| Pinkerton | 16118 Sherman Way Van Nuys, CA 91406 Attention: Pat Slater | Security/Van Nuys | | 0.00 |
| Post Alarm Systems | 610 N. Santa Anita Ave. Arcadia, CA 91006 Attention: Tony Garcia | Alarm Monitoring Services | | 293.35 |
| Q Data | 105-6 Shields Court Markham Ont., L3R 4S1 | Bar Coding Guns Maintenance | 08/01/00 | 0.00 |
| Rayne Water System | 6953 Canoga Ave. Canoga Park, California 91303 | Dye house/Van Nuys | | 0.00 |

# PLAN SCHEDULE 3.2

## LIST OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES TO BE ASSUMED

| CONTRACT PARTY | NOTICE ADDRESS | CONTRACT DESCRIPTION | CONTRACT DATE/CONTRACT EXTENSION DATE | CURE AMOUNT |
|---|---|---|---|---|
| Retail Cleaning Specialists | 644-P Poplar<br>Orange, CA 92868<br>Attention: Jse Torres | Cleaning Service | | 0.00 |
| Robinson Pest Control | 44248 Palo Verde St.<br>Lancaster, CA 93536<br>Attention: Michael Robinson | Exterminator/Van Nuys | | 0.00 |
| Security Link | National Account Group DEPT L277<br>Columbus, OH 43260 | Security Services | | 207.20 |
| Selami Bauta | 129 Central Ave.<br>Pompton Lake NJ 07442<br>Attention: Selami Bauta | Cleaning Service | | 3,733.20 |
| Siemens De Costa Rica | Siemens de Costa Rica<br>Apartado Postal 10022-1000<br>San José - Costa Rica<br>Attention: Rosibel Ulate | Telephone system lease | 01/01/97 | 0.00 |
| Sola Security of Los Angeles | 7661 Densmore Ave.<br>Van Nuys CA 91406<br>Attention: 91406 | Alarm system/Van Nuys | | 1,956.00 |
| Telcorp | PO Box 176<br>Hewlett NY, 11557<br>Attention: Steve Samuels | Data services | Mar-00 | 161,557.38 |
| Top Protection | 15720 Ventura BL Ste 421<br>Encino, CA 91436<br>Attention: Adel Ali | Security Services | | 0.00 |
| United Alarm | 2707 W. Temple Street<br>Los Angeles, CA 90026 | Alarm Monitoring Services | | 120.00 |
| Waste Management of LI | 1198 Prospect Ave.<br>Westbury, NY 11590 | Trash Collection Service | | 175.12 |
| Waste Management | 9081 Tujunga Ave.<br>Sun Valley, CA 91352 | Trash/Van Nuys | | 0.00 |
| Wells Fargo Merchant Services | 265 Broad Hollow Rd.<br>Melville, NY 11747<br>Attention: Charles Caputo | Credit Card Services | | 0.00 |
| Drennings Tractor | 2300 N. Branch Ave.<br>PO Box 1762<br>Altoona, PA 16603-1762<br>Attention: Jeff Drenning | Tractor ZJ72380 | | 2,347.95 |
| BMW Financial | 920 Champlain Court<br>Whitby, Ont. L1K 6K9 | Car Lease | 05/15/01 | 0.00 |
| G.E. Capital | P.O. Box 802556<br>Chicago, IL 60680-2556 | Freightliner Truck | Feb-99 | 2,097.06 |
| K-Line | 890 Mountain Ave.<br>Murray Hill, NJ 07974<br>Attention: Pamela Donovan | Ocean Freight | 04/01/01 | 0.00 |
| Ryder Truck | 15 Ingram Avenue<br>Pittsburgh, PA 15205-2023<br>Attention Sandra Becker | Lease of Truck 328425 | 10/07/99 | 0.00 |
| Zoresco | 404 Kettle Street<br>Altoona, PA 16602 | Lease of road trailer-T45-2193 T-48-1415 (Account #23018) | | 1,558.91 |
| DIL Peterson Trust | DL Peterson Trust<br>5924 Collections Drive<br>Chicago, IL 60693 | Nissan Altima Lease | | 34.75 |
| Ford Motor Credit | PO Box 7151<br>Springfield, Ohio 45501 | Lease of 2001 Explorer VIN# 1FMZU73E61ZA03053 | | 147.35 |
| Ford Motor Credit | PO Box 7151<br>Springfield, Ohio 45501 | Lease of 2000 Mercury Sable VIN# 1MEFM55S4YA624247 | Dec-00 | 139.00 |

## PLAN SCHEDULE 3.2

### LIST OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES TO BE ASSUMED

| CONTRACT PARTY | NOTICE ADDRESS | CONTRACT DESCRIPTION | CONTRACT DATE/CONTRACT EXTENSION DATE | CURE AMOUNT |
|---|---|---|---|---|
| Ford Motor Credit Co. | 17197 N. Laurel Park Drive Livonia, Michigan 48152 Attention: Jack Champagne | Vehicle Lease | 05/09/00 | 166.27 |
| Smart Lease by GMAC | PO Box 630071 Dallas, TX 75263-0071 | Lease of 2000 Chevrolet Blazer VIN#1GNDT1BW9Y2107030 | Nov-99 | 173.00 |
| Smart Lease by GMAC | PO Box 630071 Dallas, TX 75263-0071 | Lease of GMC Yukon VIN# 1GKEK13T21J198477 | Feb-01 | 1,505.01 |
| Toyota Motor Credit | PO Box 70085 San Antonio, TX 78270 | Lease of 2000 Toyota Tundra VIN# 5TBRT3417YS113609 | Nov-00 | 2,221.21 |

## PLAN SCHEDULE 5.6

## LIST OF OFFICERS AND DIRECTORS OF EACH REORGANIZED DEBTOR

## [TO BE FILED BY EXHIBIT FILING DATE]

## PLAN SCHEDULE 5.7

## PRINCIPAL TERMS AND CONDITIONS OF EXIT FINANCING FACILITY

## [TO BE FILED BY EXHIBIT FILING DATE]

**PLAN SCHEDULE 5.17**

**LIST OF CONTINUED EMPLOYMENT, RETIREMENT,
AND INCENTIVE COMPENSATION PROGRAMS**

**[TO BE FILED BY EXHIBIT FILING DATE]**

## PLAN SCHEDULE 7.6

## LIST OF SPECIFIC CAUSES OF ACTION RETAINED BY REORGANIZED DEBTORS

## [TO BE FILED BY EXHIBIT FILING DATE]

# PLAN EXHIBITS

## [TO BE FILED BY EXHIBIT FILING DATE]

EXHIBIT 1 – AMENDED CERTIFICATES OF INCORPORATION

EXHIBIT 2 – AMENDED BYLAWS

EXHIBIT 3 – REGISTRATION RIGHTS AGREEMENT

EXHIBIT 4 – RIGHTS PLAN